1  Robert V. Prongay (#270796)
   Lionel Z. Glancy (#134180)
2  Lesley F. Portnoy (#304851)
   GLANCY PRONGAY & MURRAY LLP
3  1925 Century Park East, Suite 2100
   Los Angeles, California 90067
4  Telephone: (310) 201-9150
   Facsimile: (310) 432-1495
5  rprongay@glancylaw.com
   lportnoy@glancylaw.com
6
   *Liaison Counsel for Lead Plaintiff Globis Capital Advisors L.L.C.*
7  *and the Proposed Plaintiff Class*

8  [Additional Counsel on Signature Page]

9            **UNITED STATES DISTRICT COURT**
             **NORTHERN DISTRICT OF CALIFORNIA**
10

11
   STEVEN LAZAN,                          Case No.  3:18-cv-00923-RS
12
                         Plaintiff,       <u>**CLASS ACTION**</u>
13
   v.                                     **LEAD PLAINTIFF'S NOTICE OF**
14                                        **UNOPPOSED MOTION FOR**
   QUANTUM CORPORATION, *et. al.*,        **PRELIMINARY APPROVAL OF**
15                                        **SETTLEMENT; MEMORANDUM**
                         Defendants.      **OF POINTS AND AUTHORITIES IN**
16                                        **SUPPORT THEREOF**
17
   ALEXANDER E. NABHAN,
18
                         Plaintiff,       Hearing Date:  August 8, 2019
19                                        Time:          1:30 p.m.
   v.                                     Location:      Courtroom 3 – 17th Floor
20                                        Judge:         Hon. Richard Seeborg
   QUANTUM CORP., *et al.*,
21
                         Defendants.
22

23

24

25

26

27

28

1

# TABLE OF CONTENTS

I.      PRELIMINARY STATEMENT ................................................................................ 1

II.     SUMMARY OF THE LITIGATION AND PROCEDURAL HISTORY ...................... 2

III.    THE SETTLEMENT ............................................................................................ 4

        A.      The Settlement Terms ............................................................................... 4

        B.      The Plan Of Allocation.............................................................................. 6

IV.     THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL ............................. 6

        A.      Standards for Preliminary Approval .......................................................... 6

        B.      The Settlement Is Fair, Reasonable, and Adequate...................................... 8

                1.      The Settlement Is the Product of Arms'-Length Negotiations
                        Between Experienced Counsel Mediated by a Respected and
                        Experienced Mediator ................................................................. 8

                2.      The Strength of Lead Plaintiff's Case and the Risk, Expense,
                        Complexity, and Likely Duration of Further Litigation................. 9

                3.      Risk of Maintaining Class Action Status Throughout Trial......... 10

                4.      The Amount Offered in Settlement............................................. 11

                5.      The Extent of Discovery and the Stage of Proceedings............... 11

                6.      The Proposed Settlement Does Not Unjustly Favor Any Settlement
                        Class Members, Including Lead Plaintiff..................................... 13

                7.      The Recommendations of Experienced Counsel ......................... 13

V.      THE COURT SHOULD CERTIFY THE CLASS FOR SETTLEMENT
        PURPOSES ...................................................................................................... 14

        A.      The Settlement Class Is Sufficiently Numerous To Warrant Certification.......... 15

        B.      There Are Substantial Common Questions of Law And Fact ............................ 15

        C.      Lead Plaintiff's Claims Are Typical of Other Settlement Class Members .......... 16

        D.      Lead Plaintiff and Lead Counsel Adequately Represent the Settlement Class .... 16

        E.      The Predominance and Superiority Requirements Are Satisfied ....................... 17

VI.     THE PLAN OF ALLOCATION IS FAIR AND REASONABLE ................................. 17

VII.   THE NOTICE PROGRAM SATISFIES RULE 23, DUE PROCESS, AND THE
       PSLRA .................................................................................................................19

       A.     The Method of Notice Is Adequate ................................................................ 19

       B.     The Content of the Notice Is Adequate .......................................................... 20

VIII.  THE INTENDED REQUEST FOR ATTORNEYS' FEES, LITIGATION
       EXPENSES, AND LEAD PLAINTIFF'S EXPENSES .................................................22

IX.    THE PROPOSED CLAIMS ADMINISTRATOR...........................................................23

X.     PROPOSED SCHEDULE OF EVENTS.........................................................................24

XI.    CONCLUSION ..............................................................................................................25

1

# TABLE OF AUTHORITIES

**Cases**

2

3

*Acosta v. Trans Union, LLC,*
    243 F.R.D. 377 (C.D. Cal. 2007)...................................................................... 7

4

*In re Advanced Battery Techs., Inc. Sec. Litig.,*
    298 F.R.D. 171 (S.D.N.Y. 2014)...................................................................... 20

5

*Amchem Prods., Inc. v. Windsor,*
    521 U.S. 591 (1997)....................................................................................... 17

6

*In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.,*
    789 F. Supp. 2d 935 (N.D. Ill. 2011) ............................................................. 20

7

8

*Barani v. Wells Fargo Bank, N.A.,*
    No. 12 Civ. 2999, 2014 WL 1389329 (S.D. Cal. Apr. 9, 2014)...................... 20

9

*Basic Inc. v. Levinson,*
    485 U.S. 224, 241-42 (1988)......................................................................... 17

10

11

*Booth v. Strategic Realty Tr., Inc.,*
    No. 13 Civ. 04921, 2015 WL 3957746 (N.D. Cal. June 28, 2015) .................. 7

12

*In re Bridgepoint Educ., Inc. Sec. Litig.,*
    No. 12 Civ. 1737, 2015 WL 224631 (S.D. Cal. Jan. 15, 2015) ...................... 16

13

14

*Churchill Vill., L.L.C. v. Gen. Elec.,*
    361 F.3d 566 (9th Cir. 2004)........................................................................9, 20

15

*Class Plaintiffs v. City of Seattle,*
    955 F.2d 1268 (9th Cir. 1992) ........................................................................ 18

16

17

*In re Diamond Foods, Inc. Sec. Litig.,*
    295 F.R.D. 240 (N.D. Cal. 2013) ................................................................... 16

18

*Hanlon v. Chrysler Corp.,*
    150 F.3d 1011 (9th Cir. 1998).............................................................7, 14, 15

19

20

*Hefler v. Wells Fargo & Co.,*
    No. 16 Civ. 5479, 2018 WL 4207245 (N.D. Cal. Sept. 4, 2018)......7, 11, 13, 19

21

*Hodges v. Akeena Solar, Inc.,*
    274 F.R.D. 259 (N.D. Cal. 2011) ................................................................... 15

22

23

*Huberman v. Tag-It Pacific Inc.,*
    314 F. App'x 59 (9th Cir. 2009)..................................................................... 17

24

*Hyles v. New York City,*
    No. 10 Civ. 3119, 2016 WL 4077114 (S.D.N.Y. Aug. 1, 2016)..................... 12

25

26

*Jaffe v. Morgan Stanley & Co., Inc.,*
    No. 06 Civ. 3903, 2008 WL 346417 (N.D. Cal. Feb. 7, 2008) ...................... 14

27

28

*Johnson v. US Auto Parts Network, Inc.*,
   No. 07 Civ. 2030, 2008 WL 11343481 (C.D. Cal. Oct. 9, 2008).....................................8

*Knight v. Red Door Salons, Inc.*,
   No. 08 Civ. 1520 SC, 2009 WL 248367 (N.D. Cal. Feb. 2, 2009) ...............................22

*Lumen v. Anderson*,
   280 F.R.D. 451 (W.D. Mo. 2012).....................................................................................17

*In re Mego Fin. Corp. Sec. Litig.*,
   213 F.3d 454 (9th Cir. 2000)....................................................................................8, 9, 22

*In re Mut. Funds Inv. Litig.*,
   No. 04 MD 15861, 2010 WL 2342413 (D. Md. May 19, 2010).....................................20

*In re Netflix Privacy Litig.*,
   No. 11 Civ. 379, 2013 WL 1120801 (N.D. Cal. Mar. 18, 2013)......................................8

*Officers for Justice v. Civil Serv. Comm'n*,
   688 F.2d 615 (9th Cir. 1982).................................................................................6, 9, 11

*In re Omnivision Techs., Inc.*,
   559 F. Supp. 2d 1036 (N.D. Cal. 2007) ....................................................................13, 22

*In re Pacific Enters. Sec. Litig.*,
   47 F.3d 373 (9th Cir. 1995)..............................................................................................22

*Persky v. Turley*,
   No. 88 Civ. 1830, 1991 WL 329564 (D. Ariz. Dec. 20, 1991) .......................................17

*Progressive Cas. Ins. Co. v. Delaney*,
   No. 11 Civ. 678, 2014 WL 3563467 (D. Nev. July 18, 2014) .........................................4

*In re Rent-Way Sec. Litig.*,
   305 F. Supp. 2d 491 (W.D. Pa. 2003) ..............................................................................10

*Rodriguez v. W. Publ'g Corp.*,
   563 F.3d 948 (9th Cir. 2009) .............................................................................................8

*Rosenburg v. Int'l Bus. Mach. Corp.*,
   No. 06 Civ. 430, 2007 WL 128232 (N.D. Cal. Jan. 11, 2007)...................................7, 18

*Satchell v. Fed. Express Corp.*,
   No. 03 Civ. 2659, 2007 WL 1114010 (N.D. Cal. Apr. 13, 2007) .....................................8

*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 2003)......................................................................................15, 22

*Steiner v. Am. Broad. Co.*,
   248 F. App'x 780 (9th Cir. 2007)......................................................................................23

