1  Robert V. Prongay (#270796)
   Lionel Z. Glancy (#134180)
2  Lesley F. Portnoy (#304851)
3  GLANCY PRONGAY & MURRAY LLP
   1925 Century Park East, Suite 2100
4  Los Angeles, California 90067
   Telephone: (310) 201-9150
5  Facsimile: (310) 432-1495
   rprongay@glancylaw.com
6  lportnoy@glancylaw.com

7
   *Liaison Counsel for Lead Plaintiff Globis Capital Advisors L.L.C.*
8  *and the Proposed Plaintiff Class*

9  [Additional Counsel on Signature Page]

10                **UNITED STATES DISTRICT COURT**
                 **NORTHERN DISTRICT OF CALIFORNIA**
11                  **SAN FRANCISCO DIVISION**

12

13  STEVEN LAZAN,                          Case No.  3:18-cv-00923-RS

14                    Plaintiff,           **CLASS ACTION**

15  v.                                     **LEAD PLAINTIFF'S NOTICE OF
                                           MOTION FOR FINAL APPROVAL
16  QUANTUM CORPORATION, *et. al.*,        OF CLASS ACTION SETTLEMENT
                                           AND PLAN OF ALLOCATION AND
17                    Defendants.          MEMORANDUM OF POINTS AND
                                           AUTHORITIES IN SUPPORT
18                                         THEREOF
19

20  ALEXANDER E. NABHAN,

21                    Plaintiff,           Hearing Date: November 14, 2019
                                           Time:         1:30 p.m.
22  v.                                     Location:     Courtroom 3 – 17th Floor
                                           Judge:        Hon. Richard Seeborg
23  QUANTUM CORP., *et al.*,

24                    Defendants.

25

26

27

28

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................... iii

NOTICE OF MOTION FOR FINAL APPROVAL
OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION ...................................1

STATEMENT OF ISSUES TO BE DECIDED .........................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES .............................................................2

    I.      PRELIMINARY STATEMENT ...........................................................................2

    II.     PRELIMINARY APPROVAL AND THE NOTICE PROGRAM .......................3

    III.    PROCEDURAL AND FACTUAL BACKGROUND..........................................5

    IV.    THE PROPOSED SETTLEMENT IS FAIR, REASONABLE,
           AND ADEQUATE UNDER THE APPLICABLE STANDARDS
           AND SHOULD BE APPROVED ........................................................................5

           A.     The Standards for Final Approval of Class Action Settlements ................5

           B.     Application of the Ninth Circuit's Factors Supports
                Final Approval of the Settlement .............................................................7

                1.     The Strength of Lead Plaintiff's Case and the Risks
                        Associated with Continued Litigation .............................................7

                2.     The Complexity, Expense, and Likely Duration of
                        Further Litigation ..........................................................................10

                3.     The Risk of Maintaining Class-Action Status
                        Through Trial .................................................................................11

                4.     The Amount Offered in the Settlement..........................................12

                5.     The Extent of Discovery Completed and the
                        Stage of the Proceedings................................................................14

                  6.     The Experience and Views of Counsel............................................15

                  7.     Reaction of the Settlement Class to Date.......................................16

            C.     Application of the Factors Identified in the Amendments to
                 Rule 23 Supports Approval of the Settlement as
                 Fair, Reasonable, and Adequate...............................................................17

                1.     Lead Plaintiff and Lead Counsel Have Adequately
                        Represented the Settlement Class ..................................................17

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND
PLAN OF ALLOCATION AND MEMORANDUM IN SUPPORT THEREOF
CASE NO. 3:18 -CV-00923-RS

i

2.   The Settlement Is the Result of Arm's Length Negotiations Between Experienced Counsel Conducted Under the Auspices of a Well-Respected Mediator.......................................18

3.   The Relief Provided to the Settlement Class Is Adequate and the Settlement Treats Class Members Equitably Relative to Each Other ...............................19

V.   THE PLAN OF ALLOCATION IS FAIR, REASONABLE, AND ADEQUATE........................................................22

VI.   THE SETTLEMENT CLASS SHOULD BE FINALLY CERTIFIED .....................................................................23

CONCLUSION..................................................................................................................24

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND
PLAN OF ALLOCATION AND MEMORANDUM IN SUPPORT THEREOF
CASE NO. 3:18 -CV-00923-RS

ii

1

**TABLE OF AUTHORITIES**

2

<u>Cases</u>                                                                                                                Page(s)

3

*In re Amgen Inc. Secs. Litig.*,
4        No. 07 Civ. 2536, 2016 WL 10571773 (C.D. Cal. Oct. 25, 2016) ...................................10

5

*In re Bluetooth Headset Prods. Liab. Litig.*,
       654 F.3d 935 (9th Cir. 2011) ....................................................................................19
6

7

*In re Celera Corp. Sec. Litig.*,
       No. 10 Civ. 02604 (EJD), 2015 WL 7351449 (N.D. Cal. Nov. 20, 2015) ......................13

8

*Churchill Vill. L.L.C. v. Gen. Elec.*,
9        361 F.3d 566 (9th Cir. 2004) ...............................................................................6, 8

10

*Class Plaintiffs v. City of Seattle*,
11        955 F.2d 1268 (9th Cir. 1992) ............................................................................5, 7

12

*Destefano v. Zynga Inc.*,
       No. 12 Civ. 04007 (JSC), 2016 WL 537946 (N.D. Cal. Feb. 11, 2016)...............11, 13, 15
13

14

*Dura Pharms., Inc. v. Broudo*,
       544 U.S. 336 (2005)................................................................................................9

15

*In re Extreme Networks, Inc. Sec. Litig.*,
16        No. 15 Civ. 04883 (BLF), 2019 WL 3290770 (N.D. Cal. July 22, 2019) ......................13

17

*Garner v. State Farm Mut. Auto Ins. Co.*,
18        No. 08 Civ. 1365 (CW) (EMC), 2010 WL 1687832 (N.D. Cal. Apr. 22, 2010)...............5

19

*Hanlon v. Chrysler Corp.*,
       150 F.3d 1011 (9th Cir. 1998) .................................................................2, 6, 16, 17
20

21

*Hayes v. MagnaChip Semiconductor Corp.*,
       No. 14 Civ. 01160 (JST), 2016 WL 6902856 (N.D. Cal. Nov. 21, 2016) ......................13

22

*Hefler v. Wells Fargo & Co.*,
23        No. 16 Civ. 5479, 2018 WL 6619983 (N.D. Cal. Dec. 18, 2018) ...................................21

24

*In re Heritage Bond Litig.*,
       No. 02 ML 1475, 2005 WL 1594403 (C.D. Cal. June 10, 2005) ...........................8, 11, 22
25

26

*Int'l Bhd. of Elec. Workers Local 697 Pension Fund v. Int'l Game Tech., Inc.*,
       No. 09 Civ. 00419, 2012 WL 5199742 (D. Nev. Oct. 19, 2012).....................................14

27

28

Motion for Final Approval of Class Action Settlement and
Plan of Allocation and Memorandum in Support Thereof
Case No. 3:18 -cv-00923-RS

iii

*Knapp v. Art.com, Inc.*,
     283 F. Supp. 3d 823 (N.D. Cal. 2017) ............................................................7

*In re Lendingclub Sec. Litig.*,
     No. 16 Civ. 02627 (WHA) (N.D. Cal. Feb. 21, 2018)....................................21

*In re Linkedin User Privacy Litig.*,
     309 F.R.D. 573 (N.D. Cal. 2015) ...................................................................11

*Linney v. Cellular Alaska P'ship*,
     151 F.3d 1234 (9th Cir. 1988) ......................................................................6, 7

*McPhail v. First Command Fin. Planning, Inc.*,
     No. 05 Civ. 179, 2009 WL 839841 (S.D. Cal. Mar. 30, 2009)........................13

*In re Mego Fin. Corp. Sec. Litig.*,
     213 F.3d 454 (9th Cir. 2000) .................................................................6, 12, 14

*Nat'l Rural Telecomm. Coop. v. DirectTV, Inc.*,
     221 F.R.D. 523 (C.D. Cal. 2004)....................................................................15

*In re Netflix Privacy Litig.*,
     No. 11 Civ. 00379 (EJD), 2013 WL 1120801 (N.D. Cal. Mar. 18, 2013) .......18

