1
2
3
4
5
6

Robert V. Prongay (#270796)
Lionel Z. Glancy (#134180)
Lesley F. Portnoy (#304851)
GLANCY PRONGAY & MURRAY LLP
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 432-1495
rprongay@glancylaw.com
lportnoy@glancylaw.com

7
8

*Liaison Counsel for Lead Plaintiff Globis Capital Advisors L.L.C.
and the Proposed Plaintiff Class*

9

[Additional Counsel on Signature Page]

10
11
12

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

13
14
15
16
17
18
19

STEVEN LAZAN,

                    Plaintiff,

v.

QUANTUM CORPORATION, *et. al.*,

                    Defendants.

20
21
22
23
24
25

ALEXANDER E. NABHAN,

                    Plaintiff,

v.

QUANTUM CORP., *et al.*,

                    Defendants.

Case No.  3:18-cv-00923-RS

<u>**CLASS ACTION**</u>

**LEAD COUNSEL'S MOTION FOR
AN AWARD OF ATTORNEYS'
FEES AND REIMBURSEMENT OF
LITIGATION EXPENSES AND
MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT
THEREOF**

Hearing Date:  November 14, 2019
Time:          1:30 p.m.
Location:      Courtroom 3 – 17th Floor
Judge:         Hon. Richard Seeborg

26
27
28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................................................... ii

NOTICE OF MOTION FOR AN AWARD OF ATTORNEYS' FEES AND
REIMBURSEMENT OF LITIGATION EXPENSES ........................................................ 1

STATEMENT OF ISSUES TO BE DECIDED .......................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ............................................. 2

I.      PRELIMINARY STATEMENT ....................................................... 2

II.     FACTUAL AND PROCEDURAL HISTORY OF THE LITIGATION ............................ 4

III.    THE COURT SHOULD APPROVE PLAINTIFFS' COUNSEL'S FEE
REQUEST ....................................................................................................... 4

      A.  Plaintiffs' Counsel Is Entitled to an Award of Attorneys' Fees from the
Common Fund ....................................................................................... 4

      B.  The Court Should Calculate the Requested Fee as a Percentage of the
Common Fund ....................................................................................... 5

      C.  Analysis Under the Percentage Method and the *Vizcaino* Factors Justify a
Fee Award of 25% in this Case ............................................................ 6

          1.     The Quality of the Results Achieved Supports the Fee Request ............... 7

          2.     The Risks of Litigation Support the Fee Request ...................................... 9

          3.     The Skill Required and the Quality of Work ............................................ 12

          4.     The Contingent Nature of the Fee and Financial Burden Carried by
Counsel .................................................................................................... 13

          5.     A 25% Fee Award Is the Ninth Circuit's Benchmark and
Comparable to Awards in Similar Cases ................................................. 15

          6.     Reaction of the Settlement Class ............................................................. 17

          7.     A Lodestar Cross-Check Supports the Requested Fee ............................. 17

IV.    PLAINTIFFS' COUNSEL'S EXPENSES ARE REASONABLE AND WERE
NECESSARY TO ACHIEVE THE BENEFIT OBTAINED ......................................... 21

CONCLUSION ................................................................................................... 24

Motion for an Award of Attorneys' Fees
and Reimbursement of Litigation Expenses
Case No. 3:18 -cv-00923-RS

i

1

**TABLE OF AUTHORITIES**

2

<u>**Cases**</u>                                                                                                   **Page(s)**

3

*In re Activision Sec. Litig.,*
    723 F. Supp. 1373 (N.D. Cal. 1989) ............................................................. 5

4

*In re Adelphia Commc'ns Corp. Sec. & Deriv. Litig.,*
    No. 03 MDL 1529, 2006 WL 3378705 (S.D.N.Y. Nov. 16, 2006) ............................... 12

5

6

*In re Alstom SA Sec. Litig.,*
    741 F. Supp. 2d 469 (S.D.N.Y. 2010) ............................................................. 14

7

*In re Apple Comput. Sec. Litig.,*
    No. 84 Civ. 20148 (JW), 1991 WL 238298 (N.D. Cal. Sept. 6, 1991) ............................ 14

8

9

*In re AudioEye, Inc., Sec. Litig.,*
    No. 15 Civ. 00163, slip op. (D. Ariz. May 8, 2017) (ECF No. 100) .............................. 19

10

11

*In re BankAtlantic Bancorp, Inc. Sec. Litig.,*
    No. 07 Civ. 61542, 2011 WL 1585605 (S.D. Fla. Apr. 25, 2011) .................................. 14

12

*Bateman Eichler, Hill Richards, Inc. v. Berner,*
    472 U.S. 299 (1985) ................................................................................ 13

13

14

*In re Bear Stearns Cos., Inc. Sec., Deriv., & ERISA Litig.,*
    909 F. Supp. 2d 259 (S.D.N.Y. 2012) ............................................................. 11

15

*B-K Lighting, Inc. v. Vision3 Lighting,*
    No. 06 Civ. 02825, 2009 WL 3838264 (C.D. Cal. Nov. 16, 2009) ................................ 19

16

17

*In re Bluetooth Headset Prods. Liab. Litig.,*
    654 F.3d 935 (9th Cir. 2011) ...................................................................... 5

18

*Boeing Co. v. Van Gemert,*
    444 U.S. 472 (1980) ................................................................................ 4

19

20

*In re Celera Corp. Sec. Litig.,*
    No. 10 Civ. 02604 (EJD), 2015 WL 7351449 (N.D. Cal. Nov. 20, 2015) ........................ 8

21

22

*In re Charles Schwab Corp. Sec. Litig.,*
    No. 08 Civ. 01510 (WHA), 2011 WL 1481424 (N.D. Cal. Apr. 19, 2011) ...................... 7

23

*City of Providence v. Aeropostale, Inc.,*
    No. 11 Civ. 7132, 2014 WL 1883494 (S.D.N.Y. May 9, 2014) .................................. 16

24

25

*Cooper v. Thoratec Corp.,*
    No. 14 Civ. 00360 (CW), slip op. (N.D. Cal. June 25, 2019) (ECF No. 137) ........... 15, 18

26

27

28

*In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.*,
    109 F.3d 602 (9th Cir. 1997) ................................................................... 17, 19

*In re Cytrx Corp. Sec. Litig.*,
    No. 14 Civ. 1956, slip op. (C.D. Cal. May 18, 2016) (ECF No. 162) ....................... 15, 18

*Destefano v. Zynga, Inc.*,
    No. 12 Civ. 04007 (JSC), 2016 WL 537946 (N.D. Cal. Feb. 11, 2016)................... *passim*

*Dura Pharm., Inc. v. Broudo*,
    544 U.S. 336 (2005)................................................................................. 10

*Ellison v. Steven Madden, Ltd.*,
    No. 11 Civ. 5935, 2013 WL 12124432 (C.D. Cal. May 7, 2013) ..................................... 5

*Esposito v. Am. Renal Assocs. Holdings, Inc. et al.*,
    No. 16 Civ. 11797, slip op. (D. Mass. June 15, 2018) (ECF No. 106)...................... 16, 19

*In re Equity Funding Corp. of Am. Sec. Litig.*,
    438 F. Supp. 1303 (C.D. Cal. 1977) ................................................................. 12

*In re Extreme Networks, Inc. Sec. Litig.*,
    No. 15 Civ. 04883 (BLF), 2019 WL 3290770 (N.D. Cal. July 22, 2019) ............. 8, 15, 19

*Fischel v. Equitable Life Assur. Soc'y of U.S.*,
    307 F.3d 997 (9th Cir. 2002) ......................................................................... 19

*Fogarazzo v. Lehman Bros. Inc.*,
    No. 03 Civ. 5194, 2011 WL 671745 (S.D.N.Y. Feb. 23, 2011) ................................ 16

*In re Gilead Sci. Sec. Litig.*,
    No. 03 Civ. 4999 (SI), slip op. (N.D. Cal. Nov. 5, 2010) (ECF No. 282) ...................... 16

*Glickenhaus & Co. v. Household Int'l, Inc.*,
    787 F.3d 408 (7th Cir. 2015) ......................................................................... 14

*Harris v. Marhoefer*,
    24 F.3d 16 (9th Cir. 1994) ............................................................................. 21

*Hayes v. MagnaChip Semiconductor Corp.*,
    No. 14 Civ. 01160 (JST), 2016 WL 6902856 (N.D. Cal. Nov. 21, 2016)............. 8, 15, 18

*Hefler v. Wells Fargo & Co.*,
    No. 16 Civ. 05479 (JST), 2018 WL 6619983 (N.D. Cal. Dec. 18, 2018) ................. 20, 21

*Hensley v. Eckerhart*,
    461 U.S. 424 (1983)..................................................................................... 7

*In re Heritage Bond Litig.*,
    No. 02 ML 1475, 2005 WL 1594389 (C.D. Cal. June 10, 2005) ............................ 12, 17

*Hyles v. N.Y.C.*,
   No. 10 Civ. 3119, 2016 WL 4077114 (S.D.N.Y. Aug. 1, 2016) ..................................... 22

*In re Ikon Office Sols., Inc. Sec. Litig.*,
   194 F.R.D. 166 (E.D. Pa. 2000) .................................................................................... 9

*In re Interlink Elec., Inc. Sec. Litig.*,
   No. 05 Civ. 08133, slip op. (C.D. Cal. June 1, 2009) (ECF No. 165) ............................. 16