*Stewart v. Applied Materials, Inc.*,
   No. 15 Civ. 02632, 2017 WL 3670711 (N.D. Cal. Aug. 25, 2017) .................................14

*Stratton v. Glacier Ins. Adm'rs, Inc.*,
    No. 02 Civ. 06213, 2007 WL 274423 (E.D. Cal. Jan. 29, 2007) .................................. 20

*In re Syncor ERISA Litig.*,
    516 F.3d 1095 (9th Cir. 2008) ........................................................................................ 6

*In re Tableware Antitrust Litig.*,
    484 F. Supp. 2d 1078 (N.D. Cal. 2007) .....................................................................7, 11

*Trief v. Dun & Bradstreet Corp.*,
    840 F. Supp. 277 (S.D.N.Y. 1993) ................................................................................. 8

*In re Tyco Int'l, Ltd. Multidistrict Litig.*,
    535 F. Supp. 2d 249 (D.N.H. 2007) ............................................................................. 10

*Vizcaino v. Microsoft Corp.*,
    290 F.3d 1043 (9th Cir. 2002) ...................................................................................... 23

*In re: Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*,
    MDL No. 2672, 2016 WL 6248426 (N.D. Cal. Oct. 25, 2016) ...............................12, 19

*West v. Circle K Stores, Inc.*,
    No. 04 Civ. 438, 2006 WL 1652598 (E.D. Cal. June 13, 2006) ..................................... 7

*In re Wireless Facilities, Inc. Sec. Litig. II*,
    253 F.R.D. 607 (S.D. Cal. 2008) ................................................................................... 9

*Wolin v. Jaguar Land Rover N. Am., LLC*,
    617 F.3d 1168 (9th Cir. 2010) ................................................................................14, 15

*Youngevity Int'l, Corp. v. Smith*,
    No. 16 Civ. 704, 2019 WL 1542300 (S.D. Cal. Apr. 9, 2019) ..................................... 12

*In re Zynga Inc. Sec. Litig.*,
    No. 12 Civ. 4007, 2015 WL 6471171 (N.D. Cal. Oct. 27, 2015) .............................12, 19

**Statutes**

15 U.S.C. § 78u-4(a)(7) ......................................................................................................... 21

15 U.S.C. § 78b .................................................................................................................... 19

28 U.S.C. § 1715 *et seq.* ....................................................................................................... 20

**Other Authorities**

4 William B. Rubenstein, *Newberg on Class Actions* § 13:52 (5th ed. 2019) ............................. 8

Laarni T. Bulan, Ellen M. Ryan & Laura E. Simmons,
    *Securities Class Action Settlements: 2018 Review and Analysis*, Cornerstone
    Research (2019) .........................................................................................................1, 11

Order Awarding Co-Lead Counsel Attorneys' Fees and Expenses,
   *In re Infineon Techs. AG Sec. Litig.*,
      No. 04 Civ. 4156 (N.D. Cal. Nov. 2, 2011), ECF No. 371 ........................................... 23

Order Awarding Lead Counsel Attorneys' Fees and Expenses,
   *In re Accuray Inc. Sec. Litig.*, No. 09 Civ 3362 (N.D. Cal. Dec. 8, 2011),
      ECF No. 146 ...................................................................................................................... 23

Order Granting Prelim. Approval of Class Settlement,
   *In re Lendingclub*, No. 16 Civ. 02627 (WHA) (N.D.Cal. Mar. 16, 2018),
      ECF No. 343 .......................................................................................................................... 6

Order Granting Prelim. Approval of Settlement,
   *In re Volkswagen*, 15 MDL No. 2672 (CRB), (N.D. Cal. Nov. 28, 2018),
      ECF No 5593 .......................................................................................................................... 6

Stefan Boettrich & Svetlana Starykh, *Recent Trends in Securities Class Action
   Litigation: 2018 Full-Year Review*,
      NERA Economic Consulting (Jan. 29 2019) ................................................................10, 11

Stipulation and Agreement of Settlement, *In re Volkswagen "Clean Diesel" Mktg.,
   Sales Practices, and Products Liab. Litig.*,
      15 MDL No. 2672 (CRB) (N.D. Cal. Aug. 28, 2018), ECF No. 5267-1 .......................... 6

Stipulation of Settlement, *In re Lendingclub Sec. Litig.,*
      No. 16 Civ. 02627 (WHA) (N.D.Cal. Feb. 21, 2018), ECF Nos. 333-1 .......................... 6

**Rules**

Fed. R. Civ. P. 23 ...........................................................................................................7, 10, 16

**NOTICE OF UNOPPOSED MOTION**
**<u>FOR PRELIMINARY APPROVAL OF SETTLEMENT</u>**

TO THE CLERK OF THE COURT AND ALL PARTIES AND THEIR RESPECTIVE COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on August 8, 2019, at 1:30 p.m., or as soon thereafter as the matter may be heard, Plaintiff Globis Capital Advisors L.L.C. ("Lead Plaintiff") will and hereby moves the Honorable Richard Seeborg, District Judge, located Courtroom 3, 17th Floor, Phillip Burton Federal Building & United States Courthouse, 450 Golden Gate Avenue, San Francisco, CA 94102, for entry of the [Proposed] Order Preliminarily Approving Settlement and Providing for Notice (the "Preliminary Approval Order") submitted herewith, which: (i) grants preliminary approval of the proposed class action settlement on the terms set forth in the Stipulation of Settlement and exhibits thereto, dated as of June 28, 2019 (collectively the "Stipulation");[1] (ii) preliminarily certifies the Settlement Class, appointing Lead Plaintiff as class representative of the Settlement Class, and appointing Lead Counsel as class counsel for the Settlement Class;[2] (iii) approves the form and manner of giving notice of the proposed Settlement to the Settlement Class; and (iv) sets a hearing date to determine whether the proposed Settlement, proposed Plan of Allocation, and Lead Counsel's motion for an award of attorneys' fees and reimbursement of Litigation Expenses.

The Motion is noticed for a hearing, but as the motion is unopposed, Lead Plaintiff respectfully asks that the Motion be decided on the papers at this time and before the deadline for any opposition and without a hearing.

---

[1] All capitalized terms, unless otherwise defined herein, have the same meaning as set forth in the Stipulation.  A true and correct copy of the Stipulation and its exhibits are altogether attached as Exhibit 1 to the Declaration of Ira M. Press in Support of Preliminary Approval of Settlement (the "Press Declaration").  Unless otherwise noted, all citations herein to "¶__" and "Ex. __" refer, respectively, to paragraphs in, and exhibits to, the Press Declaration.

[2] As explained in the Stipulation, Defendants are "[s]olely for purposes of the Settlement and for no other purpose" stipulating to: (1) certification of the Action as a class action; (2) certification of Globis Capital Advisors L.L.C. as Class Representative; and (3) appointment of Lead Counsel as Class Counsel.  *See, e.g.*, Stipulation ¶ 2.

1    In support of this Motion, Lead Plaintiff submits the following memorandum, the Press

2  Declaration and exhibits attached thereto, including the Stipulation and its exhibits attached

3  thereto, all prior pleadings and papers in this Action, and such additional information or argument

4  as may be required by the Court.

5    **STATEMENT OF ISSUES TO BE DECIDED**

6    1.    Whether the proposed $8.15 million cash settlement of this Action is within the

7  range of fairness, reasonableness, and adequacy to warrant the Court's preliminary approval and

8  the dissemination of notice of its terms to members of the proposed Settlement Class.

9    2.    Whether the Settlement Class should be certified for purposes of the Settlement.

10    3.    Whether Lead Plaintiff should be certified as Class Representative of the Settlement

11  Class for purposes of the Settlement.

12    4.    Whether Lead Counsel should be appointed Class Counsel for the Settlement Class

13  for purposes of the Settlement.

14    5.    Whether the proposed Settlement Notice and Proof of Claim and Release Form and

15  the manner for dissemination of the Notice and Proof of Claim to the Settlement Class should be

16  approved.

17    6.    Whether the Court should set a date for a hearing for final approval of the proposed

18  Settlement, the proposed Plan of Allocation, and the application of Lead Counsel for an award of

19  attorneys' fees and reimbursement of Litigation Expenses.

20

21

22

23

24

25

26

27

28

MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT
CASE NO. 3:18 -CV-00923-RS

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    PRELIMINARY STATEMENT

The Parties have reached a proposed Settlement that resolves all claims against Defendants in exchange for a cash payment of $8.15 million (the "Settlement Amount").  Lead Plaintiff now respectfully submits this memorandum in support of its unopposed motion for entry of the Preliminary Approval Order, attached as Exhibit A to the Stipulation filed herewith.  The proposed Settlement is an excellent result for the Settlement Class.

In an effort to resolve this Action, the Parties retained an experienced third-party mediator, Robert A. Meyer, Esq. of JAMS Mediation, Arbitration and ADR Services (the "Mediator"). Before the February 20, 2019 mediation, the Parties exchanged mediation statements and exhibits. The full-day mediation session ended with the Mediator's proposal of $8.15 million, which both Parties accepted on February 22, 2019.  The Parties thereafter negotiated and executed the Stipulation and the exhibits thereto.

The Settlement is the result of arms'-length negotiations conducted by experienced counsel, with an experienced mediator's assistance, and with sufficient information to evaluate the sufficiency of the Settlement given the risks and uncertainties of continued litigation.  The Settlement Amount also exceeds the median settlement for securities class actions as a percentage of the Settlement Class's estimated recoverable damages under even the best-case scenario.[3]  The Settlement warrants preliminary approval so that Notice can be distributed to the Settlement Class and a Settlement Hearing can be scheduled to consider final approval of the Settlement.