*Nguyen v. Radient Pharms. Corp.*,
     No. 11 Civ. 00406, 2014 WL 1802293 (C.D. Cal. May 6, 2014) .....................9

*Nobles v. MBNA Corp.*,
     No. 06 Civ. 3723 (CRB), 2009 WL 1854965 (N.D. Cal. June 29, 2009).........11

*Officers for Justice v. Civil Serv. Comm'n*,
     688 F.2d 615 (9th Cir. 1982) ...............................................................5, 6, 7, 12

*In re Omnivision Techs., Inc.*,
     559 F. Supp. 2d 1036 (N.D. Cal. 2008) ................................................*Passim*

*Rieckborn v. Velti PLC*,
     No. 13 Civ. 03889 (WHO), 2015 WL 468329 (N.D. Cal. Feb. 3, 2015) .........15

*Robbins v. Koger Props., Inc.*,
     116 F.3d 1441 (11th Cir. 1997) .....................................................................10

*Rodriguez v. W. Publ'g Corp.*
     563 F.3d 948 (9th Cir. 2009) .....................................................................15, 18

*Satchell v. Fed. Express Corp.*,
    No. 03 Civ. 2659 (SI), 2007 WL 1114010 (N.D. Cal. Apr. 13, 2007) ...........................19

*Stewart v. Applied Materials, Inc.*,
    No. 15 Civ. 02632 (JST), 2017 WL 3670711 (N.D. Cal. Aug. 25, 2017).......................18

*In re Syncor ERISA Litig.*,
    516 F.3d 1095 (9th Cir. 2008) ........................................................................................5

*Torrisi v. Tucson Elec. Power Co.*,
    8 F.3d 1370 (9th Cir. 1993) ........................................................................................6, 10

*In re TracFone Unlimited Serv. Plan Litig.*,
    112 F. Supp. 3d 993 (N.D. Cal. 2015) ............................................................................6

*Van Bronkhorst v. Safeco Corp.*,
    529 F.2d 943 (9th Cir. 1976) ..........................................................................................5

*In re Vivendi Universal, S.A. Sec. Litig.*,
    No. 02 Civ. 5571 (S.D.N.Y. Feb. 2, 2010) ....................................................................11

*In Re: Volkswagen "Clean Diesel" Mktg., Sales Practices, and Prods. Liab. Litig.*,
    No. 15 MDL 2672, 2019 WL 2077847 (N.D. Cal. May 10, 2019) ................................21

**Statutes**

Fed. R. Civ. P. Rule 23(e) ...................................................................................................*Passim*

**Other**

Laarni T. Bulan, Ellen M. Ryan & Laura E. Simmons, *Securities Class Action
    Settlements: 2018 Review and Analysis*, Cornerstone Research (2019),
    https://www.cornerstone.com/Publications/Reports/
    Securities-Class-Action-Settlements-2018-Review-and-Analysis ..............................2, 13

Svetlana Starykh & Janeen McIntosh, *Recent Trends in Securities
    Class Action Litigation 2019 H1 Update*, NERA Economic Consulting.....................3, 8

Stefan Boettrich & Svetlana Starykh, *Recent Trends in
    Securities Class Action Litigation: 2018 Full-Year Review*,
    NERA Economic Consulting (Jan. 29, 2019).................................................................13

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND
PLAN OF ALLOCATION AND MEMORANDUM IN SUPPORT THEREOF
CASE NO. 3:18 -CV-00923-RS

v

1
2

## NOTICE OF MOTION FOR FINAL APPROVAL OF
## CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION

3

TO: ALL PARTIES AND THEIR RESPECTIVE COUNSEL OF RECORD:

4

5

6

7

8

9

10

11

PLEASE TAKE NOTICE that on November 14, 2019, at 1:30 p.m., or as soon thereafter as the matter may be heard, Plaintiff Globis Capital Advisors L.L.C. ("Lead Plaintiff") will and hereby moves the Honorable Richard Seeborg, District Judge, located in Courtroom 3, 17th Floor, Phillip Burton Federal Building & United States Courthouse, 450 Golden Gate Avenue, San Francisco, CA 94102, for entry of the [Proposed] Judgment and Order Granting Final Approval of Class Action Settlement previously submitted to the Court (*see* Stipulation[1] Ex. B), which: (i) grants final approval of the proposed Settlement of the Action; and (ii) approves the proposed Plan of Allocation for the net proceeds of the Settlement.

12

13

14

This Motion is supported by the following Memorandum of Points and Authorities, Press Declaration, the Stipulation, all prior pleadings and papers in this Action, and such additional information or argument as may be required by the Court.

15

## STATEMENT OF ISSUES TO BE DECIDED

16

17

1.      Whether the Court should approve the proposed $8.15 million cash settlement of this Action as fair, reasonable, and adequate under Rule 23(e);

18

19

2.      Whether the Court should approve the Plan of Allocation as fair and reasonable; and

20

21

3.      Whether the Court should finally certify the Settlement Class, for purposes of the Settlement.

22

23

24

25

26

[1] References to "Stipulation" are to the Stipulation of Settlement dated June 28, 2019, ECF No. 57-1.  Unless otherwise defined herein, all capitalized terms have the meanings set forth in the Stipulation or the concurrently filed Declaration of Ira M. Press in Support of (I) Lead Plaintiff's Motion for Final Approval of Class Action Settlement and Plan of Allocation, and (II) Lead Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Expenses (the "Press Declaration" or "Press Decl.").  Citations herein to "¶ __" and "Ex. __" refer, respectively, to paragraphs in, and exhibits to, the Press Declaration.

27

28

Motion for Final Approval of Class Action Settlement and Plan of Allocation and Memorandum in Support Thereof
Case No. 3:18 -cv-00923-RS

1

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I.     PRELIMINARY STATEMENT**

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Lead Plaintiff submits this memorandum in support of its motion for final approval of the Settlement of the above-captioned action (the "Action") for $8,150,000 in cash (plus interest earned) and for approval of the Plan of Allocation.  The terms of the Settlement are set forth in the Stipulation, which was preliminarily approved by the Court on July 26, 2019.  *See* Preliminary Approval Order, ECF No. 60 (attached as Ex. A to the Press Declaration).

The $8.15 million Settlement is procedurally fair, as it is the product of arm's length negotiations conducted by experienced counsel, with an experienced and highly respected mediator's assistance, and the recovery is a favorable and reasonable result for the Settlement Class as it avoids the substantial risks and expenses of continued litigation, including the risk of recovering less than the Settlement Amount, or nothing at all.  The Settlement Amount also exceeds the median settlement for securities class actions as a percentage of the Settlement Class's estimated recoverable damages under even the best-case scenario.[2]  Last, the Settlement is substantively fair, reasonable, and adequate, as demonstrated by application of Rule 23 of the Federal Rules of Civil Procedure and the Ninth Circuit "*Hanlon* factors" for assessing class action settlements.  *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998).

Prior to reaching the Settlement, Lead Counsel developed a thorough understanding of both the strengths and weaknesses underlying the claims in this Action, and meaningfully

---

[2]   According to a 2018 report, the median recovery in the Ninth Circuit for the ten years from 2009-2018 was 5.1% of damages for securities class action cases brought under Section 10(b) of the Securities Exchange Act of 1934.  *See* Laarni T. Bulan, Ellen M. Ryan & Laura E. Simmons, *Securities Class Action Settlements:  2018 Review and Analysis*, Cornerstone Research at 19, App. 3 (2019), available at https://www.cornerstone.com/Publications/Reports/Securities-Class-Action-Settlements-2018-Review-and-Analysis  ("Cornerstone Report") (attached as Ex. D to the Press Decl.).  Measured against that yardstick, the Settlement, if approved, will compensate the Class for approximately 19.76% of its estimated damages, which is a substantial recovery.

1   assessed the risks of establishing liability and damages in addition to the risk that the Court

2   would grant Defendants' motions to dismiss for failure to satisfy the pleading standard.  In fact, a

3   recent survey showed that in 2018, 69.7% of all securities class action cases that were resolved

4   were dismissed while just 30.3% of all such cases were settled.  Similarly, in 2017 and 2016,

5   dismissals outnumbered settlements.[3]

6       While the deadline to file an objection has not yet passed, the reaction of the Settlement

7   Class also supports final approval.  Over 24,000 copies of the Postcard Notice have been sent to

8   potential Settlement Class Members and, to date, no objections or requests for exclusion have

9   been received or entered on the docket.  ¶¶ 9, 27; Declaration of Eric J. Miller Regarding Notice

10  Dissemination; Publication of Summary Notice; Telephone; Settlement Website; and Report on

11  Requests for Exclusion, Objections, and Claim Forms, dated October 7, 2019 ("Miller Decl.")

12  (attached as Ex. B to the Press Declaration) ¶¶ 8, 13-14.