*Int'l Bhd. of Elec. Workers Local 697 Pension Fund v. Int'l Game Tech., Inc.*,
   No. 09 Civ. 00419, 2012 WL 5199742 (D. Nev. Oct. 19, 2012)...................................... 8

*Janus Cap. Grp., Inc. v. First Deriv. Traders*,
   564 U.S. 135 (2011)........................................................................................................ 14

*In re LendingClub Sec. Litig.*,
   No. 16 Civ. 02627 (WHA), 2018 WL 4586669 (N.D. Cal. Sept. 24, 2018) ................... 23

*Lloyd v. CVB Fin. Corp.*,
   No. 10 Civ. 06256, slip op. (C.D. Cal. Mar. 13, 2017) (ECF No. 136)..................... 15, 19

*Luna v. Marvell Tech. Grp.*,
   No. 15 Civ. 05447 (WHA), 2018 WL 1900150 (N.D. Cal. Apr. 20, 2018) .................... 23

*McPhail v. First Command Fin. Planning, Inc.*,
   No. 05 Civ. 179, 2009 WL 839841 (S.D. Cal. Mar. 30, 2009).......................................... 8

*In re Media Vision Tech. Sec. Litig.*,
   913 F. Supp. 1362 (N.D. Cal. 1996) .............................................................................. 21

*Mo. v. Jenkins by Agyei*,
   491 U.S. 274 (1989)........................................................................................................ 19

*Morrison v. Nat'l Austl. Bank Ltd.*,
   561 U.S. 247 (2010)........................................................................................................ 14

*Mulligan v. Impax Labs, Inc.*,
   No. 13 Civ. 01037 (EMC), slip op. (N.D. Cal. July 23, 2015) (ECF No. 133) ............... 16

*Nguyen v. Radient Pharm. Corp.*,
   No. 11 Civ. 0406, 2014 WL 1802293 (C.D. Cal. May 6, 2014) ...................................... 5

*In re Nuvelo, Inc. Sec. Litig.*,
   No. 07 Civ. 0405 (CRB), 2011 WL 2650592 (N.D. Cal. July 6, 2011) .......................... 16

*In re Omnivision Techs., Inc.*,
   559 F. Supp. 2d 1036 (N.D. Cal. 2008) ..................................................................*passim*

*In re Pac. Enters. Sec. Litig.*,
   47 F.3d 373 (9th Cir. 1995) ......................................................................................... 2, 9

*In re Par Pharm. Sec. Litig.*,
    No. 06 Civ. 3226, 2013 WL 3930091 (D.N.J. July 29, 2013) ......................................... 16

*Paul, Johnson, Alston & Hunt v. Graulty*,
    886 F.2d 268 (9th Cir. 1989) ......................................................................................... 6

*Petersen v. CJ Am., Inc.*,
    No. 14 Civ. 2570, 2016 WL 5719823 (S.D. Cal. Sept. 30, 2016) ................................... 18

*Powers v. Eichen*,
    229 F.3d 1249 (9th Cir. 2000) ................................................................................... 6, 15

*Progressive Cas. Ins. Co. v. Delaney*,
    No. 11 Civ. 678, 2014 WL 3563467 (D. Nev. July 18, 2014)......................................... 22

*Pub. Pension Fund Grp. v. KV Pharm. Co.*,
    No. 08 Civ. 1859, slip op. (E.D. Mo. Apr. 23, 2014) (ECF No. 199) ............................ 16

*Rieckborn v. Velti PLC*,
    No. 13 Civ. 03889 (WHO), 2015 WL 468329 (N.D. Cal. Feb. 13, 2015) ...................... 15

*Robbins v. Koger Props., Inc.*,
    116 F.3d 1441 (11th Cir. 1997) ..................................................................................... 14

*Rodriguez v. Disner*,
    688 F.3d 645 (9th Cir. 2012) ........................................................................................... 7

*Rodriguez v. W. Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009) ........................................................................................... 7

*Rutti v. Lojack Corp. Inc.*,
    No. 06 Civ. 350, 2012 WL 3151077 (C.D. Cal. July 31, 2012) ..................................... 19

*Schuler v. Meds. Co.*,
    No. 14 Civ. 1149, 2016 WL 3457218 (D.N.J. June 24, 2016) ......................................... 8

*Steiner v. Am. Broad. Co.*,
    248 F. App'x. 780 (9th Cir. 2007) ................................................................................. 18

*Stetson v. Grissom*,
    821 F.3d 1157 (9th Cir. 2016) ......................................................................................... 4

*Sudunagunta v. NantkWest, Inc. et al.*,
    No. 16 Civ. 01947, slip op. (C.D. Cal. May 13, 2019) (ECF No. 188) .......................... 15

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007)........................................................................................................ 13

*Thomas v. MagnaChip Semiconductor Corp.*,
    No. 14 Civ. 01160 (JST), 2018 WL 2234598 (N.D. Cal. May 15, 2018) ........... 15, 21, 23

*Torrisi v. Tucson Elec. Power Co.*,
  8 F.3d 1370 (9th Cir. 1993) ........................................................ 6

*Vincent v. Hughes Air W., Inc.*,
  557 F.2d 759 (9th Cir. 1977) ...................................................... 4

*Vizcaino v. Microsoft Corp.*,
  290 F.3d 1043 (9th Cir. 2002) ............................................. *passim*

*In re Vocera Commc'ns, Inc.*,
  No. 13 Civ. 03567 (EMC), slip op. (N.D. Cal. July 29, 2016) (ECF No. 211) ............... 16

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
  19 F.3d 1291 (9th Cir. 1994) .................................................. 4, 6

*Woburn Ret. Sys. v. Salix Pharm., Ltd.*,
  No. 14 Civ. 8925, 2017 WL 3579892 (S.D.N.Y. Aug. 18, 2017) .................................. 19

*In re Xcel Energy, Inc., Sec., Deriv. & "ERISA" Litig.*,
  364 F. Supp. 2d 980 (D. Minn. 2005) ........................................ 14


**Statutes**

15 U.S.C. § 78u-4 ........................................................... 6, 10


**Other Authorities**

Laarni T. Bulan, Ellen M. Ryan & Laura E. Simmons, *Securities Class Action
  Settlements: 2018 Review and Analysis*, Cornerstone Research (2019) ........................... 9

Stefan Boettrich & Svetlana Starykh, *Recent Trends in Securities Class Action Litigation:
  2018 Full-Year Review*, NERA Economic Consulting (Jan. 29, 2019)........................... 9

Svetlana Starykh & Janeen McIntosh, *Recent Trends in Securities Class Action Litigation
  2019 H1 Update*, NERA Economic Consulting (Aug. 2, 2019)..................................... 10

Motion for an Award of Attorneys' Fees
and Reimbursement of Litigation Expenses
Case No. 3:18 -cv-00923-RS

vi

**NOTICE OF MOTION FOR AN AWARD OF ATTORNEYS' FEES
<u>AND REIMBURSEMENT OF LITIGATION EXPENSES</u>**

TO: ALL PARTIES AND THEIR RESPECTIVE COUNSEL OF RECORD:

PLEASE TAKE NOTICE that pursuant to Rule 23(h) of the Federal Rules of Civil Procedure and the Court's Order Preliminarily Approving Settlement and Providing for Notice ("Preliminary Approval Order," ECF No. 60), on November 14, 2019, at 1:30 p.m., or as soon thereafter as the matter may be heard, Plaintiff Globis Capital Advisors L.L.C. ("Lead Plaintiff") will and hereby moves the Honorable Richard Seeborg, District Judge, located in Courtroom 3, 17th Floor, Phillip Burton Federal Building & United States Courthouse, 450 Golden Gate Avenue, San Francisco, CA 94102, for entry of an Order awarding attorneys' fees and reimbursement of litigation expenses in the above-captioned securities class action (the "Action").[1]

This Motion is based on the following Memorandum of Points and Authorities, the Press Declaration, the Stipulation, all prior pleadings and papers in this Action, and such additional information or argument as may be required by the Court.

**<u>STATEMENT OF ISSUES TO BE DECIDED</u>**

1.      Whether the Court should approve as fair and reasonable Lead Counsel's application for an attorneys' fee award in the amount of 25% of the Settlement Fund (*i.e.*, the Settlement Amount, plus interest earned thereon); and

2.      Whether the Court should approve the request for reimbursement of $101,324.55 in litigation expenses incurred by Plaintiffs' Counsel in this Action.

---

[1] Unless otherwise defined herein, all capitalized terms have the meanings set forth in the Stipulation of Settlement dated June 28, 2019 (ECF No. 57-1) (the "Stipulation") or the concurrently filed Declaration of Ira M. Press in Support of Lead Plaintiff's Motion for Final Approval of Class Action Settlement and Plan of Allocation and Lead Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Expenses (the "Press Declaration" or "Press Decl."). Citations herein to "¶ __" and "Ex. __" refer, respectively, to paragraphs in, and exhibits to, the Press Declaration.