---

[3] According to a 2018 report, the typical recovery for the ten years from 2009-2019 was 5.1% of damages for securities class action cases brought under Section 10(b) of the Securities Exchange Act of 1934 in the Ninth Circuit.  *See* Laarni T. Bulan, Ellen M. Ryan & Laura E. Simmons, *Securities Class Action Settlements: 2018 Review and Analysis*, Cornerstone Research, at 19, Appx. 3 (2019), https://www.cornerstone.com/Publications/Reports/Securities-Class-Action-Settlements-2018-Review-and-Analysis  ("Cornerstone Report") (attached as Ex. 3 to the Press Decl.).  Measured against that yardstick, the Settlement, which if approved, will compensate the Class for approximately 19.76% of its estimated damages, is a substantial recovery.

## II.   SUMMARY OF THE LITIGATION AND PROCEDURAL HISTORY

On February 13, 2018, two class action complaints were filed in the United States District Court for the Northern District of California, styled *Lazan v. Quantum Corp., et al.*, Case No. 3:18-cv-00923-RS (the "*Lazan* Action"), and *Nabhan v. Quantum Corp., et al.*, Case No. 3:18-cv-00925-WHA (the "*Nabhan* Action") (collectively, the "Action").  Both actions asserted federal securities fraud claims against Quantum, Patrick Dennis, Jon Gacek, and Fuad Ahmad on behalf of a putative class of investors in Quantum common stock from May 10, 2016 through February 7, 2018.

On February 16, 2018, Defendant Quantum filed an administrative motion to consider whether the *Lazan* and *Nabhan* Actions should be deemed related, and sought to have the *Nabhan* Action reassigned to this Court.  ECF No. 8.

On February 26, 2018, the Court granted Defendant Quantum's administrative motion to relate the *Lazan* Action and the *Nabhan* Action.  ECF No. 9.

On May 16, 2018, the Court issued an Order: (i) consolidating the *Lazan* Action and *Nabhan* Action previously deemed "related;" (ii) appointing Globis Capital Advisors L.L.C. as Lead Plaintiff for the consolidated action pursuant to the Private Securities Litigation Reform Act of 1995 (the "PSLRA"); and (iii) appointing the law firms of Kirby McInerney LLP and Glancy Prongay and Murray LLP as Lead Counsel and Liaison Counsel for the proposed class, respectively.  ECF No. 40.

On June 4, 2018, the Court issued an Order providing for, *inter alia*, Lead Plaintiff to file a consolidated complaint, which would then function as the operative complaint.  ECF No. 44.  On July 30, 2018, Lead Plaintiff filed a Consolidated Class Action Complaint for Violations of the Federal Securities Laws asserting claims under: (i) Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against Defendants; and (ii) Section 20(a) of the Exchange Act against defendants Jon Gacek and Fuad Ahmad (collectively, the "Individual Defendants").  ECF No. 49.  Among other things, Lead Plaintiff

1   alleged that during the Settlement Class Period, Quantum recognized revenue improperly, which

2   inflated Quantum's reported revenues and earnings, as well as the prices of Quantum shares.

3       On September 14, 2018, Quantum announced, in a Form 8-K  (the "September 14 8-K")

4   filed with the U.S. Securities and Exchange Commission (the "SEC"), that Quantum's Board of

5   Directors concluded that its previously-issued consolidated financial statements and other financial

6   data for specific periods should no longer be relied upon because of misstatements and that

7   Quantum would issue consequent adjustments to its financial statements and file restated financial

8   statements as soon as practicable.  ECF No. 50.  As a result of the September 14 8-K, Lead Plaintiff

9   anticipated filing an Amended Consolidated Complaint once Quantum provided additional

10  information regarding the misstatements, made consequent adjustments to its financial statements,

11  and filed restated results.

12      On September 25, 2018, the Court entered an Order on stipulation of the Parties setting

13  forth when Lead Plaintiff shall file its Amended Consolidated Complaint and regarding a briefing

14  schedule for Defendants' subsequent motion(s) to dismiss.  ECF No. 51.

15      Lead Plaintiff continued its investigation into the claims asserted, and although the Parties

16  believe in the merits of their respective positions, they also recognized the benefits that would

17  accrue if they could reach an agreement to resolve the Action, and the related risks of continued

18  litigation.  Accordingly, on February 20, 2019, the Parties participated in a mediation session with

19  Robert A. Meyer, Esq., an experienced mediator.  The Parties exchanged mediation statements

20  that addressed, among other things, issues related to liability and damages, which were submitted

21  to the mediator before a full-day mediation session.  The session ended with a Mediator's proposal

22  of $8.15 million, which both Parties accepted (the "Accepted Proposal") on February 22, 2019.

23      Also, as part of the settlement agreement, Defendants agreed to provide Lead Plaintiff with

24  the opportunity to engage in confirmatory discovery, including review of internal Quantum

25  documents and interview of Quantum personnel.  Specifically, Defendants produced the

26  documents that Quantum had provided to the SEC in response to the SEC's investigation.  Lead

27

28

MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT
CASE NO. 3:18 -CV-00923-RS

3

1   Counsel employed predictive coding technology[4] to locate a subset of documents relevant to this

2   case, which Lead Counsel reviewed and analyzed.   Further, Lead Counsel spent several hours

3   interviewing Quantum's Chief Financial Officer ("CFO") about, *inter alia*, Quantum's upcoming

4   financial restatements, its accounting practices, and internal controls.  The confirmatory discovery

5   coupled with the arguments raised in the mediation enabled Lead Counsel to fully assess the

6   strengths and weaknesses of this Action, and conclude that settlement is appropriate here.

7   **III.    THE SETTLEMENT**

8           **A.    The Settlement Terms**

9           The Settlement provides that Defendants will pay or cause to be paid $8.15 million in cash

10  into an interest-bearing escrow account for the Settlement Class.  The Settlement Amount, plus

11  accrued interest, and after deduction of (i) any Taxes, (ii) Notice and Administration Costs, and

12  (iii) any Court-awarded attorneys' fees and Litigation Expenses, is the "Net Settlement Fund."

13  The Net Settlement Fund will be distributed among Settlement Class Members who submit valid

14  Claim Forms ("Authorized Claimants"), in accordance with the proposed Plan of Allocation.

15          The Settlement Class is defined as: "all Persons who purchased Quantum common stock

16  during the period from April 18, 2016 through February 8, 2018, inclusive (the Settlement Class

17  Period), and who were damaged thereby."   Stipulation ¶ 1(pp).[5]   Excluded therefrom are:

18  "Defendants; the Officers and directors of Quantum at all relevant times, as well as members of

19  their Immediate Families and their legal representatives, heirs, successors, or assigns; and any

20  entity in which Defendants have or had a controlling interest.  Also excluded from the Settlement

21

22

23  [4] "Predictive coding, or technology assisted review ["TAR"], uses software that can be trained by
    a human being to distinguish between relevant and non-relevant documents."  *Progressive Cas.*
24  *Ins. Co. v. Delaney*, No. 11 Civ. 678, 2014 WL 3563467, at *8 (D. Nev. July 18, 2014) (citation
    omitted).

25  [5] The Stipulation defines "Person" or "Persons" to mean an individual, corporation, partnership,
26  limited partnership, association, joint stock company, estate, legal representative, trust,
    unincorporated association, government or any political subdivision or agency thereof, and any
27  business or legal entity and their spouses, heirs, predecessors, successors, representatives, or
    assigns."  Stipulation ¶ 1(cc).

28

1  Class are any Persons who or which request exclusion from the Settlement Class, in accordance

2  with the requirements set forth in the Notice, which request is accepted by the Court." *Id*. at

3  ¶ 1(pp).

4        In exchange for the Settlement Amount, Settlement Class Members will release the

5  "Released Plaintiffs' Claims," which include any and all claims that were "(i) asserted in this

6  Action; or (ii) could have asserted in any forum that arise out of or are based upon the allegations,

7  transactions, facts, practices, SEC filings, matters or occurrences, representations or omissions

8  involved, set forth, or referred to in the complaints filed in this Action and that relate to the

9  purchase of Quantum common stock during the Settlement Class Period." Stipulation ¶ 1(kk).

10  The release's scope is reasonable as it is limited to claims that relate to Quantum common stock

11  purchased during the Settlement Class Period and that relate to the same factual allegations set

12  forth in the complaint. *Id.* at ¶ 19. The Settlement does not release any claims to enforce the

13  Settlement, or the claims of any Person that excludes themselves from the proposed Settlement

14  Class. *Id.*

15        Finally, the Parties have entered into a confidential Supplemental Agreement. In paragraph

16  40 of the Stipulation, the Parties jointly agreed that, under certain circumstances, each of the

17  Defendants will have the right to void the Settlement should a certain number of shares elect to be

18  excluded from the proposed Settlement Class. While the existence of the confidential

19  Supplemental Agreement is referenced in the publicly-filed Stipulation and Notice (*see* Notice, ¶

20  66), the Parties agreed to maintain as confidential the terms of the Supplemental Agreement unless

21  a dispute arises between Lead Plaintiff and Defendants concerning its interpretation or application

22  or the Court otherwise directs, in which event the Parties would submit the Supplemental

23  Agreement to the Court *in camera* and/or under seal. The settling Parties wish to keep the terms

24  of the Supplemental Agreement, including the number of exclusions necessary to terminate the

25  Settlement, confidential.[6]

26

27      [6] Courts in this district have granted preliminary approval to settlements that include a

28  supplemental agreement that is either not filed with the court, or is filed under seal. *See, e.g.,*

MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT
CASE NO. 3:18-CV-00923-RS

## B.     The Plan of Allocation

The proposed Plan of Allocation, set forth in the Notice, was drafted with assistance from Lead Plaintiff's damages consultant and is comparable to plans of allocation approved in other securities class actions.   The Plan of Allocation allocates the Net Settlement Fund among Settlement Class Members who submit valid Claims Forms (or whose Claim Form is otherwise accepted by the Court) on a *pro rata* basis based on the amount of each Claimant's Recognized Claim.   The formula for determining each Claimant's Recognized Claim is based on an out-of-pocket measure of damages consistent with the alleged Exchange Act violations as opposed to losses caused by market, industry, or Company-specific factors or factors unrelated to the allegations, and considers when each Claimant purchased and/or sold Quantum shares, and whether those shares were held at the time of the alleged corrective disclosure events.   ¶¶ 29-31.