13      Finally, the Plan of Allocation was developed by Lead Counsel in consultation with Lead

14  Plaintiff's damages expert and reflects an assessment of the damages that Lead Plaintiff contends

15  could have been recovered under the theories of liability and damages asserted in the Action. ¶

16  35.  The Plan of Allocation ties each participating Settlement Class Member's recovery to when

17  the securities were acquired and sold, and is a fair and reasonable method for distributing the Net

18  Settlement Fund. ¶ 37.  The Plan of Allocation thus warrants approval.  For these reasons, Lead

19  Plaintiff respectfully requests that the Court grant final approval of the Settlement and Plan of

20  Allocation and grant final certification of the Settlement Class for settlement purposes.

21  **II.      PRELIMINARY APPROVAL AND THE NOTICE PROGRAM**

22      On July 26, 2019, the Court entered an order preliminarily approving the Settlement and

23  approving the proposed forms and methods of providing notice to the Settlement Class.  Pursuant

24  to and in compliance with the Preliminary Approval Order, through records maintained by

25

26  [3] *See* Svetlana Starykh & Janeen McIntosh, *Recent Trends in Securities Class Action Litigation 2019 H1 Update*, NERA Economic Consulting at 5, Fig. 5 (attached as Ex. C to the Press Decl.).

27

28

1  Quantum's transfer agent and information provided by brokerage firms and other nominees,

2  beginning on August 15, 2019, the Court-appointed claims administrator A.B. Data, Ltd. (the

3  "Claims Administrator" or "A.B. Data"), caused, among other things, the Postcard Notice to be

4  mailed by first-class mail to potential Settlement Class Members.  *See* ¶ 27; Miller Decl. ¶¶ 3-7.

5  A total of 24,135 Postcard Notices have been mailed as of October 7, 2019.  Miller Decl. ¶ 8.

6  The Summary Notice was published in *Investor's Business Daily* on August 19, 2019, and

7  disseminated over the internet using *PR Newswire* on August 16, 2019.  *Id.* ¶ 10 and Exs. D, E

8  attached thereto.    The Notice and Claim Form were also posted, for review and easy

9  downloading, on the website established by the Claims Administrator for purposes of this

10  Settlement, as well as Lead Counsel's website.  *Id*. ¶ 12.

11       The Notice described, *inter alia*, the claims asserted in the Action, the contentions of the

12  Parties, the course of the litigation, the terms of the Settlement, the maximum amounts that

13  would be sought in attorneys' fees and expenses, the Plan of Allocation, the right to object to the

14  Settlement, and the right to seek to be excluded from the Settlement Class.  *See generally* Miller

15  Decl. Ex. B (Notice).  The Notice also provided deadlines for objecting, seeking exclusion, and

16  submitting claims, and advised potential Settlement Class Members of the scheduled Settlement

17  Hearing before this Court.  *Id.*   To date, the Settlement Class's reaction to the proposed

18  Settlement has been positive.  While the deadline (October 24, 2019) for requesting exclusion or

19  objecting to the Settlement has not yet passed, to date there have been no requests for exclusion,

20  no objections to the proposed Settlement, and no objections to the Plan of Allocation.[4]  Miller

21  Decl.  ¶¶ 13-14.

22       For all the following reasons, Lead Plaintiff respectfully requests that the Court approve

23  the proposed Settlement and Plan of Allocation, and finally certify the Settlement Class for

24  purposes of the Settlement.

---

[4] Should any objections or requests for exclusion be received, Lead Plaintiff will address them in
its reply papers, which will be filed with the Court by November 7, 2019.

## III.    PROCEDURAL AND FACTUAL BACKGROUND

The Court is respectfully referred to the accompanying Press Declaration for a more fulsome description of, *inter alia*, the factual and procedural history of the Action (¶¶ 11-23); the nature of the claims asserted (¶ 15); the mediation leading to this Settlement (¶¶ 18-21); and the terms of the Plan of Allocation (¶¶ 35-38).

## IV.    THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE UNDER THE APPLICABLE STANDARDS AND SHOULD BE APPROVED

### A.    The Standards for Final Approval of Class Action Settlements

In the Ninth Circuit and throughout the country, "there is a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008).[5]  It is well established in the Ninth Circuit that "voluntary conciliation and settlement are the preferred means of dispute resolution." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982).  Indeed, "there is an overriding public interest in settling and quieting litigation," and this is "particularly true in class action suits." *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976).  Class actions readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length of litigation; the settlement of such complex cases greatly contributes to the conservation of scarce judicial resources.  *See, e.g.*, *Garner v. State Farm Mut. Auto Ins. Co.*, No. 08 Civ. 1365 (CW) (EMC), 2010 WL 1687832, at *10 (N.D. Cal. Apr. 22, 2010) ("Settlement avoids the complexity, delay, risk and expense of continuing with the litigation and will produce a prompt, certain, and substantial recovery for the Plaintiff class.") (citation and internal quotation marks omitted).

---

[5] *See also Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) (same); *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1041 (N.D. Cal. 2008) ("the court must also be mindful of the Ninth Circuit's policy favoring settlement, particularly in class action law suits.").

1    Federal Rule of Civil Procedure 23(e) requires judicial approval for any compromise or

2 settlement of class action claims and states that a class action settlement should be approved if

3 the court finds it "fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).  The standard for

4 determining whether to grant final approval to a class action settlement is whether the proposed

5 settlement is "fundamentally fair, adequate, and reasonable."  *In re Mego Fin. Corp. Sec. Litig.*,

6 213 F.3d 454, 458 (9th Cir. 2000) (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th

7 Cir. 1998)); *In re TracFone Unlimited Serv. Plan Litig.*, 112 F. Supp. 3d 993, 998 (N.D. Cal.

8 2015).  In making this determination, courts in the Ninth Circuit consider and balance a number

9 of factors, including:

> (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely
> duration of further litigation; (3) the risk of maintaining class action status
> throughout the trial; (4) the amount offered in settlement; (5) the extent of
> discovery completed and the stage of the proceedings; (6) the experience and
> views of counsel; (7) the presence of a governmental participant; and (8) the
> reaction of the class members to the proposed settlement.

14 *See Churchill Vill. L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575-76 (9th Cir. 2004) (citing *Hanlon*,

15 150 F.3d at 1026); *Officers for Justice*, 688 F.2d at 625 (same).  Not all of these factors will

16 apply to every class action settlement and, under certain circumstances, one factor alone may

17 prove determinative in finding sufficient grounds for court approval.  *See Torrisi v. Tucson Elec.*

18 *Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993).

19    The determination of whether a settlement is fair, adequate, and reasonable is committed

20 to the Court's sound discretion.  *See Mego*, 213 F.3d at 458 ("Review of the district court's

21 decision to approve a class action settlement is extremely limited.") (citing *Linney v. Cellular*

22 *Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998)).  In applying the pertinent factors, the Court

23 need not reach conclusions about the merits of the case, in part because the Court will be called

24 upon to decide the merits if the action proceeds.  *See Officers for Justice*, 688 F.2d at 625

25 ("[T]he settlement or fairness hearing is not to be turned into a trial or rehearsal for trial on the

26 merits. . . . [I]t is the very uncertainty of outcome in litigation and avoidance of wasteful and

27 expensive litigation that induce consensual settlements.").  The Court's discretion in assessing

28

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND
PLAN OF ALLOCATION AND MEMORANDUM IN SUPPORT THEREOF
CASE NO. 3:18 -CV-00923-RS

6

1  the fairness of the settlement is also circumscribed by "the strong judicial policy that favors

2  settlements, particularly where complex class action litigation is concerned." *Linney v. Cellular*

3  *Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1988) (quoting *Officers for Justice*, 688 F.2d at

4  626); *Class Plaintiffs*, 955 F.2d at 1276 (same).