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

Lead Counsel respectfully submits this memorandum of points and authorities in support of its application, on behalf of Plaintiffs' Counsel, for: (i) an award of attorneys' fees of 25% of the Settlement Fund, or $2,037,500, plus interest earned at the same rate as the Settlement Fund; and (ii) payment of litigation expenses in the amount of $101,324.55 that Plaintiffs' Counsel reasonably and necessarily incurred in prosecuting and resolving the Action.[2]

## I.      PRELIMINARY STATEMENT

Plaintiffs' Counsel obtained a $8.15 million cash settlement for the Class of the claims that were brought in this Action against Quantum Corporation ("Quantum" or the "Company"), Jon W. Gacek and Fuad Ahmad (collectively, the "Individual Defendants," and, together with Quantum, the "Defendants").  Plaintiffs' Counsel have not received any compensation for their prosecution of this case.  Lead Counsel respectfully requests that Plaintiffs' Counsel be awarded an attorneys' fee of 25% of the Settlement Fund, which will include any accrued interest, and that Plaintiffs' Counsel be paid out of the Settlement Fund for litigation expenses in the amount of $101,324.55.  This 25% fee request is the Ninth Circuit's "benchmark" for contingent fees. *See, e.g.*, *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) ("Twenty-five percent is the 'benchmark' that district courts should award in common fund cases.") (citation omitted).

By any measure, the Settlement is a favorable result for the Settlement Class and avoids the substantial risks and expenses of continued litigation, including the risk of recovering less than the Settlement Amount, or nothing at all.  The Settlement amount represents 19.76% of the estimated recoverable damages in this Action (in the event that the Class had prevailed); a percentage recovery that is significantly above the average for securities fraud class actions.

---

[2] Lead Counsel was assisted in this case by Court-appointed Liaison Counsel, Glancy Prongay and Murray LLP ("GPM" and collectively with Lead Counsel, "Plaintiffs' Counsel").  Any attorneys' fees awarded by the Court to Lead Counsel will be allocated by Lead Counsel to itself and GPM.  No other law firms will share in the attorneys' fees awarded by the Court.

Motion for an Award of Attorneys' Fees
and Reimbursement of Litigation Expenses
Case No. 3:18 -cv-00923-RS

2

1    The reaction of the Settlement Class supports the requested fees and expenses. The

2 deadline to file objections and to request exclusion to the Settlement is October 24, 2019, two

3 weeks after the filing of this motion.   To date, Plaintiffs' Counsel have not received any

4 objections from class members to the requested fees and expenses (or to the Settlement itself).

5 ¶¶ 9, 67.

6    Pursuant to the Preliminary Approval Order (attached as Ex. A to the Press Declaration),

7 as of October 7, 2019, the Court-appointed settlement claims administrator, A.B. Data, Ltd. (the

8 "Claims Administrator" or "A.B. Data"), has mailed over 24,000 Postcard Notices to Settlement

9 Class Members and their nominees.   *See* Declaration of Eric J. Miller Regarding Notice

10 Dissemination; Publication of Summary Notice; Telephone; Settlement Website; and Report on

11 Requests for Exclusion, Objections, and Claim Forms ("Miller Decl.") (attached as Ex. B to the

12 Press Declaration) ¶ 8.   The Notice expressly informed Settlement Class Members that Plaintiffs'

13 Counsel intended to apply for an award of attorneys' fees of up to 25% of the Gross Settlement

14 Fund, and would seek reimbursement of their out-of-pocket expenses not to exceed $125,000.

15 *See* Miller Decl. Ex. B, Full Notice ¶¶ 5, 62.   To date, the Settlement Class appears satisfied with

16 those requests.   ¶¶ 9, 67; Miller Decl. ¶ 14.

17    A lodestar cross-check further confirms the fairness and reasonableness of Plaintiffs'

18 Counsel's fee request.   Plaintiffs' Counsel spent a total of approximately 2,125.2 hours of

19 professional time having a market value of approximately $1,382,850.75 in prosecuting the

20 claims in this Action.   *See* ¶ 54.   The requested 25% award will result in a lodestar multiplier of

21 approximately 1.47, which is on the low end of the range of reasonable multipliers that courts in

22 the Ninth Circuit routinely award.

23    In addition, the litigation expenses in the amount of $101,324.55, for which Plaintiffs'

24 Counsel request reimbursement, are reasonable in amount and were necessarily incurred for the

25 successful prosecution of the Action.   *See* ¶¶ 62-63.   For these reasons, and as further set forth

26 below, Plaintiffs' Counsel respectfully submit that the Court award attorneys' fees of 25% of the

27

28

1   settlement fund and reimbursement of Counsel's litigation expenses are reasonable and should be

2   approved.

3   **II.   FACTUAL AND PROCEDURAL HISTORY OF THE LITIGATION**

4           The Press Declaration is an integral part of this submission.  For the sake of brevity in

5   this memorandum, the Court is referred to it for a detailed description of, *inter alia*, the factual

6   and procedural history of the Action (¶¶ 11-23); the nature of the claims asserted (¶¶ 28-30); the

7   negotiations leading to the Settlement (¶ 41); the risks and uncertainties of continued litigation

8   (¶¶ 42-45); and the services Plaintiffs' Counsel provided for the benefit of the Settlement Class

9   (¶¶ 7, 47-62). Additionally, in accordance with this District's Procedural Guidance for Class

10  Action Settlements, the Court is referred to the concurrently filed final approval motion for the

11  history and facts set out in that memorandum.

12  **III.   THE COURT SHOULD APPROVE PLAINTIFFS' COUNSEL'S FEE
        REQUEST**

13
        **A.     Plaintiffs' Counsel Is Entitled to an Award of Attorneys' Fees from
14                the Common Fund**

15          It is well settled that attorneys that represent a class and are successful in recovering a

16  common fund for the benefit of class members are entitled to a reasonable fee from the common

17  fund as compensation for their services.  *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478

18  (1980) ("[A] litigant or a lawyer who recovers a common fund for the benefit of persons other

19  than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole.").

20  Similarly, the Ninth Circuit has held that "a private plaintiff, or his attorney, whose efforts

21  create, discover, increase or preserve a fund to which others also have a claim is entitled to

22  recover from the fund the costs of his litigation, including attorneys' fees."  *Vincent v. Hughes*

23  *Air W., Inc.*, 557 F.2d 759, 769 (9th Cir. 1977); *see also In re Wash. Pub. Power Supply Sys. Sec.*

24  *Litig.*, 19 F.3d 1291, 1300 (9th Cir. 1994) (noting that "those who benefit from the creation of

25  the fund should share the wealth with the lawyers whose skill and effort helped create it")

26  ("*WPPSS*"); *accord Stetson v. Grissom*, 821 F.3d 1157, 1165 (9th Cir. 2016).  This rule, known

27  as the "common fund" doctrine, is "designed to prevent unjust enrichment by distributing the

28

1   costs of litigation among those who benefit from the efforts of the litigants and their counsel." *In*

2   *re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008) (citation omitted).

3   **B.      The Court Should Calculate the Requested Fee as a Percentage of the Common Fund**

4

5      District courts in the Ninth Circuit retain discretion to award attorneys' fees in common

6   fund cases based upon either the percentage-of-the-fund method or the lodestar method.  *See In*

7   *re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 944-45 (9th Cir. 2011) (finding that

8   when a settlement establishes a common fund for the benefit of a class, courts may use either

9   method to gauge the reasonableness of a fee request, but encouraging courts to employ a second

10   method as a cross-check after choosing a primary method).   Notwithstanding that discretion,

11   where there is an easily quantifiable benefit to the class – such as a cash common fund – the

12   percentage-of-the-fund approach is the prevailing method used.  *See, e.g.*, *Ellison v. Steven*

13   *Madden, Ltd.*, No. 11 Civ. 5935, 2013 WL 12124432, at *8 (C.D. Cal. May 7, 2013) (finding

14   "use of the percentage method" to be the "dominant approach in common fund cases");

15   *Omnivision*, 559 F. Supp. 2d at 1046 (same).

16      Most courts have found the percentage approach to be superior in cases with a common

17   fund recovery because: (i) it parallels the use of percentage-based contingency fee contracts,

18   which are the norm in private litigation; (ii) aligns the lawyers' interests with that of the class in

19   achieving the maximum possible recovery; and (iii) reduces the burden on the court by

20   eliminating the detailed and time-consuming lodestar analysis.  *See Omnivision*, 559 F. Supp. 2d

21   at 1046; *Nguyen v. Radient Pharm. Corp.*, No. 11 Civ. 0406, 2014 WL 1802293, at *9 (C.D. Cal.

22   May 6, 2014) ("There are significant benefits to the percentage approach, including consistency

23   with contingency fee calculations in the private market, aligning the lawyers' interests with

24   achieving the highest award for the class members, and reducing the burden on the courts that a

25   complex lodestar calculation requires."); *see also In re Activision Sec. Litig.*, 723 F. Supp. 1373,

26   1378 (N.D. Cal. 1989) (lodestar/multiplier method "adds to the work load of already overworked

27   district courts").   This is particularly appropriate in cases under the PSLRA where Congress

28

1   recognized the propriety of the percentage method of fee awards.  *See* 15 U.S.C. § 78u-4(a)(6)

2   ("Total attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall

3   not exceed a reasonable percentage of the amount of any damages and prejudgment interest

4   actually paid to the class.").

5       For these reasons, among others, Plaintiffs' Counsel respectfully request that the Court

6   award attorneys' fees in this case on a percentage-of-the-fund basis.

7       **C.      Analysis Under the Percentage Method and the *Vizcaino* Factors
                  Justify a Fee Award of 25% in this Case**

8       In *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268 (9th Cir. 1989), the Ninth

9
10   Circuit established 25% of a common fund as the "benchmark" award for attorneys' fees.  886

11   F.2d at 272-73; *see also Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376-77 (9th Cir. 1993)

12   (reaffirming 25% benchmark); *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000) (same);

13   *see also Destefano v. Zynga, Inc.*, No. 12 Civ. 04007 (JSC), 2016 WL 537946, at \*17 (N.D. Cal.