## IV.     THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL

As a matter of public policy, settlement is a strongly favored method for resolving complex class actions.   *See In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008) ("there is a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned."); *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982) ("voluntary conciliation and settlement are the preferred means of dispute resolution").

## A.     Standards for Preliminary Approval

Rule 23(e) requires court approval for any settlement of a class action.   Such approval involves a two-step process by which the Court first determines whether a proposed settlement deserves preliminary approval, and then, after notice is given to class members, whether final

---

Stipulation of Settlement, *In re Lendingclub Sec. Litig.*, No. 16 Civ. 02627 (WHA) (N.D. Cal. Feb. 21, 2018), ECF No. 333-1; Order Granting Prelim. Approval of Class Settlement, *In re Lendingclub*, No. 16 Civ. 02627 (WHA) (N.D. Cal. Mar. 16, 2018), ECF No. 343 (preliminarily approving securities fraud class action settlement that provided for a supplemental agreement that would either not be filed with the court, or would be submitted for *in camera* review at the court's request); Stipulation and Agreement of Settlement, *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, and Products Liab. Litig.*, 15 MDL No. 2672 (CRB), (N.D. Cal. Aug. 28, 2018), ECF No. 5267-1; Order Granting Prelim. Approval of Settlement, *In re Volkswagen*, 15 MDL No. 2672 (CRB), (N.D. Cal. Nov. 28, 2018), ECF No 5593 (same).

1   approval is warranted.  Fed. R. Civ. P. 23(e); *see, e.g.*, *West v. Circle K Stores, Inc.*, No. 04 Civ.

2   438, 2006 WL 1652598, at *2 (E.D. Cal. June 13, 2006).  "The Court's task at the preliminary

3   approval stage is to determine whether the settlement falls 'within the range of possible approval.'"

4   *Booth v. Strategic Realty Tr., Inc.*, No. 13 Civ. 04921, 2015 WL 3957746, at *6 (N.D. Cal. June

5   28, 2015) (citation omitted); *see also Rosenburg v. Int'l Bus. Mach. Corp.*, No. 06 Civ. 430, 2007

6   WL 128232, at *5 (N.D. Cal. Jan. 11, 2007) (preliminary approval granted where "Settlement has

7   no obvious defects and is within the ranges of possible Settlement approval such that notice to the

8   Class is appropriate").  The Court's function in preliminarily reviewing a settlement is to determine

9   whether the proposed settlement is fundamentally fair, adequate, and reasonable, and not to

10   "delete, modify or substitute" provisions within a settlement agreement.  *Hanlon v. Chrysler Corp.*,

11   150 F.3d 1011, 1026 (9th Cir. 1998) (internal quotation marks and citation omitted).

12          "Preliminary approval of a settlement is appropriate if 'the proposed settlement appears to

13   be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does

14   not improperly grant preferential treatment to class representatives or segments of the class, and

15   falls within the range of possible approval.'"  *Hefler v. Wells Fargo & Co.*, No. 16 Civ. 5479, 2018

16   WL 4207245, at *8 (N.D. Cal. Sept. 4, 2018) (quoting *In re Tableware Antitrust Litig.*, 484 F.

17   Supp. 2d 1078, 1079 (N.D. Cal. 2007)).  In granting preliminary approval of a settlement and

18   ordering notice, the Court only needs to determine that the settlement is "*potentially* fair, as the

19   Court will make a final determination of its adequacy at the hearing on Final Approval, after such

20   time as any party has had a chance to object and/or opt out."  *Acosta v. Trans Union, LLC*, 243

21   F.R.D. 377, 386 (C.D. Cal. 2007) (emphasis in original).  "The proposed settlement need not be

22   ideal, but it must be fair and free of collusion, consistent with counsel's fiduciary obligations to

23   the class."  *Hefler*, 2018 WL 4207245, at *8 (citation omitted).

24          The Court must consider the following factors when determining whether a settlement

25   should be preliminarily approved: (1) the strength of the plaintiff's case; (2) the risk, expense,

26   complexity, and likely duration of further litigation; (3) the risk of maintaining class action status

27   throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed

28

MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT
CASE NO. 3:18-CV-00923-RS

7

1    and the stage of the proceedings; (6) the experience and views of counsel; and (7) the absence of

2    collusion between the parties. *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000).

3    The Court should be mindful in balancing these considerations here because "[s]ecurities class

4    action litigation is notably difficult and notoriously uncertain." *Trief v. Dun & Bradstreet Corp.*,

5    840 F. Supp. 277, 281 (S.D.N.Y. 1993) (internal quotation marks and citation omitted); *see*  4

6    William B. Rubenstein, *Newberg on Class Actions* § 13:52 (5th ed. 2019) (same); *Johnson v. US*

7    *Auto Parts Network, Inc.*, No. 07 Civ. 2030, 2008 WL 11343481, at *3 (C.D. Cal. Oct. 9, 2008)

8    ("[A] number of courts have commented on the difficulty and uncertainty of maintaining a

9    securities class action.") (collecting cases).

10         As set forth below, the Settlement meets the criteria for preliminary approval and is well

11   within the range of what might be approved as fair, reasonable, and adequate.

12         **B.     The Settlement Is Fair, Reasonable, and Adequate**

13         **1.     The Settlement Is the Product of Arms'-Length Negotiations Between
                     Experienced Counsel Mediated by a Respected and Experienced
14                   Mediator**

15         In approving a class action settlement, the Ninth Circuit "put[s] a good deal of stock in the

16   product of an arms-length, non-collusive, negotiated resolution[.]" *Rodriguez v. W. Publ'g Corp.*,

17   563 F.3d 948, 965 (9th Cir. 2009); *see also, e.g.*, *In re Netflix Privacy Litig.*, No. 11 Civ. 379, 2013

18   WL 1120801, at *4 (N.D. Cal. Mar. 18, 2013) ("Courts have afforded a presumption of fairness

19   and reasonableness of a settlement agreement where that agreement was the product of non-

20   collusive, arms' length negotiations conducted by capable and experienced counsel.").  Indeed,

21   "[t]he assistance of an experienced mediator in the settlement process confirms that the settlement

22   is non-collusive." *Satchell v. Fed. Express Corp.*, No. 03 Civ. 2659, 2007 WL 1114010, at *4

23   (N.D. Cal. Apr. 13, 2007).

24         Lead Counsel engaged in rigorous settlement negotiations with Defendants' Counsel, in a

25   process that an experienced, well-respected Mediator facilitated.  Before the February 20, 2019

26   mediation session, the Parties exchanged mediation statements.  During the mediation, the Parties

27   gave thoughtful presentations on the perceived strengths and weaknesses of their respective claims

28

MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT
CASE NO. 3:18 -CV-00923-RS

8

1   and defenses and had full and frank discussions concerning the merits.  The negotiations focused

2   on disputed issues of whether any of the Defendants acted with the requisite scienter, on loss

3   causation, and on the appropriate amount of damages.  After the mediation ended without an

4   agreement to settle, the Mediator facilitated further discussion with the Parties, which ultimately

5   culminated in the Parties accepting the Mediator's proposal.

6
7

> **2.**     **The Strength of Lead Plaintiff's Case and the Risk, Expense, Complexity, and Likely Duration of Further Litigation**

8       In assessing if a proposed settlement is fair, reasonable, and adequate, the Court must

9   balance the continuing risks of litigation, including the case's strengths and weaknesses, and the

10   complexity, expense, and likely duration of continued litigation, against the benefits afforded to

11   the Settlement Class, including the immediacy and certainty of a financial recovery.  *Mego*, 213

12   F.3d at 458-59; *Officers for Justice*, 688 F.2d at 625.

13       While Lead Plaintiff and Lead Counsel believe that the claims asserted against Defendants

14   have merit, they recognize the significant risk that the Consolidated Amended Class Complaint

15   would be dismissed, given the PSLRA's stringent requirements.  Even if the Consolidated

16   Amended Class Complaint survived, continued litigation would be complex, expensive, and

17   lengthy, with a favorable outcome highly uncertain.  *See Churchill Vill., L.L.C. v. Gen. Elec.*, 361

18   F.3d 566, 576 (9th Cir. 2004) (citing risk, expense, complexity, and likely duration of further

19   litigation as factors supporting final approval of settlement).  Lead Plaintiff would have faced

20   numerous hurdles, including at the class certification stage, during completion of fact and expert

21   discovery, at summary judgment, trial, and in subsequent appeals; thus making settlement

22   appropriate here.  *See, e.g.*, *In re Wireless Facilities, Inc. Sec. Litig. II*, 253 F.R.D. 607, 612 (S.D.