5        Additionally, pursuant to the recent amendments to Rule 23(e)(2), a court may approve a

6  settlement as "fair, reasonable, and adequate" after considering the following four factors, most

7  of which overlap with the factors considered by the Ninth Circuit:

8       (A)    whether the class representatives and class counsel have adequately represented the class;

9

10       (B)    whether the proposal was negotiated at arm's length;

11       (C)    whether the relief provided for the class is adequate, taking into account:

12           i.   the costs, risks, and delay of trial and appeal;

13           ii.  the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

14           iii.  the terms of any proposed award of attorneys' fees, including timing of payment;

15

16           iv.  any agreement required to be identified under Rule 23(e)(3); and

17       (D)    whether the proposal treats class members equitably relative to each other.

18        For the reasons discussed herein, the proposed Settlement meets the criteria set forth by

19  the Ninth Circuit and the federal rules.

20      **B.    Application of the Ninth Circuit's Factors Supports Final Approval of the Settlement**

21          **1.    The Strength of Lead Plaintiff's Case and the Risks Associated with Continued Litigation**

22

23        In assessing whether the proposed Settlement is fair, reasonable, and adequate, the Court

24  "must balance the risks of continued litigation, including the strengths and weaknesses of

25  plaintiff's case, against the benefits afforded to class members, including the immediacy and

26  certainty of recovery." *Knapp v. Art.com, Inc.*, 283 F. Supp. 3d 823, 831 (N.D. Cal. 2017).

27

28

Motion for Final Approval of Class Action Settlement and
Plan of Allocation and Memorandum in Support Thereof
Case No. 3:18 -cv-00923-RS
7

1    Lead Plaintiff and Lead Counsel believe the asserted claims have considerable merit, but

2    also recognize that the risks of continued litigation are substantial and further recognize the

3    significant risk that the Consolidated Amended Class Complaint would be dismissed, given the

4    stringent requirements of the Private Securities Litigation Reform Act of 1995 ("PSLRA").

5    Even if the Consolidated Amended Class Complaint survived, continued litigation would be

6    complex, expensive, and lengthy, with a favorable outcome highly uncertain.  *See Churchill*

7    *Vill., L.L.C.*, 361 F.3d at 576 (citing risk, expense, complexity, and likely duration of further

8    litigation as factors supporting final approval of settlement).  Lead Plaintiff would have faced

9    numerous hurdles, including at the class certification stage, during completion of fact and expert

10   discovery, at summary judgment, trial, and in subsequent appeals; thus making settlement

11   appropriate here.  There was also the considerable risk that continued pursuit of the Action could

12   result in a substantially smaller recovery or no recovery at all.  For example, there was a risk that

13   the Court would grant Defendants' motions to dismiss for failure to satisfy the pleading standard.

14   In fact, a recent survey showed in 2018, 69.7% of all securities class action cases that were

15   resolved were dismissed, and in 2017 and 2016 as well, dismissals accounted for a majority of

16   the securities class actions that were resolved.[6]

17   While Lead Plaintiff certainly believes that its arguments and evidence support the §10(b)

18   claims, proving the claim at trial would be by no means guaranteed – and would only be an issue

19   after surviving Defendants' motions to dismiss and Defendants' subsequent motion for summary

20   judgment.  *See In re Heritage Bond Litig.*, No. 02 ML 1475, 2005 WL 1594403, at *7 (C.D. Cal.

21   June 10, 2005).  The Court has not yet ruled that the Consolidated Class Action Complaint

22   adequately pled that Defendants acted with scienter, and Lead Counsel is aware of the challenges

23   of actually proving it at trial.  Indeed, Defendants deny any wrongdoing and were prepared to

24   make a multi-pronged defense.  For example, Defendants likely would argue that even if they

25   improperly recognized certain revenue during the Class Period, the errors were unintentional, so

---

26

27   [6] *See* Ex. C at 5, Fig. 5.

28

1    they did not act with the requisite state of mind to support the securities fraud claim alleged.

2    During the confirmatory discovery process, Lead Plaintiff also heard Quantum's explanation of

3    the basis and rationale for the revenue recognition practices at issue.   While Lead Plaintiff

4    believes that there is evidence to support Lead Plaintiff's claim, Lead Plaintiff also believes that

5    there was a substantial likelihood that Defendants' witnesses would testify that they had a good

6    faith basis to recognize revenue in the manner that they did.  Therefore, it is plausible that a jury,

7    upon hearing Defendants' testimony and seeing the evidence that Defendants would proffer,

8    would conclude that Defendants did not act with scienter.

9        Another principal risk in continuing the litigation is the difficulty of proving loss

10   causation and damages, which would have been hotly contested by Defendants, particularly at

11   class certification and summary judgment, and would continue to be challenged in *Daubert*

12   motions, at trial, in post-trial proceedings and appeals.  To succeed at trial "a plaintiff [must]

13   prove that the defendant's misrepresentation (or other fraudulent conduct) proximately caused

14   the plaintiff's economic loss."  *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 346 (2005).

15       Here, Lead Plaintiff's damages calculation methodology would have come under

16   sustained attack by Defendants, and issues relating to damages would likely have come down, at

17   best, to an inherently unpredictable and hotly disputed "battle of the experts" where it would be

18   impossible to predict with any certainty which arguments would find favor with a jury.  *See, e.g.*,

19   *Nguyen v. Radient Pharms. Corp.*, No. 11 Civ. 00406, 2014 WL 1802293, at *2 (C.D. Cal. May

20   6, 2014) (approving settlement in securities case where "[p]roving and calculating damages

21   required a complex analysis, requiring the jury to parse divergent positions of expert witnesses in

22   a complex area of the law" and "[t]he outcome of that analysis is inherently difficult to predict

23   and risky") (citation omitted).  Lead Plaintiff would have to proffer expert testimony to prove: (i)

24   what the "true value" of Quantum common stock would have been had there been no alleged

25   material misstatements or omissions concerning Defendants' revenue recognition that artificially

26   inflated Quantum's reported revenues and earnings; (ii) the amount by which Quantum shares

27   were inflated by the alleged material misstatements and omissions; and (iii) the amount of

28

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND
PLAN OF ALLOCATION AND MEMORANDUM IN SUPPORT THEREOF
CASE NO. 3:18 -CV-00923-RS

1    inflation removed by the disclosures on August 9, 2017 and February 8, 2018 of the alleged true

2    facts.  Defendants would have countered that the disclosures on August 9, 2017 and February 8,

3    2018 did not correct any misrepresentations, and even if they did, the stock price declines on

4    those dates resulted largely or entirely from other unrelated market or industry factors.

5    Defendants would have presented their own damages expert(s) to present conflicting conclusions

6    and theories as to the reason(s) for Quantum's share price decline, requiring a jury to decide the

7    "battle of the experts" – an intrinsically expensive and unpredictable process.  Courts have

8    recognized that such a "battle of experts" is a significant litigation risk, and weights in favor of

9    approving a settlement.  *In re Amgen Inc. Sec. Litig.*, No. 07 Civ. 2536, 2016 WL 10571773, at

10   *3 (C.D. Cal. Oct. 25, 2016).  The outcome could well have depended on whose testifying expert

11   the jury believed or even whether the jury was able to sufficiently parse through the complex

12   economic theories used by the experts.

13        Finally, even if the Court certified the class as proposed by Lead Plaintiff and it prevailed

14   on liability and the Settlement Class was awarded damages, Defendants likely would appeal the

15   verdict and award.  The appeals process would have likely spanned several years including an

16   appeal to the Ninth Circuit, and, potentially, an *en banc* review from the Ninth Circuit or a writ

17   of certiorari from the Supreme Court, or both.  During this time on potential appeals, the

18   Settlement Class would receive no distribution of any damage award.  In addition, an appeal of

19   any judgment would carry the risk of reversal, in which case the Settlement Class would receive

20   no recovery even after having prevailed on their remaining claim at trial.  *See, e.g.*, *Robbins v.*

21   *Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) (jury verdict of $81 million for plaintiffs

22   against an accounting firm reversed on appeal on loss causation grounds and judgment entered

23   for defendant).