14   Feb. 11, 2016) ("In common fund cases in the Ninth Circuit, the 'benchmark' percentage award

15   is 25 percent of the recovery obtained, with 20-30 percent as the usual range.") (citing *Vizcaino*

16   *v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002)).

17       The guiding principle in this Circuit is that a fee award be "reasonable under the

18   circumstances."  *WPPSS*, 19 F.3d at 1296 (citation and emphasis omitted).  In employing the

19   percentage method, courts may perform a lodestar cross-check to confirm the reasonableness of

20   the requested fee.  *Vizcaino*, 290 F.3d at 1047 (affirming use of percentage method and applying

21   the lodestar method as a cross-check).  Here, as discussed in detail below, Plaintiffs' Counsel

22   have dedicated more than 2,125 hours to the prosecution of the case, with a lodestar value of

23   $1,382,850.75.  *See*  ¶ 54 & Exs. H (KM lodestar report), G (GPM Declaration[3] Ex. A (GPM

24   lodestar report)).

25   ─────────────────

26   [3]  References to "GPM Declaration" are to the Declaration of Lionel Z. Glancy in Support of
     Motion for Attorneys' Fees and Reimbursement of Expenses on Behalf of Glancy Prongay &
     Murray LLP (attached as Ex. G to the Press Decl.).

27

28

1    Courts in the Ninth Circuit consider certain factors when determining whether a fee

2    award is "reasonable under the circumstances." *Rodriguez v. Disner*, 688 F.3d 645, 653 (9th Cir.

3    2012) (citation omitted); *see also Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 967 (9th Cir.

4    2009).   Those factors include: (1) the results achieved; (2) the risk of litigation; (3) the skill

5    required and the quality of work; (4) the contingent nature of the fee and the financial burden

6    carried by the plaintiffs; (5) the reaction of the Settlement Class; and (6) awards made in similar

7    cases.  *See Omnivision*, 559 F. Supp. 2d at 1046-48 (citing *Vizcaino*, 290 F.3d at 1048-51); *see*

8    *also In re Charles Schwab Corp. Sec. Litig.*, No. 08 Civ. 01510 (WHA), 2011 WL 1481424, at

9    *8 (N.D. Cal. Apr. 19, 2011).  The Ninth Circuit has explained that these factors should not be

10   used as a rigid checklist or weighed individually, but, rather, should be evaluated in light of the

11   totality of the circumstances.  *See Vizcaino*, 290 F.3d at 1048-50.  As set forth below, all of the

12   *Vizcaino* factors, along with the lodestar cross-check, militate in favor of approving the requested

13   fee.

14          **1.      The Quality of the Results Achieved Supports the Fee Request**

15          Courts have consistently acknowledged that the quality of the result achieved is the most

16   important factor in determining an appropriate fee award.  *See, e.g.*, *Hensley v. Eckerhart*, 461

17   U.S. 424, 436 (1983) ("most critical factor is the degree of success obtained"); *In re Omnivision*,

18   559 F. Supp. 2d at 1046.

19          Lead Counsel submits that the $8.15 million proposed Settlement is an excellent result

20   for the Settlement Class, both quantitatively and when considering the risk of a lesser (or no)

21   recovery if the case proceeded through a decision on a motion to dismiss and, if Plaintiffs were

22   to succeed at that stage, class certification, summary judgment and trial.   Lead Plaintiff's

23   damages expert estimates that if Lead Plaintiff had withstood the motion to dismiss, prevailed on

24   its class certification motion, defeated summary judgment and had fully prevailed in each of its

25   claims after a jury trial, and if the Court and jury accepted Lead Plaintiff's damages theory,

26   including proof of loss causation as to both stock price drop dates alleged in this case – *i.e.*, the

27   **best case scenario** for Lead Plaintiff and the Class – the total **maximum** damages for the Class

28

would be $41.25 million.  Thus, the $8.15 million Settlement Amount represents nearly 20% of the total **maximum** damages potentially available in this Action.  ¶ 44.  Defendants, of course, disputed liability and would have contended that, even if liability were to be proven, the amount of the Settlement Class' recoverable damages were significantly lower.

This percentage of recovery compares favorably to recoveries in other securities class actions within the Ninth Circuit.  *See, e.g.*, *In re Extreme Networks, Inc. Sec. Litig.*, No. 15 Civ. 04883 (BLF), 2019 WL 3290770, at *9 (N.D. Cal. July 22, 2019) (approving securities fraud class action where $7 million fund represented a recovery of "between 5% and 9.5% of non-disaggregated damages and between 19% to 54% if disaggregated arguments are credited"); *Hayes v. MagnaChip Semiconductor Corp.*, No. 14 Civ. 01160 (JST), 2016 WL 6902856, at *6 (N.D. Cal. Nov. 21, 2016) (approving securities fraud class action settlement where recovery was 14% of maximum damages); *Destefano*, 2016 WL 537946, at *11 (approving securities fraud class action settlement valued at 9.5% of the likely recoverable damages after netting out expected attorneys' fees); *In re Celera Corp. Sec. Litig.*, No. 10 Civ. 02604 (EJD), 2015 WL 7351449, at *6 (N.D. Cal. Nov. 20, 2015) (approving securities fraud class action settlement valued at 17% of estimated damages award); *Omnivision*, 559 F. Supp. 2d at 1042 (noting $13.75 million settlement yielding 6% of potential damages was "higher than the median percentage of investor losses recovered in recent shareholder class action settlements") (citation omitted); *McPhail v. First Command Fin. Planning, Inc.*, No. 05 Civ. 179, 2009 WL 839841, at *5 (S.D. Cal. Mar. 30, 2009) (finding a $12 million settlement recovering 7% of estimated damages was fair and adequate).[4]

---

[4] The recovery also compares favorably to recoveries achieved in cases in other Circuits.  *See, e.g.*, *Schuler v. Meds. Co.*, No. 14 Civ. 1149, 2016 WL 3457218, at *8 (D.N.J. June 24, 2016) (approving $4,250,000 securities fraud settlement that reflects approximately 4.0% of the estimated recoverable damages and noting percentage "falls squarely within the range of previous settlement approvals"); *Int'l Bhd. of Elec. Workers Local 697 Pension Fund v. Int'l Game Tech., Inc.*, No. 09 Civ. 00419, 2012 WL 5199742, at *3 (D. Nev. Oct. 19, 2012) (approving $12.5 million settlement recovering approximately 3.5% of the maximum damages

1    In comparison, the Settlement also presents a favorable recovery considering that in

2    securities class actions in 2018 where estimated damages were between $25-$75 million, the

3    median recovery (in those actions where a recovery was obtained) was only 9.9% of estimated

4    damages.[5]  Additionally, the median recovery in securities class actions from 1996 through 2018,

5    in which estimated damages ranged between $20-$49 million, was 8.4% of estimated damages.[6]

6    In sum, the Settlement provides a favorable percentage of recovery for the Settlement

7    Class.

8    **2.      The Risks of Litigation Support the Fee Request**

9    The second factor courts in this Circuit consider in awarding attorneys' fees is "[t]he risk

10   that further litigation might result in Plaintiffs not recovering at all, particularly in a case

11   involving complicated legal issues."  *Omnivision*, 559 F. Supp. 2d at 1046-47; *see also Vizcaino*,

12   290 F.3d at 1048 (noting that "[r]isk is a relevant circumstance" in awarding attorneys' fees);

13   *Pac. Enters.*, 47 F.3d at 379 (finding attorneys' fees "justified because of the complexity of the

14   issues and the risks").   While courts have always recognized that securities class actions carry

15   significant risks, post-PSLRA rulings make it clear that the risk of no recovery has increased

16   significantly.   *In re Ikon Office Sols., Inc. Sec. Litig.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000)

17   ("[S]ecurities actions have become more difficult from a plaintiff's perspective in the wake of

18   the PSLRA.").   This Action was no exception.

19

20

---

21   that plaintiffs believe could be recovered at trial and noting that the amount is within the median
22   recovery in securities class actions settled in the last few years).

23   [5] *See* Laarni T. Bulan, Ellen M. Ryan & Laura E. Simmons, *Securities Class Action Settlements: 2018 Review and Analysis*, Cornerstone Research at 6, Fig. 5 (2019), ("Cornerstone Report")
24   (attached as Ex. D to the Press Decl.); *id.* at 19, App. 3 (the typical recovery from 2009-2018 was generally 5.1% of damages for Section 10(b) class action cases in the Ninth Circuit).

25   [6] *See* Stefan Boettrich & Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2018 Full-Year Review*, NERA Economic Consulting at 35, Fig. 27 (Jan. 29, 2019) ("NERA
26   Report") (attached as Ex. E to the Press Decl.).

27

28

1    While Plaintiffs' Counsel believe that the claims of Lead Plaintiff and the Settlement

2    Class are meritorious, Plaintiffs' Counsel also recognize that there were a number of substantial

3    risks in the litigation from the outset and that Lead Plaintiff's ability to reach trial, succeed at

4    trial and obtain a substantial judgment was far from certain.   Plaintiffs' Counsel meaningfully

5    assessed the risks of establishing liability and damages in addition to the risk that the Court

6    would grant Defendants' motions to dismiss for failure to satisfy the pleading standard.   In fact, a

7    recent survey showed that in 2018, 69.7% of all securities that were resolved were dismissed

8    while just 30.3% of all such cases were settled.   Similarly, in 2017 and 2016, dismissals

9    accounted for a majority of securities class action resolutions.[7]   Even if Lead Plaintiff had

10   defeated the dismissal motion, major risks would have remained on summary judgment and at

11   trial.   As discussed in the Press Declaration, there were substantial risks in establishing both

12   liability and damages.   ¶ 42.   Defendants deny any wrongdoing and were prepared to make a

13   multi-pronged defense.   For example, Defendants likely would argue that, even if Defendants

14   improperly recognized certain revenue during the Class Period, the errors were unintentional, so

15   they did not act with the requisite state of mind to support the securities fraud claim alleged.