23   Cal. 2008) (preliminarily approving settlement where "[l]iability remains uncertain" as "it appears

24   to the Court that plaintiffs have a viable claim regarding the alleged securities fraud and

25   Defendants have a viable defense against such claims.").  There was also the considerable risk that

26   continued pursuit of the Action could result in a substantially smaller recovery or no recovery at

27   all.  For example, there was a risk that the Court would grant Defendants' motions to dismiss for

28

1    failure to satisfy the pleading standard.  In fact, recent surveys showed that over the last four years,

2    more than 50% of all motions to dismiss securities fraud class actions were granted.[7]

3         Indeed, Defendants deny any wrongdoing and were prepared to make a multi-pronged

4    defense.  For example, Defendants likely would argue they did not act with the requisite state of

5    mind to support the securities fraud claim alleged.  Likewise, Defendants disagree with Lead

6    Plaintiff concerning the number of allegedly damaged shares and the amount of per-share

7    recoverable damages.  *In re Tyco Int'l, Ltd. Multidistrict Litig.*, 535 F. Supp. 2d 249, 260-61

8    (D.N.H. 2007) ("Proving loss causation would be complex and difficult.  Moreover, even if the

9    jury agreed to impose liability, the trial would likely involve a confusing 'battle of the experts'

10   over damages.").  Aside from the litigation risk at each stage, resolution could take years, with no

11   guarantee that the class members would attain any recovery.

12        As such, the Proposed Settlement represents an excellent resolution when the substantial

13   risks of expense and delay of continued litigation are weighed against the certain and immediate

14   recovery for the Class.

15           **3.**      **Risk of Maintaining Class Action Status Throughout Trial**

16        If Lead Plaintiff successfully defeated a motion to dismiss, Lead Plaintiff would have

17   moved for class certification.  Although Lead Plaintiff believes its motion would be meritorious,

18   the Court might have found otherwise.  Defendants likely would continuously raise challenges to

19   class certification, and probably would move to de-certify the Class before trial or on appeal at the

20   conclusion of trial, as class certification may always be reviewed.  *See* Fed. R. Civ. P. 23(c).

21   "While this may not be a particular weighty factor, on balance it somewhat favors approval of the

22   proposed Settlement."  *In re Rent-Way Sec. Litig.*, 305 F. Supp. 2d 491, 506-07 (W.D. Pa. 2003).

23

24

25

26

---

27   [7] *See* Stefan Boettrich & Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2018 Full-Year Review*, NERA Economic Consulting, at 25, Fig. 19 (Jan. 29 2019) ("NERA

28   Report") (attached as Ex. 4 to the Press Decl.)

MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT
CASE NO. 3:18 -CV-00923-RS

1

### 4.    The Amount Offered in Settlement

2      "To evaluate the adequacy of the settlement amount, 'courts primarily consider plaintiffs'

3   expected recovery against the value of the settlement offer.'"  *Hefler*, 2018 WL 4207245, at *9

4   (quoting *Tableware*, 484 F. Supp. 2d at 1080).  The Settlement Amount is within the range of

5   reasonableness.  The recovery represents approximately 19.76% of estimated maximum damages

6   of $41.25 million that is potentially available under Lead Plaintiff's best-case scenario (¶ 24),

7   assuming that: (i) the Court certified the same class period as the Settlement Class Period; (ii) both

8   the August 2017 and February 2018 drops are counted; (iii) Lead Plaintiff survived summary

9   judgment on all elements and convinced a jury that liability was proven; and (iv) the Court and

10  jury accepted Lead Plaintiff's damages theory, including proof of loss causation.  Of course, less

11  than a complete victory on any aspect of these assumptions would decrease recoverable damage.

12      Given these risks, the recovery percentage is reasonable and well within the range of other

13  securities class action settlements with similar total damages.  In 2019, Cornerstone Research

14  reported that in securities class actions where estimated damages were between $25 million and

15  $74 million, the median recovery was only 9.9% of estimated damages.[8]  Additionally, in 2019,

16  NERA Economic Consulting reported that the "median ratio of settlement size to Investor Losses"

17  was 8.4% for cases with investor losses of between $20 million and $49 million.  *See* Ex. 4 (NERA

18  Report) at 35, Fig. 27.  Indeed, "[i]t is well-settled law that a cash settlement amounting to only a

19  fraction of the potential recovery will not per se render the settlement inadequate or unfair."

20  *Officers for Justice*, 688 F.2d at 628.[9]

21

### 5.    The Extent of Discovery and the Stage of Proceedings

22      In considering a class action settlement, courts look for indications that the parties carefully

23  investigated the claims before reaching a resolution.  *See e.g., In re: Volkswagen "Clean Diesel"*

24

25  [8] *See* Ex. 3 (Cornerstone Report) at 6, Fig. 5; *id.* at 19, Appx. 3 (the typical recovery from 2009 –
26  2018 was generally 5.1% of damages for Section 10(b) class action cases in the Ninth Circuit).

27  [9] Moreover, pursuant to the proposed Plan of Allocation, the estimated average recovery, before
    deducting Court-approved fees and expenses and notice and claims administration costs, will be
28  approximately $0.48 per damaged share.  ¶ 22.

1   *Mktg., Sales Practices, & Prod. Liab. Litig.*, MDL No. 2672, 2016 WL 6248426, at *13-14 (N.D.

2   Cal. Oct. 25, 2016) (commenting that formal discovery is "not a necessary ticket to the bargaining

3   table where the parties have sufficient information to make an informed decision about settlement"

4   and noting that the "extensive review of discovery materials indicates that the [Lead Plaintiff] had

5   sufficient information to make an informed decision about the Settlement") (internal quotation

6   marks and citation omitted); *In re Zynga Inc. Sec. Litig.*, No. 12 Civ. 4007, 2015 WL 6471171, at

7   *9 (N.D. Cal. Oct. 27, 2015) ("The use of a mediator and the presence of discovery 'support the

8   conclusion that the Plaintiff was appropriately informed in negotiating a settlement.'") (citation

9   omitted).

10          Lead Counsel conducted an extensive investigation of the claims, including: (i) detailed

11   review of Quantum's SEC filings, press releases, conference calls, news reports, and Defendants'

12   other public statements made prior to, during, and after the Settlement Class Period; (ii) review of

13   public documents, reports, announcements, and news articles concerning Quantum; (iii) review of

14   securities and financial analysts' research reports; (iv) economic analyses of stock price movement

15   and pricing data; (v) through a private investigator, interviews of former employees; and (vi)

16   review and analysis of other publicly available material and data.  Lead Counsel also consulted

17   with experts in the fields of accounting, loss causation, and damages. *See* ¶¶ 25(a)(i), 56.  The

18   Parties' settlement negotiations also informed Lead Counsel about the strengths and weaknesses

19   of the potential claims and Defendants' defenses.

20          Moreover, prior to seeking preliminary approval of the Settlement, Lead Counsel engaged

21   in confirmatory discovery.  Defendants provided Lead Counsel with the documents that Quantum

22   had submitted to the SEC.  ¶ 10.  To expedite the review process and save on legal costs (namely,

23   attorney time to review every document in the production), Lead Counsel used predictive coding

24   technology.  *Id.*  Courts consider predictive coding to be a far more accurate and less costly means

25   of reviewing documents than manual review using  keyword searches.  *See, e.g., Youngevity Int'l,*

26   *Corp. v. Smith*, No. 16 Civ. 704, 2019 WL 1542300, at *11-12 (S.D. Cal. Apr. 9, 2019) (collecting

27   cases); *see also Hyles v. New York City*, No. 10 Civ. 3119, 2016 WL 4077114, at *2 (S.D.N.Y.

28

Aug. 1, 2016) ("[I]n general, TAR is cheaper, more efficient and superior to keyword searching."). Predictive coding here resulted in the identification of a subset of documents relevant to the allegations, which Lead Counsel then reviewed.[10]  Further, Lead Counsel interviewed Quantum's current CFO about, among other things, Quantum's upcoming financial restatements, internal controls and accounting practices.  ¶ 10.  This information enabled Lead Counsel to further assess the strengths and weaknesses of this Action, including the plausibility of defenses to scienter and the appropriateness of settlement here.  *Id.*  As a result, Lead Plaintiff and Lead Counsel have sufficient basis to make informed decisions about the relative merits and weakness of this Action and the fairness of the Settlement.

> **6.      The Proposed Settlement Does Not Unjustly Favor Any Settlement Class Members, Including Lead Plaintiff**

The Settlement does not provide preferential treatment to any Settlement Class Member, segment of the Settlement Class, or to the Lead Plaintiff.  *Hefler*, 2018 WL 4207245, at *8.  The Plan of Allocation provides for distribution of the Net Settlement Fund to Settlement Class Members who have a loss on their transactions in Quantum shares purchased or otherwise acquired during the Settlement Class Period.  *See* Notice, pp. 15-18.  The Plan of Allocation is based on when Settlement Class Members purchased and/or sold Quantum shares, as developed by Lead Plaintiff's damages consultant.  This method ensures that Settlement Class Members' recoveries are based upon the relative losses caused by the alleged wrongdoing.  Lead Plaintiff will receive a distribution from the Net Settlement Fund in the same way as other Settlement Class Members.

> **7.      The Recommendations of Experienced Counsel**

Courts also give weight to the opinion of experienced and informed counsel supporting the settlement.  *See, e.g.*, *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2007) ("[t]he recommendations of plaintiffs' counsel should be given a presumption of reasonableness")

---

[10] That subset constituted approximately 17% of the total production.  Based on the search terms used in the predictive coding model, those documents were found to have a statistically high probability of being relevant (60% or more).  ¶ 10.