24        **2.    The Complexity, Expense, and Likely Duration of Further
               Litigation**

25

26        Final approval is also supported by the complexity, expense, and likely duration of

27   continued litigation.  *See Torrisi*, 8 F.3d at 1376 ("the cost, complexity and time of fully

28

1   litigating the case all suggest that this settlement was fair"). "Generally, unless the settlement is

2   clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation

3   with uncertain results." *In re Linkedin User Privacy Litig.*, 309 F.R.D. 573, 587 (N.D. Cal.

4   2015) (citation omitted).

5         Here, continuing litigation through motions to dismiss, fact and expert discovery, the

6   class certification hearing, summary judgment, trial, and appeals would have been very

7   expensive and could have delayed the Settlement Class Members' recovery, if any, for upwards

8   of several years.[7] *See Destefano v. Zynga Inc.*, No. 12 Civ. 04007 (JSC), 2016 WL 537946, at

9   *10 (noting same) (N.D. Cal. Feb. 11, 2016). Regardless of the certainty or uncertainty of the

10  ultimate outcome, there is no question that further litigation against the Defendants would likely

11  have been expensive, complex, and protracted. *See, e.g.*, *Nobles v. MBNA Corp.*, No. 06 Civ.

12  3723 (CRB), 2009 WL 1854965, at *2 (N.D. Cal. June 29, 2009) (finding a proposed settlement

13  is proper "given the inherent difficulty of prevailing in class action litigation"); *Heritage Bond*,

14  2005 WL 1594403, at *6 (class actions "have a well-deserved reputation as being [the] most

15  complex").

16        The present value of a certain recovery now, as opposed to the mere *chance* for a greater

17  one years later, supports approval of this Settlement that eliminates the expense and delay of

18  continued litigation and the risk that the Settlement Class could receive little or no recovery.

19  Consequently, this factor supports approval of the Settlement.

20              **3.    The Risk of Maintaining Class-Action Status Through Trial**

21        If Lead Plaintiff successfully defeated a motion to dismiss, Lead Plaintiff would have

22  moved for class certification. Although Lead Plaintiff believes its motion would be meritorious,

23

24  [7] Though only a few securities class actions have gone to trial, the time between verdict and final
    judgment has been up to seven years. *See e.g.*, *In re Vivendi Universal, S.A. Sec. Litig.*, No. 02
25  Civ. 5571, Verdict Form, ECF No. 998 (S.D.N.Y. Feb. 2, 2010) (jury verdict issued on Jan. 29,
    2010) & Final Judgment Approving Class Action Settlement of All Remaining Claims, ECF No.
26  1317 (S.D.N.Y. May 9, 2017).

27

28  MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND
    PLAN OF ALLOCATION AND MEMORANDUM IN SUPPORT THEREOF
    CASE NO. 3:18 -CV-00923-RS
                                            11

1    the Court might have found otherwise and it is likely that Defendants would have vigorously

2    contested such motion, as detailed above, with the outcome of such a contested motion far from

3    certain.   Even if Lead Plaintiff prevailed, it is likely that Defendants would have filed a Rule

4    23(f) petition for an interlocutory appeal of the decision.   Even if Lead Plaintiff defeated

5    Defendants' Rule 23(f) petition, under Rule 23(c)(1)(C), a Court's prior grant of certification

6    "may be altered or amended before final judgment."   Accordingly, there was an ongoing risk that

7    the Settlement Class could be decertified or modified if the litigation were to continue.  *See In re*

8    *Omnivision Techs., Inc.*, 559 F. Supp. 2d at 1041 (noting that even if a class is certified, "there is

9    no guarantee the certification would survive through trial, as Defendants might have sought

10   decertification or modification of the class.").   Thus, the risk of failing to maintain class

11   certification through trial favors approval of the Settlement.

12            **4.      The Amount Offered in the Settlement**

13            The $8.15 million Settlement constitutes a meaningful percentage of the maximum

14   possible recovery for the Settlement Class, especially taking into account the uncertainty, risks,

15   and costs associated with any attempt to obtain a greater amount.   "It is well-settled law that a

16   cash settlement amounting to only a fraction of the potential recovery does not per se render the

17   settlement inadequate or unfair."   *Mego*, 213 F.3d at 459.   Moreover, a settlement is "not to be

18   judged against a hypothetical or speculative measure of what *might* have been achieved by the

19   negotiators."   *Officers for Justice*, 688 F.2d at 625 (emphasis added).

20            Here, as this Court preliminarily determined in its Preliminary Approval Order, the

21   Settlement Amount – $8.15 million in cash – is within the range of reasonableness under the

22   circumstances so as to warrant approval of the Settlement.   Lead Plaintiff's damages expert

23   estimates that if Lead Plaintiff had fully prevailed in each of its claims at both summary

24   judgment and after a jury trial, if the Court certified the same class period as the Settlement Class

25   Period, and if the Court and jury accepted Lead Plaintiff's damages theory, including proof of

26   loss causation as to each of the two stock price drop dates alleged in this case – *i.e.*, Lead

27   Plaintiff's **best case scenario**, the total maximum damages would be $41.25 million.   Thus, the

28

1    $8.15 million Settlement Amount represents approximately 19.76% of the total maximum

2    damages potentially available in this Action.  ¶ 44.  In comparison, in securities class actions in

3    2018 where estimated damages were between $25 million and $74 million, the median recovery

4    was only 9.9% of estimated damages.[8]   Additionally, the median recovery in securities class

5    actions from 1996 through 2018 was 8.4% of estimated damages ranging between $20-$49

6    million.[9]   A 19.76% percent recovery also compares favorably with settlements in other

7    securities-fraud related cases in this district.  *See, e.g.*, *In re Extreme Networks, Inc. Sec. Litig.*,

8    No. 15 Civ. 04883 (BLF), 2019 WL 3290770, at *9 (N.D. Cal. July 22, 2019) (approving

9    securities fraud class action where $7 million fund represented a recovery of "between 5% and

10   9.5% of non-disaggregated damages and between 19% to 54% if disaggregated arguments are

11   credited"); *Hayes v. MagnaChip Semiconductor Corp.*, No. 14 Civ. 01160 (JST), 2016 WL

12   6902856, at *6 (N.D. Cal. Nov. 21, 2016) (approving securities fraud class action settlement

13   where recovery was 14% of maximum damages); *Zynga*, 2016 WL 537946, at *11 (approving

14   securities fraud class action settlement valued at 9.5% of the likely recoverable damages after

15   netting out expected attorneys' fees); *In re Celera Corp. Sec. Litig.*, No. 10 Civ. 02604 (EJD),

16   2015 WL 7351449, at *6 (N.D. Cal. Nov. 20, 2015) (approving securities fraud class action

17   settlement valued at 17% of estimated damages award).

18           Since the passage of the PSLRA, courts have approved settlements that recovered a

19   similar, or smaller, percentage of maximum damages.  *See, e.g.*, *McPhail v. First Command Fin.*

20   *Planning, Inc.*, No. 05 Civ. 179, 2009 WL 839841, at *5 (S.D. Cal. Mar. 30, 2009) (finding a

21   $12 million settlement recovering 7% of estimated damages was fair and adequate); *Omnivision*,

22   559 F. Supp. 2d at 1042 ($13.75 million settlement yielding 6% of potential damages after

23   [8] *See* Ex. D (Cornerstone Report) at 6, Fig. 5; *id.* at 19, App. 3 (the median recovery from 2009 –
24   2018 was 5.1% of damages for Section 10(b) class action cases in the Ninth Circuit).

25   [9] *See* Stefan Boettrich & Svetlana Starykh, *Recent Trends in Securities Class Action Litigation:*
26   *2018 Full-Year Review*, NERA Economic Consulting at 35, Fig. 27 (attached as Ex. E to the
     Press Decl.).

27

28   Motion for Final Approval of Class Action Settlement and
     Plan of Allocation and Memorandum in Support Thereof
     Case No. 3:18 -cv-00923-RS
     13

1  deducting fees and costs was "higher than the median percentage of investor losses recovered in

2  recent shareholder class action settlements") (citation omitted); *Int'l Bhd. of Elec. Workers Local*

3  *697 Pension Fund v. Int'l Game Tech., Inc.*, No. 09 Civ. 00419, 2012 WL 5199742, at *3 (D.

4  Nev. Oct. 19, 2012) (approving $12.5 million settlement, a recovery of about 3.5% of the

5  maximum damages that plaintiffs believed could be recovered at trial, and noting that the amount

6  was within the median recovery in securities class actions settled in the last few years).