16   Another  principal  risk  in  continuing  the  litigation  is  the  difficulty  of  proving  loss

17   causation and damages.   *See Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 345-46 (2005)

18   (Plaintiffs bear the burden of proving "that the defendant's misrepresentations 'caused the loss

19   for which the plaintiff seeks to recover.'") (citing 15 U.S.C. § 78u-4(b)(4)).   With respect to the

20   declines following the disclosures on August 9, 2017 and February 8, 2018 of the alleged true

21   facts,  Defendants  would  have  asserted  that  those  disclosures  did  not  correct  any

22   misrepresentations, and even if they did, a substantial portion of each decline was due to the

23   disclosure of other information unrelated to the alleged fraud.   ¶ 42.   The Parties' divergent

24   views on the issue of confounding information would have been the subject of competing expert

---

25   [7] *See* Svetlana Starykh & Janeen McIntosh, *Recent Trends in Securities Class Action Litigation*

26   *2019 H1 Update*, NERA Economic Consulting at 5, Fig. 5 (Aug. 2, 2019) (attached as Ex. C to
     the Press Decl.).

27

28   MOTION FOR AN AWARD OF ATTORNEYS' FEES
     AND REIMBURSEMENT OF LITIGATION EXPENSES
     CASE NO. 3:18 -CV-00923-RS
                                                   10

1    testimony.  Additionally, Lead Plaintiff would have had to proffer expert testimony to prove: (i)

2    what the "true value" of Quantum common stock would have been had there been no alleged

3    material misstatements or omissions concerning Defendants' revenue recognition that artificially

4    inflated Quantum's reported revenues and earnings; (ii) the amount by which Quantum shares

5    were inflated by the alleged material misstatement and omissions; and (iii) the amount of

6    inflation removed by the disclosures of the alleged true facts on August 9, 2017 and February 8,

7    2018.    In turn, Defendants would have proffered their own damages expert(s) to present

8    conflicting conclusions and theories as to the reason(s) for Quantum's share price decline.  The

9    "battle of the experts" would have been decided by the jury, which is an inherently risky process.

10   ¶ 42.  Indeed, "[w]hen the success of a party's case turns on winning a so-called 'battle of

11   experts,' victory is by no means assured." *In re Bear Stearns Cos., Inc. Sec., Deriv., & ERISA*

12   *Litig.*, 909 F. Supp. 2d 259, 267 (S.D.N.Y. 2012); *see also In re Cendant Corp. Litig*, 264 F.3d

13   201, 239 (3d Cir. 2001) ("[E]stablishing damages at trial would lead to a 'battle of experts,' with

14   each side presenting its figures to the jury and with no guarantee whom the jury would

15   believe.").  Accordingly, there was a very real risk that Lead Plaintiff would be unable to counter

16   at summary judgment, or trial, that the declines on the alleged disclosure dates were attributable

17   to the alleged fraud.

18            Overall, Lead Plaintiff faced the significant possibility that the Court or a jury would

19   agree with Defendants' arguments and experts and, regardless of who would ultimately be

20   successful at trial, there is no doubt that both sides would have had to present complex and

21   nuanced information to a jury with no certainty as to the outcome.  *See Destefano*, 2016 WL

22   537946, at *17 (approving requested fee and noting that, "[a]s to the second factor . . ., the risks

23   associated with this case were substantial given the challenges of obtaining class certification

24   and establishing the falsity of the misrepresentations and loss causation"); *Omnivision,* 559 F.

25   Supp. 2d at 1047 (noting risk of litigation, including plaintiffs' ability to prove loss causation and

26   risk defendants would prevail on damages, supported requested fee).  Accordingly, this factor

27   weighs heavily in favor of the requested fee award.

28

### 3. The Skill Required and the Quality of Work

Courts have recognized that the "prosecution and management of a complex national class action requires unique legal skills and abilities." *In re Heritage Bond Litig.*, No. 02 ML 1475, 2005 WL 1594389, at *12 (C.D. Cal. June 10, 2005) (citation omitted); *see also Vizcaino*, 290 F.3d at 1048. "This is particularly true in securities cases because the [PSLRA] makes it much more difficult for securities plaintiffs to get past a motion to dismiss." *Destefano*, 2016 WL 537946, at *17 (quoting *Omnivision*, 559 F. Supp. 2d at 1047). The quality of Plaintiffs' Counsel's work on this case is reflected in the excellent result obtained.

Here, the attorneys at Kirby McInerney LLP ("KM") are among the most experienced practitioners in the securities litigation field, and the firm has a long record of successfully prosecuting securities cases throughout the country. *See* ¶ 49 and Ex. F (KM firm resume). Lead Counsel respectfully submits that the quality of its efforts in the litigation, together with its substantial experience in securities class actions and commitment to this litigation, provided Lead Counsel with the leverage necessary to negotiate a favorable settlement.

From the outset, Lead Counsel aggressively sought to obtain the maximum recovery for the Settlement Class. Through Lead Counsel's persistent work, the Lead Plaintiff was able to plead detailed allegations based on, *inter alia*, counsel's extensive investigation of the claims through a detailed review of all publicly available documents, drafting a detailed complaint, negotiating a settlement representing a substantial recovery for the Settlement Class, and conducting confirmatory discovery. ¶ 7. Lead Counsel's extensive efforts and skill led to the Settlement and strongly support the requested percentage fee.

The quality of opposing counsel is also important in evaluating the quality of the work done by Lead Counsel. *See, e.g.*, *Heritage Bond*, 2005 WL 1594389, at *12; *In re Equity Funding Corp. of Am. Sec. Litig.*, 438 F. Supp. 1303, 1337 (C.D. Cal. 1977); *In re Adelphia Commc'ns Corp. Sec. & Deriv. Litig.*, No. 03 MDL 1529, 2006 WL 3378705, at *3 (S.D.N.Y. Nov. 16, 2006) ("The fact that the settlements were obtained from defendants represented by 'formidable opposing counsel from some of the best defense firms in the country' also evidences

the high quality of lead counsels' work.") (citation omitted), *aff'd*, 272 F. App'x 9 (2d Cir. 2008). Defendants in this Action were represented by Wilson Sonsini Goodrich & Rosati P.C., Debevoise & Plimpton LLP and Bruch Hanna LLP throughout the Action and settlement negotiations. Defense Counsel is equally well-informed regarding the case, and their representation of Defendants was no less rigorous than Lead Counsel's representation of the Settlement Class. In the face of this formidable opposition, Lead Counsel was able to develop the Lead Plaintiff's case so as to persuade Defendants to settle the Action on terms favorable to the Settlement Class.

### 4. The Contingent Nature of the Fee and the Financial Burden Carried by Counsel

It has long been recognized that attorneys are entitled to a larger fee when their compensation is contingent in nature. *See Vizcaino*, 290 F.3d at 1048-50; *Omnivision*, 559 F. Supp. 2d at 1047 ("The importance of assuring adequate representation for plaintiffs who could not otherwise afford competent attorneys justifies providing those attorneys who do accept matters on a contingent-fee basis a larger fee than if they were billing by the hour or on a flat fee."); *see also Destefano*, 2016 WL 537946, at *18 (noting that "when counsel takes on a contingency fee case and the litigation is protracted, the risk of non-payment after years of litigation justifies a significant fee award"). Moreover, the Supreme Court has emphasized that private securities actions such as this provide "'a most effective weapon in the enforcement' of the securities laws and are 'a necessary supplement to [SEC] action.'" *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985) (citation omitted); *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 319 (2007) (same).

Here, Plaintiffs' Counsel have received no compensation to date, invested 2,125.2 hours of work equating to a total lodestar of $1,382,850.75, and incurred expenses of $101,324.55 in prosecuting and resolving this Action. ¶¶ 54, 62-63. Additional work in implementing the Settlement and claims administration will also be required. ¶ 55. Since the inception of this case, Plaintiffs' Counsel have borne the risk that any compensation and expense reimbursement

1  would be contingent on the result achieved, as well as on this Court's discretion in awarding fees

2  and expenses.  ¶¶ 50, 66.