1   (internal quotation marks and citation omitted); *accord Stewart v. Applied Materials, Inc.*, No. 15

2   Civ. 02632, 2017 WL 3670711, at *6 (N.D. Cal. Aug. 25, 2017) (same).  Here, Lead Counsel has

3   extensive experience in securities litigation and has obtained a thorough understanding of the

4   merits and risks of the Action.  Lead Counsel's belief in the fairness and reasonableness of this

5   Settlement supports preliminary approval.  Defendants have been vigorously represented by

6   Wilson Sonsini Goodrich & Rosati P.C., Debevoise & Plimpton LLP and Bruch Hanna LLP

7   throughout the Action and settlement negotiations.  Defense Counsel is equally well-informed

8   regarding the case, and their representation of Defendants was no less rigorous than Lead

9   Counsel's representation of the Settlement Class.  Preliminary approval is warranted because the

10  Settlement is the product of serious, informed, and non-collusive negotiations among experienced

11  counsel and a highly-qualified Mediator.

12  **V.      THE COURT SHOULD CERTIFY THE CLASS FOR SETTLEMENT PURPOSES**

13          At the Settlement Hearing, the Court will be asked to grant final approval to the Settlement.

14  Thus, it is appropriate for the Court to consider, at the preliminary approval stage and solely for

15  purpose of the Settlement, whether the certification of the Settlement Class appears to be

16  warranted.  *Hanlon*, 150 F.3d at 1019; *Jaffe v. Morgan Stanley & Co., Inc.*, No. 06 Civ. 3903, 2008

17  WL 346417, at *2 (N.D. Cal. Feb. 7, 2008).  Rule 23(a) sets forth four prerequisites to class

18  certification: (i) numerosity; (ii) commonality; (iii) typicality; and (iv) adequacy of representation.

19  *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1172 (9th Cir. 2010).

20          In addition, the Court must find that at least one of Rule 23(b)'s three conditions is satisfied.

21  *Id*.  Under subsection (b)(3), the Court must find that the questions of law or fact common to the

22  members of the class predominate over any questions affecting only individual members and that

23  a class action is superior to other available methods for the fair and efficient adjudication of the

24  controversy.  *Id*.; *Jaffe*, 2008 WL 346417, at *7.  The proposed Settlement Class consists of "all

25  Persons who purchased Quantum common stock during the period from April 18, 2016 through

26  February 8, 2018, inclusive (the Settlement Class Period), and who were damaged thereby."

27

28

1  Stipulation ¶ 1(pp).[11]   February 8, 2018 is included as the end date for the Settlement Class Period

2  because it is the date of the last disclosure.

### A.    The Settlement Class Is Sufficiently Numerous to Warrant Certification

4  Rule 23(a)(1) requires the class to be so large that joinder of all members is impracticable.

5  Here, Quantum common stock was traded on the New York Stock Exchange ("NYSE"), averaged

6  34.674 million shares outstanding during the Settlement Class Period, and had an average weekly

7  trading volume of approximately 1.259 million shares.   Purchasers of Quantum shares during the

8  Settlement Class Period number in the thousands and are located throughout the United States.   A

9  group this large and geographically diverse is too unwieldy to join in a single action.   *Hodges v.*

10  *Akeena Solar, Inc.*, 274 F.R.D. 259, 266 (N.D. Cal. 2011).

### B.    There Are Substantial Common Questions of Law and Fact

12  A proposed settlement class has sufficient commonality to justify certification where there

13  are substantial questions of law and fact common to the class.   *See Wolin*, 617 F.3d at 1172.   Rule

14  23(a)(2) should be construed permissibly, such that "[a]ll questions of fact and law need not be

15  common to satisfy the rule."   *Hanlon*, 150 F.3d at 1019.   A class has sufficient commonality where

16  there is "[t]he existence of shared legal issues with divergent factual predicates" or "a common

17  core of salient facts coupled with disparate legal remedies within the class."   *Id.*; *accord Staton v.*

18  *Boeing Co.*, 327 F.3d 938, 953 (9th Cir. 2003).

19  Lead Plaintiff submits that common questions of fact and law include: (i) whether

20  Defendants violated Sections 10(b) and 20(a) of the Exchange Act, and Rule 10b-5 promulgated

21  thereunder; (ii) whether Defendants omitted and/or misrepresented material facts; (iii) whether

22  Defendants knowingly or recklessly disregarded that their statements and omissions were false

23  and misleading; (iv) whether the price of Quantum's common stock was artificially inflated as a

24  result of Defendants' misrepresentations and/or omissions; and (v) whether and to what extent

25  disclosure of the truth regarding Defendants' omissions and/or misrepresentations of material facts

26

27  [11] Excluded from the Settlement Class are the persons and entities identified above (*supra* at pp.4-

28  5), as well as anyone who submits a request for exclusion that is accepted by the Court.

1    caused Settlement Class Members to suffer economic loss and damages.  In the context of the

2    Settlement Class, additional common questions include whether the Settlement is fair, reasonable,

3    and adequate; and whether the Settlement should be approved.

4        **C.      Lead Plaintiff's Claims Are Typical of Other Settlement Class Members**

5        Lead Plaintiff alleges that it purchased Quantum common stock during the Settlement

6    Class Period and was subsequently damaged due to the conduct alleged here.  Settlement Class

7    Members were allegedly harmed in the same way.  Moreover, Lead Plaintiff's interest in obtaining

8    a fair, reasonable, and adequate settlement of the claims is identical to remaining Settlement Class

9    Members' interests.  Under the proposed Plan of Allocation, Lead Plaintiff will receive the same

10   *pro rata* share of the Settlement Fund as the rest of the Settlement Class.   Accordingly, the

11   typicality requirement is met.  *In re Bridgepoint Educ., Inc. Sec. Litig.*, No. 12 Civ. 1737, 2015

12   WL 224631, at *5 (S.D. Cal. Jan. 15, 2015) ("Here, Plaintiffs' claims arise from the same events

13   and conduct that gave rise to the claims of other class members.  They are, therefore, typical of the

14   class.").

15       **D.      Lead Plaintiff and Lead Counsel Adequately Represent the Settlement Class**

16       Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the

17   interests of the class."  Fed. R. Civ. P. 23(a)(4).  "The two key inquiries are (1) whether there are

18   conflicts within the class; and (2) whether plaintiffs and counsel will vigorously fulfill their duties

19   to the class.  The adequacy inquiry also 'factors in competency and conflicts of class counsel.'"

20   *In re Diamond Foods, Inc. Sec. Litig.*, 295 F.R.D. 240, 252 (N.D. Cal. 2013) (citations omitted).

21       Lead Plaintiff has prosecuted this Action, including conducting confirmatory discovery by

22   reviewing documents and interviewing Quantum's CFO, negotiated with Defendants through

23   counsel, and approved the Settlement for Settlement Class Members' benefit.  Moreover, qualified

24   counsel with extensive experience in the prosecution of securities class actions represents Lead

25   Plaintiff.  Thus, Lead Plaintiff and Lead Counsel respectfully submit that Rule 23(a)(4) is met.

26

27

28

### E. The Predominance and Superiority Requirements Are Satisfied

Under Rule 23(b)(3), a class may be certified if a court finds that common questions of law or fact predominate over individual questions, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.  Here, the proposed Settlement Class satisfies Rule 23(b)(3) in that, as described above, the questions of law or fact common to Settlement Class Members predominate over any questions affecting individual members. Moreover, the Settlement Class Members' damages are not sufficient to make it economical to prosecute separate actions in order to recover individual losses sustained as a result of Defendants' alleged securities violations. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997) ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action. . . . A class action solves this problem[.]") (citation omitted).  Accordingly, a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

In securities claims, factual variations among shareholders related to stock transaction dates and sizes, "sophistication of investors and degree of reliance" commonly exist, but common questions of fact related to misrepresentation claims "will predominate over the individual issues." *Persky v. Turley*, No. 88 Civ. 1830, 1991 WL 329564, at *3 (D. Ariz. Dec. 20, 1991).  Additionally, Lead Plaintiff may rely on the fraud-on-the-market presumption of reliance since Quantum stock was actively traded in an efficient market.  *See Basic Inc. v. Levinson*, 485 U.S. 224, 241-42, 246-47 (1988).  Quantum common stock traded on the NYSE, which is presumed to be efficient.  *See, e.g.*, *Lumen v. Anderson*, 280 F.R.D. 451, 459 (W.D. Mo. 2012) ("*Basic* itself recognized the NYSE as an efficient market.").  Because the fraud-on-the-market presumption applies, the need to prove individual reliance by each Settlement Class Member is eliminated, further supporting predominance.  *See Huberman v. Tag-It Pacific Inc.*, 314 F. App'x 59, 62-63 (9th Cir. 2009).

## VI. THE PLAN OF ALLOCATION IS FAIR AND REASONABLE

Lead Counsel also seeks preliminary approval of the Plan of Allocation of the Net Settlement Fund.  *See* Notice, pp. 15-18.  Assessment of a plan of allocation in a class action under

1   Rule 23 is governed by the same standards of review applicable to the settlement as a whole – it

2   must be fair and reasonable.  *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1284 (9th Cir.

3   1992).  The plan of allocation's objective is to provide an equitable basis upon which to distribute

4   the settlement fund among eligible class members.  An allocation formula must be "rationally

5   related to the relative strengths and weakness" of the case.  *Rosenburg*, 2007 WL 128232, at *5.