7         Accordingly, it is respectfully submitted that the Settlement is a favorable result that falls

8  well within the range of reasonableness.

9         **5.      The Extent of Discovery Completed and the Stage of the
                     Proceedings**

10

11        As the Ninth Circuit has stated, "[i]n the context of class action settlements, formal

12  discovery is not a necessary ticket to the bargaining table where the parties have sufficient

13  information to make an informed decision about settlement." *Mego*, 213 F.3d at 459. (citation

    and internal quotation marks omitted).

14

15        Here, despite the PSLRA-mandated formal discovery stay, Lead Counsel conducted an

16  extensive investigation of the claims, including: (i) a detailed review of Quantum's SEC filings,

    press releases, conference calls, news reports, and Defendants' other public statements made

17  prior to, during, and after the Settlement Class Period; (ii) review of public documents, reports,

18  announcements, and news articles concerning Quantum; (iii) review of securities and financial

19  analysts' research reports; (iv) economic analyses of stock price movement and pricing data; and

20  (v) through a private investigator, interviews of former employees.  Lead Counsel also consulted

21  with experts in the fields of accounting, loss causation, and damages.  *See* ¶ 42(a)(i).  The

22  Parties' settlement negotiations also informed Lead Counsel about the strengths and weaknesses

23  of the potential claims and Defendants' defenses.

24

25        Moreover, prior to seeking preliminary approval of the Settlement, Lead Counsel

26  engaged in confirmatory discovery.  Defendants provided Lead Counsel with the documents that

    Quantum had submitted to the SEC.   ¶ 19.   Further, Lead Counsel interviewed Quantum's

27

28

1   current CFO about, among other things, Quantum's upcoming financial restatements, internal

2   controls, and accounting practices.  *Id.*  This information enabled Lead Counsel to further assess

3   the strengths and weaknesses of this Action, including the plausibility of defenses to scienter and

4   the appropriateness of settlement here.  *Id.*

5           As a result of these efforts, Lead Plaintiff and Lead Counsel had a comprehensive

6   understanding of the Action and sufficient information to make a well-informed decision

7   regarding the fairness of the settlement.  *See Rieckborn v. Velti PLC*, No. 13 Civ. 03889 (WHO),

8   2015 WL 468329, at *6 (N.D. Cal. Feb. 3, 2015) ("Despite reaching settlement relatively early in

9   the life span of this case, the Settling Parties have shown that their decision to settle was made on

10  the basis of a thorough understanding of the relevant facts and law.").  This factor weighs in

11  favor of the Settlement.

12              **6.        The Experience and Views of Counsel**

13          Experienced counsel, negotiating at arm's length, have weighed the factors discussed

14  above and endorse the Settlement.  As the Ninth Circuit observed in *Rodriguez v. W. Publ'g*

15  *Corp.*, "[t]his circuit has long deferred to the private consensual decision of the parties" and their

16  counsel in settling an action.  563 F.3d 948, 965 (9th Cir. 2009).  The views of the attorneys

17  actively conducting the litigation and who are most closely acquainted with the facts of the

18  underlying litigation, are entitled to "great weight."  *Nat'l Rural Telecomms. Coop. v. DirectTV,*

19  *Inc.,* 221 F.R.D. 523, 528 (C.D. Cal. 2004); *see also Zynga*, 2016 WL 537946, at *13 ("A district

20  court is entitled to give consideration to the opinion of competent counsel that the settlement is

21  fair, reasonable, and adequate.") (internal quotation omitted).

22          Lead Counsel firmly believes that the Settlement is fair, adequate, and reasonable, and

23  particularly so in view of the risks, burdens, and expense of continued litigation. Further, it is

24  respectfully submitted that Lead Counsel, Kirby McInerney ("KM") is experienced and able in

25  this area of practice (*see* Ex. F (KM resume)) and "[t]here is nothing to counter the presumption

26  that Lead Counsel's recommendation is reasonable."  *Omnivision*, 559 F. Supp. 2d at 1043.

27  Accordingly, this factor strongly favors approval of the Settlement.

28

1

       **7.**     **Reaction of the Settlement Class to Date**

2        The reaction of the Settlement Class is also a significant factor in assessing its fairness

3 and adequacy.  *Hanlon*, 150 F.3d at 1026.  "[T]he absence of a large number of objections to a

4 proposed class action settlement raises a strong presumption that the terms of a proposed class

5 settlement action are favorable to the class members."  *Omnivision*, 559 F. Supp. 2d at 1043.

6 (internal citation omitted).

7        Here, in accordance with the Court's Preliminary Approval Order, as of October 7, 2019,

8 over 24,000 copies of the Postcard Notice have been mailed to potential Settlement Class

9 Members and their nominees, and the Summary Notice was published both in the national

10 edition of *Investor's Business Daily* on August 19, 2019 and transmitted over the *PR Newswire*

11 on August 16, 2019.  *See* Miller Decl. ¶¶ 3-10 & Exs. D, E thereto.  A.B. Data also established a

12 dedicated website, www.QuantumSecuritiesLitigation.com, to provide potential Settlement Class

13 Members with information concerning the Settlement and access downloadable copies of, among

14 others, the Full Notice and Claim Form, copies of the Stipulation and Preliminary Approval

15 Order.  *Id*. ¶ 12. The website was operational beginning on August 15, 2019.  *Id*.  The website

16 also lists the exclusion, objection, and claim filing deadlines, as well as the date and time of the

17 Court's Settlement Hearing.  As of October 7, 2019, there have been no requests for exclusion

18 received, and no objections have been filed on this Court's docket.  ¶¶ 9, 67; Miller Decl. ¶¶ 13-

19 14.  Further, as of October 7, 2019, A.B. Data has received 151 Claim Forms.  Miller Decl. ¶

20 15.[10]

21        As provided in the Preliminary Approval Order, Lead Plaintiff will file reply papers in

22 support of the Settlement on November 7, 2019, after the deadline for requesting exclusions or

23

24

25 ――――――――――――――――
[10] After the Claims Administrator completes the claims administration process, Lead Counsel
26 will file a distribution motion with the Court which will contain, *inter alia*, the number of Class
Members who submitted valid claims.

27

28

1  objecting has passed.  Lead Plaintiff's reply papers will address, among others, any requests for

2  exclusion and objections received and/or filed.

3      **C.    Application of the Factors Identified in the Amendments to Rule 23
              Supports Approval of the Settlement as Fair, Reasonable, and
4             Adequate**

5       The proposed Settlement also meets the criteria set forth in the recent amendments to

6  Rule 23(e)(2), most of which are covered by the Ninth Circuit factors discussed above.

7          **1.    Lead Plaintiff and Lead Counsel Have Adequately
                  Represented the Settlement Class**

8
       The Court should consider whether the "class representative[] and class counsel have
9
   adequately represented the class" when determining whether to approve a class action settlement.
10
   Fed. R. Civ. P. 23(e)(2)(A). "Resolution of two questions determines legal adequacy: (1) do the
11
   named plaintiffs and their counsel have any conflicts of interest with other class members and (2)
12
   will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the
13
   class?" *Hanlon*, 150 F.3d at 1020.
14
       Here, Lead Plaintiff and Lead Counsel have adequately represented the Settlement Class
15
   both during the litigation of this Action and during its settlement.  As set forth in the previously
16
   filed motion for preliminary approval, Lead Plaintiff, like all other members of the Settlement
17
   Class, acquired shares of Quantum publicly-traded common stock during the Settlement Class
18
   Period, and was subject to the same allegedly untrue statements and omissions as all Settlement
19
   Class Members.  Thus, the claims of Lead Plaintiff and the Settlement Class would prevail or fail
20
   in unison, and the common objective of maximizing recovery from Defendants aligns the
21
   interests of Lead Plaintiff and all members of the Settlement Class.  *See* ECF No. 56.
22
       Lead Counsel has prosecuted this Action, including conducting confirmatory discovery
23
   by reviewing documents and interviewing Quantum's CFO, conferring with counsel, negotiating
24
   with Defendants through counsel, and, with an informed understanding of the strengths and
25
   weaknesses of the claims, approving the Settlement for Settlement Class Members' benefit.
26

27

28

1    Lead Plaintiff also retained counsel who are highly experienced in securities litigation,

2    and who have a long and successful track record of representing investors in such cases.  Lead

3    Counsel has successfully prosecuted securities class actions and complex litigation in federal and

4    state courts throughout the country.  *See* Ex. F (KM firm resume).  Moreover, in this case, Lead

5    Counsel vigorously prosecuted the Settlement Class's claims throughout the Action, including by

6    conducting an extensive investigation of the claims through a detailed review of all publicly

7    available documents, engaging the assistance of a private investigator to locate former

8    employees, conducting fact interviews with those employees, consulting with accounting

9    experts, drafting a detailed complaint, conducting confirmatory discovery, and negotiating a

10   settlement representing a substantial recovery for the Settlement Class. ¶¶ 7, 42(a)(i).