3        Lead Counsel is aware of many other hard-fought lawsuits where, because of the

4  discovery of facts unknown when the case was commenced, changes in the law during the

5  pendency of the case, or a decision of a judge or jury following a trial on the merits, excellent

6  professional efforts by members of the plaintiff's bar produced no fee for counsel.  *See, e.g.*, *In*

7  *re Alstom SA Sec. Litig.*, 741 F. Supp. 2d 469, 471-73 (S.D.N.Y. 2010) (after completing

8  significant and expensive foreign discovery, 95% of plaintiffs' damages were eliminated by

9  Supreme Court's reversal, in *Morrison v. Nat'l Austl. Bank Ltd.*, 561 U.S. 247 (2010), of

10  unbroken circuit court precedent over 40 years).  "Precedent is replete with situations in which

11  attorneys representing a class have devoted substantial resources in terms of time and advanced

12  costs yet have lost the case despite their advocacy." *In re Xcel Energy, Inc., Sec., Deriv. &*

13  *"ERISA" Litig.*, 364 F. Supp. 2d 980, 994 (D. Minn. 2005).  Even those plaintiffs who get past

14  summary judgment and succeed at trial may find a judgment in their favor overturned on appeal

15  or on a post-trial motion.  *See generally Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d

16  408 (7th Cir. 2015) (reversing and remanding jury verdict of $2.46 billion after 13 years of

17  litigation on loss causation grounds and error in jury instruction in light of *Janus Cap. Grp., Inc.*

18  *v. First Deriv. Traders*, 564 U.S. 135 (2011)).[8]

19        Here, because Lead Counsel's fee was entirely contingent, the only certainties were that

20  there would be no fee without a successful result and that such result would only be realized after

21  significant amounts of time, effort, and expense had been expended.  Nevertheless, Plaintiffs'

22  Counsel committed significant resources of both time and money to vigorously and successfully

---

[8] *See also Robbins v. Koger Props., Inc.*, 116 F.3d 1441, 1447-49 (11th Cir. 1997) (reversing jury verdict of $81 million for plaintiffs); *In re BankAtlantic Bancorp, Inc. Sec. Litig.*, No. 07 Civ. 61542, 2011 WL 1585605, at *8-9, *38 (S.D. Fla. Apr. 25, 2011) (granting defendants' motion for judgment as a matter of law following plaintiffs' verdict); *In re Apple Comput. Sec. Litig.*, No. 84 Civ. 20148 (JW), 1991 WL 238298, at *1-2 (N.D. Cal. Sept. 6, 1991) (overturning jury verdict for plaintiffs after extended trial).

1  prosecute this Action for the benefit of the Settlement Class.  ¶¶ 50-66.  The contingent nature of

2  counsel's representation strongly favors approval of the requested fee.

3          5.       **A 25% Fee Award Is the Ninth Circuit's Benchmark and**
                    **Comparable to Awards in Similar Cases**

4

5          In requesting a 25% fee, Plaintiffs' Counsel seek the benchmark fee that has been

6  established by the Ninth Circuit.  *Eichen*, 229 F.3d at 1256 ("We have also established twenty-

7  five percent of the recovery as a 'benchmark' for attorneys' fees calculations under the

8  percentage-of- recovery approach.") (citation omitted); *Destefano*, 2016 WL 537946, at *18 ("As

9  to the fifth factor and awards in similar cases, several other courts – including courts in this

10  District – have concluded that a 25 percent award was appropriate in complex securities class

11  actions.") (citation omitted).

12          Fee awards of 25%, or more, have been awarded in numerous securities fraud settlements

13  with comparable, and greater settlements, in district courts throughout the Ninth Circuit.  *See,*

14  *e.g.*, *Cooper v. Thoratec Corp.*, No. 14 Civ. 00360 (CW), slip op. at 7 (N.D. Cal. June 25, 2019)

15  (ECF No. 137) (court awarded fees of 25% of $11.9 million recovery) (Ex. J);[9] *Extreme*

16  *Networks*, 2019 WL 3290770, at *11 (awarding fees of 25% of $7 million gross settlement

17  fund); *Sudunagunta v. NantkWest, Inc. et al.*, No. 16 Civ. 01947, slip op. at 7 (C.D. Cal. May 13,

18  2019) (ECF No. 188)   (awarding 25% fees of $12 million recovery) (Ex. J); *Thomas v.*

19  *MagnaChip Semiconductor Corp.*, No. 14 Civ. 01160 (JST), 2018 WL 2234598, at *4 (N.D. Cal.

20  May 15, 2018) (awarding fees of 25% of $6.2 million settlement fund); *Hayes*, 2016 WL

21  6902856, at *8 (awarding fees of 25% of $23.5 million settlement fund); *Lloyd v. CVB Fin.*

22  *Corp.*, No. 10 Civ. 06256, slip op. at 1 (C.D. Cal. Mar. 13, 2017) (ECF No. 136) (awarding fees

23  of 25% of $6.2 million recovery) (Ex. J); *In re Cytrx Corp. Sec. Litig.*, No. 14 Civ. 1956, slip op.

24  at 6 (C.D. Cal. May 18, 2016) (ECF No. 162) (awarding 25% fee in $8.5 million settlement) (Ex.

25  J); *Rieckborn v. Velti PLC*, No. 13 Civ. 03889 (WHO), 2015 WL 468329, at *21-22 (N.D. Cal.

26  _____

[9] A compendium of unreported slip opinions is submitted as Exhibit J to the Press Declaration.

27

28  Motion for an Award of Attorneys' Fees
and Reimbursement of Litigation Expenses
Case No. 3:18 -cv-00923-RS
                                                    15

Feb. 13, 2015) (awarding fees of 25% of $9.5 million partial settlement); *In re Vocera Commc'ns, Inc.*, No. 13 Civ. 03567 (EMC), slip op. at 2 (N.D. Cal. July 29, 2016) (ECF No. 211) (court awarded fees of 25% of $9 million recovery) (Ex. J); *Mulligan v. Impax Labs, Inc.*, No. 13 Civ. 01037 (EMC), slip op. at 7 (N.D. Cal. July 23, 2015) (ECF No. 133) (awarding 29% of $8 million settlement) (Ex. J); *In re Nuvelo, Inc. Sec. Litig.*, No. 07 Civ. 0405 (CRB), 2011 WL 2650592, at *3 (N.D. Cal. July 6, 2011) (awarding fees of 30% of $8.9 million settlement); *In re Gilead Sci. Sec. Litig.*, No. 03 Civ. 4999 (SI), slip op. at 1 (N.D. Cal. Nov. 5, 2010) (ECF No. 282) (awarding fees of 30% of $8.25 million settlement) (Ex. J); *In re Interlink Elec., Inc. Sec. Litig.*, No. 05 Civ. 08133, slip op. at 4 (C.D. Cal. June 1, 2009) (ECF No. 165) (Ex. J) (awarding 33-1/3% of $5 million settlement fund).

An examination of fee decisions in other federal jurisdictions in securities class actions with comparable settlements also shows that an award of 25% would be reasonable. *See, e.g.*, *In re Par Pharm. Sec. Litig.*, No. 06 Civ. 3226, 2013 WL 3930091, at *10 (D.N.J. July 29, 2013) (court awarded 30% of an $8.1 million settlement to counsel noting that "Lead Counsel's fee request is comparable to fees typically awarded in analogous cases"); *Esposito v. Am. Renal Assocs. Holdings, Inc. et al.*, No. 16 Civ. 11797, slip op. at 6 (D. Mass. June 15, 2018) (ECF No. 106) (Ex. J) (awarding fees of 33% of $ 4 million settlement fund); *Fogarazzo v. Lehman Bros. Inc.*, No. 03 Civ. 5194, 2011 WL 671745, at *4 (S.D.N.Y. Feb. 23, 2011) (awarding 33.3% of $6.75 million settlement); *City of Providence v. Aeropostale, Inc.*, No. 11 Civ. 7132, 2014 WL 1883494, at *12-13 (S.D.N.Y. May 9, 2014) (awarding 33% of $15 million settlement fund), *aff'd sub nom., Arbuthnot v. Pierson*, 607 F. App'x. 73 (2d Cir. 2015); *Pub. Pension Fund Grp. v. KV Pharm. Co.*, No. 08 Civ. 1859, slip op. at 2 (E.D. Mo. Apr. 23, 2014) (ECF No. 199) (awarding 30% of $12.8 million settlement) (Ex. J).

Moreover, a recent analysis by NERA Economic Consulting of securities class action settlements found that during 2014-2018, the median attorneys' fee award was 30% for settlements of between $5 million and $10 million. *See* Ex. E (NERA Report) at 41.

1   Accordingly, it is respectfully submitted that the attorneys' fee requested here is well

2   within the range of fees awarded by district courts within the Ninth Circuit and in comparable

3   securities settlements nationwide.

4   **6.      Reaction of the Settlement Class**

5   The class's reaction to a proposed settlement and fee request is a relevant factor in

6   approving fees.  *See Heritage Bond*, 2005 WL 1594389, at *15 ("The presence or absence of

7   objections . . . is also a factor in determining the proper fee award."); *Omnivision*, 559 F. Supp.

8   2d at 1048.  A total of 24,135 copies of the Court-approved Postcard Notice have been sent to

9   potential Settlement Class Members and their nominees and the Court-approved Summary

10  Notice was published in *Investor's Business Daily* and disseminated over the internet using *PR*

11  *Newswire*.  ¶¶ 25, 27.   A dedicated website, www.QuantumSecuritiesLitigation.com, was also

12  created, and all relevant dates and documents – including the Full Notice, Stipulation, Claim

13  Form and operative complaint – were posted therein.[10] ¶ 25; Miller Decl. Exs. A (Postcard

14  Notice), B (Full Notice).  Although the objection deadline will not run until October 24, 2019, to

15  date no objections to the requested amount of attorneys' fees and expenses have been received.[11]

16  ¶¶ 9, 67; Miller Decl. ¶ 14.