6          The Plan of Allocation provides an equitable basis to allocate the Net Settlement Fund

7   among all Class Members who submit an acceptable Proof of Claim and Release.  The Plan of

8   Allocation was developed by Lead Counsel, with the assistance of a damages expert, and reflects

9   the theories of causation and damages they would have presented at trial.  The Plan of Allocation

10  is based on an out-of-pocket theory of damages consistent with Section 10(b) of the Exchange Act

11  and reflects an assessment of the damages that Lead Plaintiff contends could have been recovered

12  here.  An individual Claimant's recovery under the Plan of Allocation will depend on a number of

13  factors, including the number of valid claims filed by other Claimants, how many shares of

14  Quantum common stock the Claimant purchased or sold during the Settlement Class Period, and

15  when that Claimant purchased or sold the shares.  If a Claimant has an overall market gain with

16  respect to their overall transactions in Quantum stock during the Settlement Class Period, or if the

17  Claimant purchased shares during the Settlement Class Period but did not hold any of those shares

18  through at least one of the alleged corrective disclosures, the Claimant receives no recovery, as

19  any loss suffered would not have been caused by the revelation of the alleged fraud.  Lead Counsel

20  believes that the Plan of Allocation will result in a fair and equitable distribution of the Net

21  Settlement Fund among Class Members who submit valid claims.

22         The Plan of Allocation also identifies the Investor Protection Trust ("IPT") as the proposed

23  *cy pres* recipient of any residual funds that may remain after one or more distributions of the Net

24  Settlement Fund to Authorized Claimants.  Here, 100% of the Net Settlement Fund will be

25  distributed to Authorized Claimants and, if any funds remain after initial distribution (for example,

26  due to uncashed or returned checks), further subsequent distributions to Authorized Claimants who

27  would receive at least $10.00 from such a redistribution will be conducted as long as they are cost-

28

effective.   The IPT, a 501(c)(3) nonprofit organization devoted to investor education, is an appropriate *cy pres* recipient because of the nature of the securities fraud claims asserted in the Action and this District has approved it in other similar actions, including *Hefler*, 2018 WL 4207245, at *5.[12]  *See* ¶ 57.  However, due to the potential multiple rounds of distributions, as long as it is cost-effective, only a small amount of the funds likely will be directed to IPT.  *See Zynga Inc. Sec. Litig.*, 2015 WL 6471171, at *11.

## VII. THE NOTICE PROGRAM SATISFIES RULE 23, DUE PROCESS, AND THE PSLRA

### A. The Method of Notice Is Adequate

Rule 23(e) provides that a class action shall not be dismissed or compromised without court approval, and notice of the proposed dismissal or compromise shall be given to all class members in such manner as the court directs.  Here, the Parties propose to mail, by first class mail, individual copies of the Postcard Notice (Stipulation, Ex. A-4) to all Settlement Class Members who can be identified with reasonable effort, as well as brokerage firms and other nominees who regularly act as nominees for beneficial stock purchasers.  Contemporaneously with the mailing of the Postcard Notice, copies of the Notice (Stipulation, Ex. A-1) and the Claim Form (Stipulation, Ex. A-2) will be posted on a website to be developed for the Settlement, from which copies of the Notice and Claim Form can be downloaded, and where claims can be submitted online.  Upon request, the Claims Administrator will also mail copies of the Notice and/or Claim Form.  No more than ten (10) business days after mailing the Postcard Notice, the Summary Notice (Stipulation, Ex. A-3) will be published once in *Investor's Business Daily* and transmitted once over *PR Newswire*.

Courts routinely find these methods of notice are sufficient.  In particular, "[t]he use of combination of a mailed post card directing class members to a more detailed online notice has

---

[12] *See also In Re: Volkswagen "Clean Diesel" Mktg.,* , 2018 WL 6198311, at *5 (finding IPT an appropriate *cy pres* beneficiary because "[a] savvy, educated investor is hopefully more likely to identify signs of securities fraud, which furthers the Exchange Act's purpose of maintaining 'fair and honest markets') (quoting 15 U.S.C. § 78b)).

1    been approved by courts." *In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 182

2    n.3 (S.D.N.Y. 2014) (citing cases); *see also Barani v. Wells Fargo Bank, N.A.*, No. 12 Civ. 2999,

3    2014 WL 1389329, at *10 (S.D. Cal. Apr. 9, 2014) (approving postcard and online notice in

4    consumer class action).[13]  With an estimated 20,000 notices to be sent by mail, a full printed Notice

5    and Claim Form sent to each potential Settlement Class Member would entail significantly larger

6    printing and mailing costs than the proposed Postcard Notice mailing procedure.  Thus, Lead

7    Plaintiff respectfully submits that the combination of the mailed Postcard, published Summary

8    Notice, and availability online of the Notice provides "the best notice that is practicable under the

9    circumstances."[14]

10          **B.     The Content of the Notice Is Adequate**

11          As required by Rule 23(c)(2), the notice program will inform Settlement Class Members

12    of the claims alleged in the Action, the terms of the Settlement, and their rights as Settlement Class

13    Members to opt out or object to the Settlement, or otherwise object to the Plan of Allocation and/or

14    the proposed attorneys' fees and expenses.  *See Stratton v. Glacier Ins. Adm'rs, Inc.*, No. 02 Civ.

15    06213, 2007 WL 274423, at *14 (E.D. Cal. Jan. 29, 2007) ("Notice is satisfactory in the context

16    of settlement if it fairly apprises class members of the terms of the settlement in sufficient detail

17    to afford them the opportunity to decide whether they should accept the benefits offered, opt out

18    and pursue their own remedies, or object to the settlement.").[15]

19    _____

20    [13] *See In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*, 789 F. Supp. 2d 935, 973 (N.D.
      Ill. 2011) ("The postcard notice was more than sufficient."); *see also In re Mut. Funds Inv. Litig.*,
21    No. 04 MD 15861, 2010 WL 2342413, at *6-7 (D. Md. May 19, 2010) (finding that combination
      of postcard notice, summary notice, and detailed notice available online "is the best notice practical
22    under the circumstances and allows Class Members a full and fair opportunity to consider the
      proposed Settlements").

23    [14] Although whether the Class Action Fairness Act, 28 U.S.C. § 1715 *et seq.*, ("CAFA") notice
24    provisions were intended to apply to class actions brought under the federal securities laws is
      unclear, Defendants will be providing CAFA notice.  To that end, Defendants shall serve upon the
25    appropriate state official of each state in which a Settlement Class Member resides and the
      Attorney General of the United States a notice of the proposed Settlement in compliance with
26    CAFA.

27    [15] *See also Churchill Vill.*, 361 F.3d at 575 ("Notice is satisfactory if it 'generally describes the
      terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and
28    to come forward and be heard.'") (citation omitted).

MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT
CASE NO. 3:18 -CV-00923-RS
                                    20

1    The proposed notice program satisfies the Rule 23(c)(2) requirements by setting forth in

2 plain, easily understandable language: (i) the nature of the action (*see* Notice, pp. 7-8 ("What Is

3 This Case About?"); Postcard Notice); (ii) the Settlement Class Definition (*see* Notice, p. 8 ("How

4 Do I Know If I Am Affected By The Settlement? Who Is Included In The Settlement?"); Summary

5 Notice, p. 1; Postcard Notice); (iii) a description of the claims at issue and the defenses to those

6 claims (*see* Notice, pp. 7-10 ("What Is This Case About?" and "What Are Lead Plaintiff's Reasons

7 For The Settlement?")); (iv) the ability of Settlement Class Members to enter an appearance

8 through counsel (*see* Notice, pp. 20-21 ("When And Where Will The Court Decide Whether To

9 Approve The Settlement? Do I Have To Come To The Hearing? May I Speak At The Hearing If I

10 Don't Like The Settlement?"); Postcard Notice); (v) the Settlement Class Member's ability to be

11 excluded and the process for exclusion from the Settlement Class (*see* Notice, p. 19 ("What If I

12 Do Not Want To Be A Member Of The Settlement Class? How Do I Exclude Myself?"); Summary

13 Notice, p. 3; Postcard Notice); (vi) the binding effect of a Class judgment (*see* Notice, pp. 10-13

14 ("How Are Settlement Class Members Affected By The Action And The Settlement?"); Summary

15 Notice, pp. 2-3; Postcard Notice).

16    Additionally, the notice program satisfies the requirements of the PSLRA, 15 U.S.C. § 78u-

17 4(a)(7), by setting forth in plain, easily understandable language: (i) a cover page summarizing the

18 information in the Notice (*see* Notice, pp. 1-5); (ii) a statement of plaintiff recovery, and the

19 estimated recovery per damaged share (*see* Notice, pp. 4, 13-16 ("How Much Will My Payment

20 Be?"), Postcard Notice); (iii) a statement of potential outcomes of the case (*see* Notice, p. 10

21 ("What Might Happen If There Were No Settlement?")); (iv) a statement of attorneys' fees or costs

22 sought (*see* Notice, pp. 4, 19 ("What Payment Are The Attorneys For The Settlement Class

23 Seeking?  How Will The Lawyers Be Paid?"); Postcard Notice); (v) identification of lawyers'

24 representatives (*see* Notice, pp. 22-23 ("Can I See The Court File? Whom Should I Contact If I

25 Have Questions?"); Summary Notice, pp. 3-4); (vi) reasons for settlement (*see* Notice, pp. 9-10

26 ("What Are Lead Plaintiff's Reasons For The Settlement?")).

27

28
MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT
CASE NO. 3:18 -CV-00923-RS
21

1       Further, the notice program will provide clear information about the time, date, and

2   location of the Settlement Hearing and the process for submitting an objection to the Settlement

3   or other relief to be requested by Lead Plaintiff and Lead Counsel.  *See* Notice, pp. 20-21 (response

4   to question "When And Where Will The Court Decide Whether To Approve The Settlement?  Do

5   I Have To Come To The Hearing?  May I Speak At The Hearing If I Don't Like The Settlement?");

6   Summary Notice, pp. 2-3; Postcard Notice.  The Notice also states that the date of the hearing may

7   change without further notice and advises Settlement Class Members to check the Settlement

8   website or with Lead Counsel to confirm that the date has not changed.  *See* Notice, p. 21.