11   Accordingly, as the Court previously found in conditionally certifying the Settlement

12   Class and appointing Lead Plaintiff as Class Representative and Lead Counsel as Class Counsel,

13   Lead Plaintiff and Lead Counsel have adequately represented the Settlement Class.  *See*

14   Preliminary Approval Order ¶ 5.  This factor supports final approval of the Settlement.

15   **2.   The Settlement Is the Result of Arm's Length Negotiations
         Between Experienced Counsel Conducted Under the Auspices
16        of a Well-Respected Mediator**

17   The Court must also consider whether the settlement was "negotiated at arm's length" in

18   weighing approval of a class-action settlement.  Fed. R. Civ. P. 23(e)(2)(B).  The Ninth Circuit,

19   as well as courts in this District, "put a good deal of stock in the product of an arms-length, non-

20   collusive, negotiated resolution" in approving a class action settlement.  *Rodriguez*, 563 F.3d at

21   965; *see also In re Netflix Privacy Litig.*, No. 11 Civ. 00379 (EJD), 2013 WL 1120801, at *4

22   (N.D. Cal. Mar. 18, 2013) ("Courts have afforded a presumption of fairness and reasonableness

23   of a settlement agreement where that agreement was the product of non-collusive, arms' length

24   negotiations conducted by capable and experienced counsel"); *Stewart v. Applied Materials, Inc.*,

25   No. 15 Civ. 02632 (JST), 2017 WL 3670711, at *6 (N.D. Cal. Aug. 25, 2017) ("[t]he

26   recommendations of plaintiffs' counsel should be given a presumption of reasonableness.").

27   Courts also recognize that the "assistance of an experienced mediator in the settlement process

28

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND
PLAN OF ALLOCATION AND MEMORANDUM IN SUPPORT THEREOF
CASE NO. 3:18 -CV-00923-RS

18

1    confirms that the settlement is non-collusive." *Satchell v. Fed. Express Corp.*, No. 03 Civ. 2659

2    (SI), 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007).

3           Here, the Settlement merits a presumption of fairness because it is the product of

4    extensive arm's length negotiations among counsel with extensive experience in securities class

5    action litigation, following vigorous litigation, including a carefully conducted investigation,

6    settlement-related confirmatory discovery, and with the recommendation of an experienced and

7    neutral mediator, Robert A. Meyer, Esq. of JAMS Mediation, Arbitration and ADR Services (the

8    "Mediator"). ¶ 18.   Before the February 20, 2019 mediation session, the Parties exchanged

9    mediation statements.   During the mediation, the Parties gave thoughtful presentations on the

10   perceived strengths and weaknesses of their respective claims and defenses and had full and

11   frank discussions concerning the merits.  The negotiations focused on disputed issues of whether

12   any of the Defendants acted with the requisite scienter, on loss causation, and on the appropriate

13   amount of damages.   After the mediation ended without an agreement to settle, the Mediator

14   facilitated further discussion with the Parties, which ultimately culminated in the Parties

15   accepting the Mediator's proposal.

16          Finally, the Settlement has none of the indicia of collusion identified by the Ninth Circuit.

17   *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011) ("subtle

18   signs" of collusion include a "disproportionate distribution of the settlement" between the class

19   and class counsel, "a 'clear sailing' arrangement providing for the payment of attorneys' fees

20   separate and apart from class funds," or an agreement for "fees not awarded to revert to

21   defendants rather than be added to the class fund").

22          **3.      The Relief Provided to the Settlement Class Is Adequate and
                      the Settlement Treats Class Members Equitably Relative to
23                    Each Other**

24          Rule 23(e)(2)(C)(i), which requires that "relief provided for the class is adequate, taking

25   into account the costs, risks, and delays of trial and appeal," has been discussed above.

26          Rule 23(e)(2)(C)(ii) considers whether the relief is adequate, taking into account the

27   "effectiveness of any proposed method of distributing relief to the class, including the method of

28

1   processing class-member claims." As set forth below in Section V, discussing the proposed Plan

2   of Allocation, the proceeds of the Settlement will be distributed to Settlement Class Members

3   who submit valid and timely claims. Using the formulas of the Plan of Allocation, the Claims

4   Administrator will calculate claimants' Recognized Claims using the transactional information

5   provided by claimants in their Claim Forms, which can be mailed to the Claims Administrator,

6   submitted online using the settlement website, or, for large investors with hundreds of

7   transactions, submitted via e-mail to the Claims Administrator's electronic filing team. Lead

8   Plaintiff's claim will be calculated the same way. Because most securities are held in "street

9   name" by the brokers that buy them on behalf of clients, the Claims Administrator, Lead

10  Counsel, and Defendants do not have Settlement Class Members' transactional data and a claims

11  process is required. Because the Settlement does not recover 100% of alleged damages, the

12  Claims Administrator will determine each eligible claimant's *pro rata* share of the Net

13  Settlement Fund based upon each claimant's total "Recognized Claim" compared to the

14  aggregate Recognized Claims of all eligible claimants.

15      Once the Claims Administrator has processed all submitted claims, notified claimants of

16  deficiencies or ineligibility, processed responses, and made claim determinations, distributions

17  will be made to eligible claimants using checks.

18      After an initial distribution of the Net Settlement Fund, if there is any balance remaining

19  in the Net Settlement Fund (whether by reason of tax refunds, uncashed checks or otherwise),

20  after nine (9) months from the date of initial distribution, Lead Counsel will, if feasible and

21  economical, re-distribute the balance among eligible claimants who have cashed their initial

22  checks and who would receive at least $10.00 from such re-distribution. These re-distributions

23  will be repeated until the balance in the Net Settlement Fund is no longer cost-effective and

24  feasible to distribute. *See* Miller Decl. Ex. B (Full Notice) ¶ 59. Any balance that still remains

25  in the Net Settlement Fund after re-distribution(s) which is not feasible or economical to

26  reallocate after payment of any outstanding Notice and Administration Expenses or Taxes, if

27  any, will be contributed to Investor Protection Trust ("IPT"), a 501(c)(3) nonprofit organization

28

1    devoted to investor education serving the public interest that is not affiliated with Lead Plaintiff

2    or Lead Counsel, upon authorization by the Court.[11]

3         The terms of any proposed award of attorneys' fees (Rule 23(e)(2)(C)(iii)), are discussed

4    in Lead Counsel's accompanying fee and expense application.  Lead Counsel seeks an award of

5    attorneys' fees and expenses pursuant to the common fund doctrine and the request is fully

6    within the discretion of the Court, was not negotiated with Defendants, and is separate from the

7    Settlement.  Any fees and expenses that are awarded by the Court are payable upon award.

8         Finally, Rule 23(e)(2)(C)(iv) asks the Court to consider the fairness of the proposed

9    Settlement in light of any agreement required to be identified under Rule 23(e)(3).  Here, the

10   only agreements made by the Parties in connection with the Settlement are the Stipulation and

11   the confidential Supplemental Agreement concerning the circumstances under which Defendants

12   may terminate the Settlement based upon the number of exclusion requests.  *See* Stipulation ¶ 40.

13   The settling Parties wish to continue keeping the terms of the Supplemental Agreement,

14   including the number of exclusions necessary to terminate the Settlement, confidential.[12, 13]

---

[11] The IPT is an appropriate *cy pres* recipient because of the nature of the securities fraud claims asserted in the Action and this District has approved it in other similar actions.  *See Hefler v. Wells Fargo & Co.*, No. 16 Civ. 5479, 2018 WL 6619983, at *11 (N.D. Cal. Dec. 18, 2018); *In Re: Volkswagen "Clean Diesel" Mktg., Sales Practices, and Prods. Liab. Litig.*, No. 15 MDL 2672 (CRB) (JSC), 2019 WL 2077847, at *4 (N.D. Cal. May 10, 2019) (granting final approval of securities fraud class action settlement and IPT as *cy pres* recipient).