17  **7.      A Lodestar Cross-Check Supports the Requested Fee**

18  Although an analysis of counsel's lodestar is not required for an award of attorneys' fees

19  in the Ninth Circuit, a cross-check of the fee request with Plaintiffs' Counsel's lodestar

20  demonstrates its reasonableness.  *See Vizcaino*, 290 F.3d at 1048-50; *see also In re Coordinated*

21  *Pretrial Proceedings in Petroleum Prods. Antitrust Litig.*, 109 F.3d 602, 607 (9th Cir. 1997)

22

23

---

24  [10] Both the Postcard Notice and Full Notice informed the Settlement Class that Lead Counsel
    would apply to the Court for an award of attorneys' fees in an amount not to exceed 25% of the
25  Settlement Fund.  Miller Decl. Exs. A (Postcard Notice), B (Full Notice) ¶¶ 5, 62.

26  [11] Lead Counsel will address any future objections in its reply papers, which will be filed with
    the Court by November 7, 2019.

27

28

1   (comparing the lodestar fee to the percentage fee is an appropriate measure of a percentage fee's

2   reasonableness).

3          Plaintiffs' Counsel's combined "lodestar" is $1,382,850.75 for work through October 9,

4   2019, meaning that the requested fee, if awarded, would represent a multiplier of 1.47.  *See* Exs.

5   H (KM lodestar report) and G (GPM Decl. Ex. A (GPM lodestar report)).  Courts in this Circuit

6   have routinely granted fee requests in comparable securities fraud settlements with similar

7   lodestar multipliers.[12]  The Ninth Circuit has recognized that attorneys in common fund cases are

8   frequently awarded a multiple of their lodestar, rewarding them "for taking the risk of

9   nonpayment by paying them a premium over their normal hourly rates for winning contingency

10  cases." *Vizcaino*, 290 F.3d at 1051 (citation omitted).  For example, the district court in *Vizcaino*

11  approved a fee that reflected a multiple of 3.65 times counsel's lodestar. *Id.*  The Ninth Circuit

12  affirmed, holding that the district court correctly considered the range of multiples applied in

13  common fund cases, and noting that a range of lodestar multiples from 1.0 to 4.0 are frequently

14  awarded.  *Id.*; *Hayes*, 2016 WL 6902856, at *8 (approving securities fraud settlement and

15  awarding attorneys' fees of 25% , representing a multiplier of 2.54); *see also Steiner v. Am.*

16  *Broad. Co.*, 248 F. App'x. 780, 783 (9th Cir. 2007) (this multiplier "falls well within the range of

17  multipliers that courts have allowed").

18         Consistent with the Northern District of California Procedural Guidance for Class Action

19  Settlements, Plaintiffs' Counsel's lodestar is supported by the Press Declaration, which includes

20  a detailed exhibit showing the hours incurred by each KM and GPM professional that worked ten

21

22  ────────────────────
[12] *See, e.g.*, *Cooper*, No. 14 Civ. 00360 (CW), slip op. at 7 (N.D. Cal. June 25, 2019) (ECF No.
23  137) (approving 25% fee award in $11.9 million settlement representing approximately 1.23
    multiplier) (Ex. J); *Cytrx Corp.*, No. 14 Civ. 1956, slip op. at 6 (C.D. Cal. May 18, 2016) (ECF
24  No. 162) (Ex. J) and ECF No. 152 (awarding 25% fee in $8.5 million settlement representing
    multiplier of 1.50); *Petersen v. CJ Am., Inc.*, No. 14 Civ. 2570, 2016 WL 5719823, at *1 (S.D.
25  Cal. Sept. 30, 2016) (awarding 1.12 multiplier and recognizing that "the majority of fee awards
    in the district courts in the Ninth Circuit are 1.5 to 3 times higher than lodestar") (citing
26  *Vizcaino*, 290 F.3d at 1051-54).

27

28

or more hours on this litigation, broken down by nine substantive categories of work.  *See* Exs. H

(KM lodestar report) and G (GPM Decl. Ex. A (GPM lodestar report)).

Plaintiffs' Counsel's lodestar represents 2,125.2 hours of work at counsel's current

hourly rates.[13]  Counsel's rates range from $650 to $995 per hour for partners, $650 to $950 per

hour for of counsels, $395 to 475 per hour for associates and staff attorneys, and $275 to $475

per hour for analysts.[14]  *Id.*  Lead Counsel believes that these rates are within the range of

reasonable fees for attorneys working on complex class action litigation in this District.  *See* Ex.

---

[13] The Supreme Court and other courts have held that the use of current rates is proper since such
rates compensate for inflation and the loss of use of funds.  *See Mo. v. Jenkins by Agyei*, 491
U.S. 274, 283-84 (1989); *Fischel v. Equitable Life Assur. Soc'y of U.S.*, 307 F.3d 997, 1010 (9th
Cir. 2002) (using plaintiffs' counsel's current rather historic rates is a well-established method of
ensuring that "[a]ttorneys in common fund cases [are] compensated for any delay in payment")
(citing *Petroleum Prods.*, 109 F.3d at 609); *Rutti v. Lojack Corp. Inc.*, No. 06 Civ. 350, 2012 WL
3151077, at *11 (C.D. Cal. July 31, 2012) ("it is well-established that counsel is entitled to
current, not historic, hourly rates") (citing *Jenkins*, 491 U.S. at 284).

[14] Courts have found analysts to be compensable in lead counsel's fee award.  *See Destefano*,
2016 WL 537946, at *19 ("As part of their attorneys' fee award, Lead Counsel here also seek an
award covering the cost of financial analysts and related professionals, which courts have also
found compensable as part of the fee award."); *B-K Lighting, Inc. v. Vision3 Lighting*, No. 06
Civ. 02825, 2009 WL 3838264, at *12 (C.D. Cal. Nov. 16, 2009), *vacated on other grounds by,
sub nom.*, *B-K Lighting, Inc. v. Fresno Valves & Castings, Inc.*, No. 2010-1135, 2010 WL
2653274 (Fed. Cir. 2010) (approving award of fees for financial analysts on counsel's staff).  *See
also Extreme Networks*, 2019 WL 3290770, at *11 (granting lead counsel's 25% fee request) and
ECF 174-4 (finding rate of $550 per hour for financial analyst as reasonable); *Woburn Ret. Sys.
v. Salix Pharm., Ltd.*, No. 14 Civ. 8925, 2017 WL 3579892, at *7 (S.D.N.Y. Aug. 18, 2017)
(granting lead counsel's 21.24% fee request) and ECF No. 225-4 (finding hourly rates for
financial analysts ranging from $325-$500 as reasonable); *In re Pall Corp. Class Action
Attorneys' Fees Application*, No. 07 Civ. 3359, 2013 WL 1702227, at *2, *6 (E.D.N.Y. Apr. 8,
2013) (approving lead counsel's fee request and finding rates of $225 to $555 per hour for
economic analysts and a forensic accountant as reasonable); *In re AudioEye, Inc., Sec. Litig.*, No.
15 Civ. 00163, slip op. at 8 (D. Ariz. May 8, 2017) (ECF No. 100) (awarding Kirby
McInerney's, as lead counsel, 33-1/3% fee request in full) (Ex. J) and ECF No. 96-2 (finding
senior analyst rates ranging from $250-$400 as reasonable); *Esposito*, No 16 Civ. 11797, slip op.
at 6-7 (ECF No. 106) (D. Mass. June 15, 2018) (awarding Kirby McInerney's, as lead counsel,
33% fee request in full) (Ex. J) and ECF No. 103-3 (finding analyst rates between $275-$450 as
reasonable); *Lloyd*, No. 10 Civ. 06256, slip op. at 2 (ECF No. 136) (C.D. Cal. Mar. 13 2017)
(granting lead counsel's 25% fee request of $6.2 million recovery) (Ex. J) and ECF No. 131-1
(finding hourly rates of $325 for case analyst and $495 for investigators as reasonable).

1 I; *see also Hefler v. Wells Fargo & Co.*, No. 16 Civ. 05479 (JST), 2018 WL 6619983, at *14

2 (N.D. Cal. Dec. 18, 2018) (in approving securities fraud class action settlement, court found

3 reasonable plaintiffs' counsel's rates that ranged from $650 to $1,250 for partners or senior

4 counsel, from $400 to $650 for associates, and from $245 to $350 for paralegals). Plaintiffs'

5 Counsel submit that these rates for its partners, of counsel attorneys, associates and analysts are

6 also comparable to peer plaintiff and defense firms litigating matters of similar magnitude. *See*

7 Ex. I.[15]

8       Additional work will be required of Lead Counsel on an ongoing basis, including:

9 correspondence with Settlement Class Members; preparation for, and participation in, the final

10 approval hearing; supervising the claims administration process being conducted by the Claims

11 Administrator; and supervising the distribution of the Net Settlement Fund to Settlement Class

12 Members who have submitted valid Claim Forms. However, Lead Counsel will not seek

13 payment for this additional work.

14       In sum, Plaintiffs' Counsel's requested fee award is reasonable, justified, and in line with

15 what courts in this Circuit award in class actions such as this one, whether calculated as a

16 percentage of the fund or as a multiple of counsel's lodestar. As discussed above, each of the

17 factors considered by courts in the Ninth Circuit also strongly supports the reasonableness of the

18 requested fee.

19

20

---

21 [15] Moreover, Lead Counsel's hourly billing rates are also lower than those charged by defense
22 counsel in this Action. *See* Ex. I. For example, according to recent filings in federal bankruptcy
cases, Wilson Sonsini Goodrich & Rosati, P.C.'s blended hourly rates in 2017 (whose figures are
23 believed to be higher now) for partners was $820 ($950 for non-bankruptcy blended hourly rate)
and $600 for associates; and Debevoise & Plimpton LLP's rates are (a) for partners, between
24 $1,240-$1,375, for associates and of counsel, between $625-$1,025, and for analysts, between
$280-$330. *Id.* Further, according to figures published in the National Law Journal's 2014
25 Billing Survey (which is now five years old, and whose figures are believed to be higher now),
Debevoise & Plimpton's rates are: (a) for partners, between $955-$1,075; and (b) for associates,
26 between $120-$760. *See* Ex. K to the Press Declaration.