9   **VIII.   THE   INTENDED   REQUEST   FOR   ATTORNEYS'   FEES,   LITIGATION**
         **EXPENSES, AND LEAD PLAINTIFF'S EXPENSES**

10      Lead Counsel[16] intends to seek an award of attorneys' fees of up to 25% of the Settlement

11  Amount and reimbursement of Litigation Expenses not to exceed $125,000, plus interest earned

12  thereon.  Lead Counsel will provide more detailed information in support of its application in its

13  motion for attorneys' fees and expenses, to be filed with the Court 35 days before the final

14  Settlement Hearing.  The Ninth Circuit considers 25% as a benchmark award for attorneys' fees.

15  *See Staton*, 327 F.3d at 968 ("This circuit has established 25% of the common fund as a benchmark

16  award for attorney fees.") (citation omitted).  However, in "most common fund cases, the award

17  exceeds that [25%] benchmark."  *Knight v. Red Door Salons, Inc.*, No. 08 Civ. 1520 SC, 2009 WL

18  248367 (N.D. Cal. Feb. 2, 2009).

19      Notwithstanding, a benchmark is merely a benchmark; as noted, "in most common fund

20  cases, the award exceeds that benchmark."  *Omnivision*, 559 F. Supp. 2d at 1047.  Indeed,

21  comparable fees greater than the "benchmark" have been granted routinely, especially in complex

22  securities fraud cases such as this one.  *See, e.g., Mego*, 213 F.3d at 463 (affirming award of one-

23  third of the total recovery); *In re Pacific Enters. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (a

24

25

26  [16] Lead Counsel's lodestar is comprised of the total hours worked by Kirby McInerney and the
    Court-appointed Liaison Counsel, Glancy Prongay and Murray LLP.  For purposes of this
27  memorandum only, these firms are collectively referred to as "Lead Counsel."

28
    MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT
    CASE NO. 3:18 -CV-00923-RS
                                          22

1   33% award "for attorneys' fees is justified because of the complexity of the issues and the

2   risks.").[17]

3         Moreover, while Lead Counsel has not yet completed a final review of its time dedicated

4   to this Action, and notes that substantial additional time will be spent in connection with final

5   approval and Settlement administration, Lead Counsel's lodestar to date is approximately

6   $1,329,403.75. ¶ 54.  Thus, a fee award of 25% of the Settlement Amount (or $2,037,500) would

7   result in a fractional multiplier of 1.53 on Lead Counsel's lodestar.  *See Vizcaino v. Microsoft*

8   *Corp.*, 290 F.3d 1043, 1052 (9th Cir. 2002) (finding multipliers ranged as high as 19.6, with the

9   most common range from 1.0 to 4.0); *Steiner v. Am. Broad. Co.*, 248 F. App'x 780, 783 (9th Cir.

10  2007) (affirming fee representing a lodestar multiplier of 6.85 as "well within the range of

11  multipliers that courts have allowed").  If preliminary approval is granted, Lead Counsel will

12  present its total lodestar with its fee application at final approval.  Lead Counsel also intends to

13  seek reimbursement of Lead Counsel's actual out-of-pocket litigation expenses in an amount not

14  to exceed $125,000, which includes the substantial costs of retaining experts (¶ 55), and will

15  provide further detail of any reimbursement request with its fee application.

16  **IX.**    **THE PROPOSED CLAIMS ADMINISTRATOR**

17        Lead Plaintiff also requests that the Court authorize the retention of A.B. Data, Ltd. ("A.B.

18  Data") to serve as the Claims Administrator.  After obtaining bids from three nationally recognized

19  claims administration firms, Lead Counsel retained A.B. Data to administer Notice of the proposed

20  Settlement and to process Claims.  *See* ¶ 36.  A.B. Data is a highly respected and experienced

21  claims administrator, with experience in administrating many large and complex securities

22  litigation matters.  *See* Declaration of Eric J. Miller Regarding Notice Plan ("Miller Decl."), ¶ 3,

23  attached as Ex. 2 to the Press Declaration.

24

25  [17] Order Awarding Co-Lead Counsel Attorneys' Fees and Expenses at 1, *In re Infineon Techs. AG*
     *Sec. Litig.*, No. 04 Civ. 4156 (N.D. Cal. Nov. 2, 2011), ECF No. 371 (awarded fees of 27% of $6.2
26  million recovery, plus expenses); Order Awarding Lead Counsel Attorneys' Fees and Expenses at
     1, *In re Accuray Inc. Sec. Litig.*, No. 09 Civ. 3362 (N.D. Cal. Dec. 8, 2011), ECF No. 146 (awarded
27  fees of 25% of $13.5 million recovery, plus expenses).

28

A.B. Data's fees for administration of the Settlement are charged on a per-claim basis and expenses will be billed separately (including expenses for printing and mailing the Postcard Notice, publishing the Summary Notice, establishing and maintaining the settlement website, and establishing and operating the toll-free telephone helpline).  ¶ 39.  Because the costs are highly dependent on the number of Postcard Notices ultimately mailed and the number of Claims ultimately received and processed, at this time only a rough estimate of the total Notice and Administration Costs can be provided.  A.B. Data estimates, based on its past experience with securities settlements of a similar size and companies with similar market capitalization and the length of the Settlement Class Period, that as many as 20,000 Postcard Notices will be mailed and that between 15% to 25% of claims will be processed.  *See* Miller Decl. ¶¶ 15-16.

Accordingly, A.B. Data estimates that the total Notice and Administration Costs for the Action will be approximately $100,000.  *Id.* ¶ 17.  These costs are necessary in order to effectuate the Settlement and at approximately 1.2% of the total value Settlement, or $0.006 per damaged share, are reasonable in relation to the value of the Settlement.  *Id.*  If the Settlement is approved, the Notice and Administration Costs will be paid from the Settlement Fund.

## X.    PROPOSED SCHEDULE OF EVENTS

In connection with preliminary approval, the Court must set a final approval of the settlement hearing date, dates for mailing and publication of the notice program, and deadlines for submitting claims, opting out, or objecting to the Settlement.  Lead Plaintiff respectfully proposes the following schedule for the Court's consideration, as agreed to by the Parties and set forth in the proposed Preliminary Approval Order:

MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT
CASE NO. 3:18 -CV-00923-RS

24

| Event | Proposed Date |
|---|---|
| Defendants' deadline to produce transfer records | No later than 5 business days after entry of the Preliminary Approval Order (Preliminary Approval Order ¶ 12(a)) |
| Deadline for mailing the Postcard Notice mailed to Settlement Class Members and posting the Notice and Claim Form on the Settlement website (the "Notice Date") | No later than 15 calendar days following receipt of the transfer records report from Defendants (Preliminary Approval Order ¶¶ 12(b), 12(d)) |
| Deadline to publish the Summary Notice | No later than 10 business days after the Notice Date (Preliminary Approval Order ¶ 12(e)) |
| Deadline for Lead Plaintiff to file papers in support of final approval and application for fees and expenses | Filed and served 35 calendar days prior to the Settlement Hearing (Preliminary Approval Order ¶ 30) |
| Deadline for submitting objections and for requesting exclusion | 21 calendar days prior to the Settlement Hearing (Preliminary Approval Order ¶¶ 18, 21) |
| Deadline for filing reply papers | Filed no later than 7 calendar days prior to the Settlement Hearing (Preliminary Approval Order ¶ 30) |
| Settlement Hearing | 105 calendar days after entry of the Preliminary Approval Order, or at the Court's earliest convenience thereafter (Preliminary Approval Order ¶ 8) |
| Deadline for submitting Claim Forms | Postmarked 120 calendar days after the Notice Date (Preliminary Approval Order ¶ 15) |

## XI.    CONCLUSION

Lead Plaintiff respectfully requests that the Court enter the Preliminary Approval Order, which Defendants have consented to, preliminarily certify the Settlement Class, and direct the notice be distributed to Class Members.

Dated:  July 2, 2019                              Respectfully submitted,

**KIRBY McINERNEY LLP**

By:     /s/ *Ira M. Press*
            Ira M. Press
            Christopher S. Studebaker
250 Park Avenue, Suite 820
New York, New York 10177
Telephone: (212) 371-6600
Facsimile: (212) 699-1194
ipress@kmllp.com
cstudebaker@kmllp.com

MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT
CASE NO. 3:18 -CV-00923-RS

1

2   *Counsel for Lead Plaintiff Globis Capital Advisors L.L.C. and the Proposed Plaintiff Class*

3

4   Robert V. Prongay (#270796)
    Lionel Z. Glancy (#134180)

5   Lesley F. Portnoy (#304851)
    **GLANCY PRONGAY & MURRAY LLP**

6   1925 Century Park East, Suite 2100
    Los Angeles, California 90067

7   Telephone: (310) 201-9150
    Facsimile: (310) 432-1495

8   rprongay@glancylaw.com
    lportnoy@glancylaw.com

9

10  *Liaison Counsel for Lead Plaintiff Globis Capital Advisors L.L.C. and the Proposed Plaintiff Class*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PROOF OF SERVICE BY ELECTRONIC POSTING**

I, the undersigned say:

I am not a party to the above case and am over eighteen years old.  On July 2, 2019, I served true and correct copies of the foregoing document, by posting the document electronically to the ECF website of the United States District Court for the Northern District of California, for receipt electronically by the parties listed on the Court's Service List.

I affirm under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on July 2, 2019, at New York, New York.

*/s/ Ira M. Press*
Ira M. Press

*Counsel for Lead Plaintiff Globis Capital Advisors L.L.C. and the Proposed Plaintiff Class*