[12] Courts in this district have granted final approval to settlements that include a supplemental agreement that is either not filed with the court, or is filed under seal.  *See, e.g.*, Stipulation of Settlement, *In re Lendingclub Sec. Litig.*, No. 16 Civ. 02627 (WHA) (N.D. Cal. Feb. 21, 2018), ECF No. 333-1; Order Granting Prelim. Approval of Class Settlement, *In re Lendingclub*, No. 16 Civ. 02627 (WHA) (N.D. Cal. Mar. 16, 2018), ECF No. 343 (preliminarily approving securities fraud class action settlement that provided for a supplemental agreement that would either not be filed with the court, or would be submitted for *in camera* review at the court's request); Order Granting Mot. For Final Approval of Settlement, *In re Lendingclub*, No. 16 Civ. 02627 (WHA) (N.D. Cal. July 20, 2018), ECF No. 383; Stipulation and Agreement of Settlement, *In re Volkswagen*, ECF No. 6110 (granting final approval of securities fraud class action settlement).

[13] Rule 23(e)(2)(D), whether the proposal treats class members equitably with respect to each other has been discussed and is addressed in Section V below.

Motion for Final Approval of Class Action Settlement and
Plan of Allocation and Memorandum in Support Thereof
Case No. 3:18 -cv-00923-RS
21

1    In sum, each of the relevant factors for considering approval of a class action settlement

2    fully supports a finding that the Settlement here is fair, reasonable, and adequate.

3    **V.    THE PLAN OF ALLOCATION IS FAIR, REASONABLE, AND ADEQUATE**

4
5    In the Preliminary Approval Order, the Court preliminarily approved the Plan of

6    Allocation.  Lead Plaintiff now requests final approval of the Plan of Allocation.  A plan of

7    allocation in a class action "is governed by the same standards of review applicable to approval

8    of the settlement as a whole: the plan must be fair, reasonable and adequate."  *Omnivision*, 559

9    F. Supp. 2d at 1045. "It is reasonable to allocate the settlement funds to class members based on

10   the extent of their injuries or the strength of their claims on the merits."  *Id.*  An allocation

11   formula need only have a reasonable basis, particularly if recommended by experienced class

12   counsel. *See Heritage Bond*, 2005 WL 1594403, at *11.

13   The Plan of Allocation is detailed in the long form Notice and incorporated by reference

14   into the Stipulation.  *See* Stipulation ¶ 1(ff); Miller Decl. Ex. B (Full Notice) at 10-12.  The Full

15   Notice is posted online at www.QuantumSecuritiesLitigation.com, is downloadable, and may be

16   mailed to Settlement Class Members upon request.  *See* Miller Decl. ¶ 9.

17   The Plan of Allocation is based on an out-of-pocket theory of damages consistent with

18   Section 10(b) of the Exchange Act, and reflects an assessment of the damages that Lead Plaintiff

19   contends could have been recovered under the theories of liability asserted in the Action.  More

20   specifically, the Plan of Allocation reflects, and is based on, Lead Plaintiff's allegation that the

21   price of Quantum common stock was artificially inflated during the period from April 18, 2016

22   through and including February 8, 2018, due to Defendants' alleged materially false and

23   misleading statements and omissions.  The Plan of Allocation is based on the premise that the

24   decreases in the price of Quantum common stock that followed the alleged corrective disclosures

25   that occurred on August 9, 2017 and February 8, 2018 may be used to measure the alleged

26   artificial inflation in the price of Quantum common stock prior to these disclosures.  ¶ 35; Miller

27
28

1    Decl. Ex. B (Full Notice) at 10-12.  The same methodology would have been proffered by Lead

2    Plaintiff at summary judgment and trial had the Action not settled.

3           An individual Claimant's recovery under the Plan of Allocation will depend on a number

4    of factors, including how many shares of Quantum common stock the Claimant purchased or

5    sold during the Settlement Class Period, when that Claimant bought or sold the shares, and the

6    number of valid claims filed by other Claimants.  If a Claimant has an overall market gain with

7    respect to his, her, or its overall transactions in Quantum stock during the Settlement Class

8    Period, or if the Claimant purchased shares during the Settlement Class Period, but did not hold

9    any of those shares through at least one of the alleged corrective disclosures, the Claimant's

10   recovery under the Plan of Allocation will be zero, as any loss suffered would not have been

11   caused by the revelation of the alleged fraud. ¶ 37.

12          Lead Plaintiff and Lead Counsel believe that the proposed Plan of Allocation will result

13   in a fair and equitable distribution of the Net Settlement Fund among Settlement Class Members

14   similar to the result if Lead Plaintiff prevailed at trial.  *Id.*  To date, no objections to the Plan of

15   Allocation have been filed on this Court's docket. ¶ 9; *see also* Miller Decl. ¶ 14.

16           For these reasons, Lead Plaintiff respectfully requests that the Court approve the

17   proposed Plan of Allocation.

18   **VI.     THE SETTLEMENT CLASS SHOULD BE FINALLY CERTIFIED**

19          The Court previously granted preliminary certification to the Settlement Class under

20   Rules 23(a) and (b)(3).  *See* Preliminary Approval Order ¶ 4.  Because nothing has occurred

21   since then to cast doubt on the propriety of class certification for settlement purposes, and no

22   objections have been received to date, the Court should grant final class certification.

23

24

25

26

27

28
Motion for Final Approval of Class Action Settlement and
Plan of Allocation and Memorandum in Support Thereof
Case No. 3:18 -cv-00923-RS
                                                23

1

## CONCLUSION

2      For all the foregoing reasons, Lead Plaintiff respectfully requests that the Court: (i) grant

3 final approval of the Settlement; (ii) approve the Plan of Allocation as fair, reasonable, and

4 adequate; and (iii) finally certify the Settlement Class, for settlement purposes only.

5 Dated: October 10, 2019                    Respectfully submitted,

6                                            **KIRBY McINERNEY LLP**

7                                    By:    /s/ *Ira M. Press*
8                                            Ira M. Press
                                             Christopher S. Studebaker
9                                            250 Park Avenue, Suite 820
                                             New York, New York 10177
10                                           Telephone: (212) 371-6600
                                             Facsimile: (212) 699-1194
11                                           ipress@kmllp.com
                                             cstudebaker@kmllp.com
12

13                                           *Counsel for Lead Plaintiff Globis Capital Advisors*
                                             *L.L.C. and the Proposed Plaintiff Class*
14

15                                           Robert V. Prongay (#270796)
                                             Lionel Z. Glancy (#134180)
16                                           Lesley F. Portnoy (#304851)
                                             **GLANCY PRONGAY & MURRAY LLP**
17                                           1925 Century Park East, Suite 2100
                                             Los Angeles, California 90067
18                                           Telephone: (310) 201-9150
                                             Facsimile: (310) 432-1495
19                                           rprongay@glancylaw.com
                                             lportnoy@glancylaw.com
20

21                                           *Liaison Counsel for Lead Plaintiff Globis Capital*
                                             *Advisors L.L.C. and the Proposed Plaintiff Class*
22

23

24

25

26

27

28
Motion for Final Approval of Class Action Settlement and
Plan of Allocation and Memorandum in Support Thereof
Case No. 3:18 -cv-00923-RS
24

1

## PROOF OF SERVICE BY ELECTRONIC POSTING

2      I, the undersigned say:

3      I am not a party to the above case and am over eighteen years old.  On October 10, 2019,

4 I served true and correct copies of the foregoing document, by posting the document

5 electronically to the ECF website of the United States District Court for the Northern District of

6 California, for receipt electronically by the parties listed on the Court's Service List.

7      I affirm under penalty of perjury under the laws of the United States of America that the

8 foregoing is true and correct. Executed on October 10, 2019, at New York, New York.

9

10                                 */s/ Ira M. Press*

11                                   Ira M. Press

12                                 *Counsel for Lead Plaintiff Globis Capital Advisors L.L.C. and the Proposed Plaintiff Class*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND
PLAN OF ALLOCATION AND MEMORANDUM IN SUPPORT THEREOF
CASE NO. 3:18 -CV-00923-RS

25