27

28

**IV.    PLAINTIFFS' COUNSEL'S EXPENSES ARE REASONABLE AND WERE NECESSARY TO ACHIEVE THE BENEFIT OBTAINED**

In addition to an award of attorneys' fees, attorneys who create a common fund for the benefit of a class are also entitled to payment of reasonable litigation expenses and costs from the fund.  *See Omnivision*, 559 F. Supp. 2d at 1048; *In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362, 1366 (N.D. Cal. 1996).   The appropriate analysis to apply in deciding which expenses are compensable in a common fund case of this type is whether the particular costs are of the type typically billed by attorneys to paying clients in the marketplace.  *See, e.g.*, *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) ("Harris may recover as part of the award of attorney's fees those out-of-pocket expenses that 'would normally be charged to a fee paying client.'") (citation omitted); *Omnivision*, 559 F. Supp. 2d at 1048 ("Attorneys may recover their reasonable expenses that would typically be billed to paying clients in non-contingency matters.").

From the beginning of the case, Plaintiffs' Counsel were aware that they might not recover any of their expenses and would not recover anything unless and until the Action was successfully resolved.  Plaintiffs' Counsel also understood that, even assuming that the case was ultimately successful, an award of expenses would not compensate for the lost use of the funds advanced to prosecute this Action.  Thus, Plaintiffs' Counsel were motivated to, and did, take significant steps to minimize expenses whenever practicable without jeopardizing the vigorous and efficient prosecution of the Action.  ¶ 66.

"[C]ourts throughout the Ninth Circuit regularly award litigation costs and expenses – including photocopying, printing, postage, court costs, research on online databases, experts and consultants, and reasonable travel expenses – in securities class actions, as attorneys routinely bill private clients for such expenses in non-contingent litigation." *Thomas*, 2018 WL 2234598, at *4 (quoting *Destefano*, 2016 WL 537946, at *22).  *See also Hefler*, 2018 WL 6619983, at *16 (approving lead counsel's request for reimbursement and finding expenses from "retention of experts [and] research costs," among others, as reasonable); *Harris*, 24 F.3d at 19 (approving

1   reimbursement of "service of summons and complaint, . . . postage, investigator, copying costs,

2   hotel bills, meals, [and] messenger service").

3           Here, in the aggregate, Plaintiffs' Counsel have incurred expenses in the amount of

4   $101,324.55 while prosecuting the Action, and these expenses are set forth in the Press

5   Declaration.  *See* ¶¶ 62-63 & Exs. H (KM expense report), G (GPM Decl. Ex. B (GPM expense

6   report)).   The largest expense was for document management costs related to confirmatory

7   discovery, which was approximately 39% of Lead Counsel's total litigation expenses.  Another

8   substantial cost related to the retention of experts in the fields of  damages and accounting, which

9   was approximately 23% of Lead Counsel's total litigation expenses.  *Id.*  To expedite the review

10  process and save on legal costs (namely, attorney time to review every document in the

11  production), Lead Counsel used predictive coding technology.[16]  *Id.*   Courts consider predictive

12  coding to be a far more accurate and less costly means of reviewing documents than manual

13  review using  keyword searches.  *See, e.g.*, *Youngevity Int'l, Corp. v. Smith*, No. 16 Civ. 704,

14  2019 WL 1542300, at *11-12 (S.D. Cal. Apr. 9, 2019) (collecting cases); *Hyles v. N.Y.C.*, No. 10

15  Civ. 3119, 2016 WL 4077114, at *2 (S.D.N.Y. Aug. 1, 2016) ("[I]n general, TAR is cheaper,

16  more efficient and superior to keyword searching.").   Predictive coding here resulted in the

17  identification of a subset of documents relevant to the allegations, which Lead Counsel then

18  reviewed.[17]

19          Each of these expenses were critical to Lead Counsel's success in achieving the

20  Settlement and, like the other categories of expenses for which counsel seek reimbursement, are

21  the types of expenses routinely charged to clients who pay hourly.  They should, therefore, be

22

23  [16] "Predictive coding, or technology assisted review ["TAR"], uses software that can be trained
    by a human being to distinguish between relevant and non-relevant documents."  *Progressive
24  Cas. Ins. Co. v. Delaney*, No. 11 Civ. 678, 2014 WL 3563467, at *8 (D. Nev. July 18, 2014)
    (citation omitted).

25  [17] That subset constituted approximately 17% of the total production.  Based on the search terms
26  used in the predictive coding model, those documents were found to have a statistically high
    probability of being relevant (60% or more).  ¶ 19.

27

28  MOTION FOR AN AWARD OF ATTORNEYS' FEES
    AND REIMBURSEMENT OF LITIGATION EXPENSES
    CASE NO. 3:18 -CV-00923-RS
                                            22

1    reimbursed out of the common fund.  *See Thomas*, 2018 WL 2234598, at *4 (approving lead

2    counsel's request for reimbursement and finding as reasonable expenses attributable to experts

3    and "court fees, online research fees, postage and copying, travel costs, electronic discovery

4    expenses, deposition costs, mediation charges, and travel costs"); *Luna v. Marvell Tech. Grp.*,

5    No. 15 Civ. 05447 (WHA), 2018 WL 1900150, at *4 (N.D. Cal. Apr. 20, 2018) (approving

6    reimbursement of lead counsel's costs in securities fraud class action for "experts and

7    investigators . . ., transportation, hotels and meals . . ., filing costs, photocopies, transcript

8    services, and online legal and financial research" and finding such expenses were "a reasonable

9    and necessary part of the litigation, and are of a type customarily billed to a fee-paying client");

10   *In re LendingClub Sec. Litig.*, No. 16 Civ. 02627 (WHA), 2018 WL 4586669, at *3 (N.D. Cal.

11   Sept. 24, 2018) (same).[18]

12       In sum, Plaintiffs' Counsel's expenses, in the aggregate amount of $101,324.55, were

13   reasonable and necessary to the prosecution of the Action and should be approved.

14

15

16

17

18

19

20

21

22

23   _____

[18] The Full Notice informed Settlement Class Members that Lead Counsel intends to apply for
24   the reimbursement of Litigation Expenses incurred by Lead Counsel "in an amount not to exceed
     $125,000."   Miller Decl. Ex. B, Full Notice ¶¶ 5, 62.   Plaintiffs' Counsel's requested
25   reimbursement of $101,324.55 is substantially less than the maximum amount of potential
     expenses disclosed in the Notice and, to date, there have been no objections to the request for
26   reimbursement of Litigation Expenses.  ¶¶ 9, 67.

27

28

1

## <u>CONCLUSION</u>

2          For the reasons set forth herein, Plaintiffs' Counsel respectfully request that the Court

3   award: (i) attorneys' fees in the amount of 25% of the Settlement Fund (or $2,037,500.00), plus

4   interest at the same rate as is earned by the Settlement Fund; and (ii) reimbursement of

5   $101,324.55 in expenses incurred in successfully prosecuting this Action, plus interest at the

6   same rate as is earned by the Settlement Fund.

7   Dated:  October 10, 2019                 Respectfully submitted,

8                                            **KIRBY McINERNEY LLP**

9                              By:    /s/ *Ira M. Press*
                                      Ira M. Press
10                                    Christopher S. Studebaker
                                      250 Park Avenue, Suite 820
11                                    New York, New York 10177
                                      Telephone: (212) 371-6600
12                                    Facsimile: (212) 699-1194
                                      ipress@kmllp.com
13                                    cstudebaker@kmllp.com

14

15                                    *Counsel for Lead Plaintiff Globis Capital Advisors*
                                      *L.L.C. and the Proposed Plaintiff Class*
16

17                                    Robert V. Prongay (#270796)
                                      Lionel Z. Glancy (#134180)
18                                    Lesley F. Portnoy (#304851)
                                      **GLANCY PRONGAY & MURRAY LLP**
19                                    1925 Century Park East, Suite 2100
                                      Los Angeles, California 90067
20                                    Telephone: (310) 201-9150
                                      Facsimile: (310) 432-1495
21                                    rprongay@glancylaw.com
                                      lportnoy@glancylaw.com
22

23                                    *Liaison Counsel for Lead Plaintiff Globis Capital*
                                      *Advisors L.L.C. and the Proposed Plaintiff Class*
24

25

26

27

28
    Motion for an Award of Attorneys' Fees
    and Reimbursement of Litigation Expenses
    Case No. 3:18 -cv-00923-RS

1

<u>**PROOF OF SERVICE BY ELECTRONIC POSTING**</u>

2

I, the undersigned say:

3

I am not a party to the above case and am over eighteen years old.  On October 10, 2019,

4

I served true and correct copies of the foregoing document, by posting the document

5

electronically to the ECF website of the United States District Court for the Northern District of

6

California, for receipt electronically by the parties listed on the Court's Service List.

7

I affirm under penalty of perjury under the laws of the United States of America that the

8

foregoing is true and correct.   Executed on October 10, 2019, at New York, New York.

9

10

*/s/ Ira M. Press*_____
Ira M. Press

11

12

*Counsel for Lead Plaintiff Globis Capital Advisors
L.L.C. and the Proposed Plaintiff Class*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28